# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
a minor child,

    Plaintiffs,

vs.                                                      Case No. 1:21-cv-00427 KK/JMR

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and
GEORGE ARCHULEETA, in his individual and official capacity,**

    Defendants.

**and**

**SARAH MONTOYA, o.b.o L.M.,**
a minor child,

    Plaintiffs,

vs.                                                      Case No. 1:21-cv-00648 KK/JMR

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and
GEORGE ARCHULEETA, in his individual capacity,**

    Defendants.

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
a minor child,

    Plaintiffs,

vs.                                                      Case No. 1:21-cv-00751 KK/JMR

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and
GEORGE ARCHULEETA, in his individual capacity, and
JOHN DOE # 1, in his individual capacity,**

**Defendants.**

**DEFENDANTS' JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS**

COME NOW Defendants, Rio Rancho Public Schools Board of Education, by and through counsel, Walz and Associates, P.C., (Jerry A. Walz and Alisha L. Walz), and George Archuleta, by and through counsel Carlos Quiñones, Quiñones Law Firm, LLC, and pursuant to Fed.R.Civ.P. 56, hereby submit their Joint Statement of Undisputed Material Facts Related to their Motion for Summary Judgment on Counts II, III and IV and Defendant Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity on Count I. Because the same undisputed material facts and supporting exhibits apply to the dispositive motions, Defendants in the interest of judicial economy and easy reference by the Court, set forth their undisputed material facts in this separate pleading in order to avoid needless repetition and promote judicial economy.

Therefore, filed contemporaneously herewith are: (1) Defendant Archuleta's and Rio Rancho Public Schools Board of Education's Joint Motion and Memorandum for Summary Judgment on the Basis of Governmental Immunity; (2) Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity on Count I.

### I.  UNDISPUTED MATERIAL FACTS

<u>Undisputed Material Facts as to Rio Rancho Public Schools Board of Education and George Archuleta's Employment as a Campus Security Aide</u>

1. Defendant Rio Rancho Public Schools is a public school district in the State of New Mexico and is a government entity. (D.M. Complaint ¶ 6, L.M. Complaint ¶ 5, J.M. Complaint ¶ 5)[1].

---

[1] D.M.'s Complaint is filed in No. 1:21-cv-00427 KK/JMR [Doc. 1-3]; L.M.'s Complaint is filed in No. 1:21-cv-00648 KK/JMR [Doc. 1-3]; J.M.'s Complaint is filed in No. 1:21-cv-00751 KK/JMR [Doc. 1-3]. D.M. is also referred to as Mr. M, L.M. is also referred to as E.M. and E.S., and J.M. is also referred to as J.S.

2. V. Sue Cleveland High School is a part of the Rio Rancho Public Schools and has about 2,500 students. (D.M. Complaint ¶ 6, Deposition of Millan Baca at p. 137:8, attached hereto as Exhibit A).

3. Minor Plaintiffs D.M., L.M., and J.M. were at all relevant times students at V. Sue Cleveland High School in Rio Rancho, New Mexico. (D.M. Complaint at ¶ 5; L.M. Complaint at ¶ 4, J.M. Complaint at ¶ 4).

4. Donald D. Mangin, Jr., is employed by Rio Rancho Public School in the position of Security Manager, and his office is located at the V. Sue Cleveland High School. (See, Affidavit of Donald D. Mangin, ¶ 2, attached hereto as Exhibit B).

5. As Security Manager, Donald D. Mangin oversees security at all of the Rio Rancho Public Schools north of Northern Blvd, Rio Rancho, which includes V. Sue Cleveland High School, and he supervises all Campus Security Aides at these locations. (See, Affidavit of Donald D. Mangin, ¶ 3, Exhibit B).

6. Donald D. Mangin has held the position of Security Manager for approximately 9 years, starting in 2014 through the present. (See, Affidavit of Donald D. Mangin, ¶ 4, Exhibit B).

7. Defendant George Archuleta was employed by the Rio Rancho Public Schools as a "Campus Security Aide" at the V. Sue Cleveland High School from September 1, 2009 through March 14, 2020. (See, Job Description, attached hereto as Exhibit C; Offer Letter, attached hereto as Exhibit D; and Resignation Letter, attached hereto as Exhibit E).

8. The "Essential Job Responsibilities" of a Campus Security Aide include: patrol school facilities; assists in the enforcement of school rules and regulations; assists in the supervision of crowds at spectator events; assists with searches; monitors and directs traffic in and out of school grounds to city streets; monitors, directs, and controls visitor access; monitors student

activities on campus; provides security in parking lots; works closely with law enforcement and emergency services providers; provides first aid/DeFib to injured persons when certified; opens and secures gates and doorways as required; performs other related functions as directed by security manager and/or lead or school principal/designee; complies with state-approved New Mexico Administrative Code of Ethical Responsibility of the Education Profession and the RRPS Employee Standards of Conduct and upholds and enforces rules, administrative directives and regulations, school board policies, and local, state and federal regulations; and perform other related functions as directed by supervisor/school administrator. (See Exhibit C, Job Description).

9. As a Campus Security Aide, Defendant Archuleta was trained to conduct pat down searches of students, consisting of standing "behind [a student], have them extend their arms, pat them down, the middle of the back, around the waistband, their legs, and then if they're wearing a jacket, you have them remove the jacket and search the jacket or the hoody or the sweater. And then if the administrator wants the backpack … searched, you search the backpack." (See George Archuleta Deposition at pp. 16:20-17:7, attached hereto as Exhibit F).

10. The Campus Security Aide would "go down their arms … go down their legs …[s]ometimes take off their shoes and sock" and would only go "[r]ight up above the knee about maybe three inches above the knee …" and pat down "the waist, the beltline." (See George Archuleta Deposition at p. 17:13-23, Exhibit F).

11. As a Campus Security Aide, Defendant Archuleta was trained to never pat the area down below the waist and three inches above the knee. (George Archuleta Deposition p. 18:2-10, Exhibit F).

12. During a student search, a campus security aide would typically ask the student to empty out their pockets inside out, pat down the packets "using the back of their hands when

4

they're search the packets, they'll usually go with the back of their fingers to that to see if anything's there." (Millan Baca Deposition p. 18:24-19:5, Exhibit A).

13. If a student is asked to turn his pockets out "and they only turn the pocket out partially, what typically will occur then is the guard will then get the back of his hand" and would "tap the part of the pocket that is not turned out." (Millan Baca Deposition p. 23:15-20, Exhibit A).

14. It is not inappropriate for campus security aides to search back pockets "because back pockets on some jeans are gigantic and they're very baggy and … it's less intrusive to stick the hands down the back … if the pocket it hanging far away from the body, than to tap against the pocket which then actually means that there's more contact with the student." (Millan Baca Deposition p. 24:8-16, Exhibit A).

15. It is not against school policy for a campus security aide to place his hand in a student's front pockets during a pat down search. (Millan Baca Deposition p. 25:1-4, Exhibit A).

16. School Board Policy 1009 "Searches and Seizure C-3" states that "A pat down search of a person may be conducted on the basis of a reasonable individualized suspicion that such person is in possession [of] contraband, weapons or explosive devices." (Millan Baca Deposition p. 29:7-12, Exhibit A; Policy 1009, attached hereto as Exhibit G).

17. "Contraband means any substance, material object, or illegal item prohibit from school pursuant to school policy or state or federal law, including but not limited to drugs, alcohol, fireworks, or weapons." (Policy 1009, Exhibit G).

18. The Student Code of Conduct prohibits possession/use of tobacco (including e-cigarettes), rolling papers or incendiary devices at school or school sponsored events (all tobacco

products and all e-cigarettes will be confiscated and disposed of). (CHS Student Handbook, attached hereto as Exhibit H).

19. According to Donald D. Mangin, Jr., the majority of security issues at the V. Sue Cleveland High School concern dealing with student vaping of nicotine and/or THC. (Donald D. Mangin Affidavit, ¶ 6, Exhibit B).

20. Mr. Baca testified that when a student is found to have one vaping device, the majority of the time those students are found to have numerous vaping devices, often empty, and that the school is often dealing with a student with addiction to either nicotine or marijuana. (Millan Baca Deposition p. 40:14-25, Exhibit A).

21. As a campus security aide, Defendant Archuleta could not search a student on his own; a school administrator would have to be present and authorize Defendant Archuleta to search the student. (George Archuleta Deposition p. 31:20-22, Exhibit F; Donald D. Mangin Deposition p. 24:6-17, attached hereto as Exhibit P).

22. If a schoolteacher reported a student had contraband or was suspected of having contraband to Defendant Archuleta, he would escort the student to that student's grade level assistant principal and explain to the assistant principal what he was told by the teacher and Defendant Archuleta would refer the assistant principal to call the teacher to get "the particulars." (George Archuleta Deposition p. 32:2-10, Exhibit F).

23. Every time a campus security aide searches a student, he has to complete a report on the search. (George Archuleta Deposition p. 73:9-11, Exhibit F).

24. The campus security aide's student search report includes information on why the student was searched; who authorized or directed the search; and what was found on the student or the student's belongings. (George Archuleta Deposition p. 74:9-15, Exhibit F).

25. A school administrator can authorize a search of a student if there is reasonable suspicion of a student suspected of a crime committed or to be committed, or an infraction of a school rule. (Millan Baca Deposition pp. 12:22-13:8, Exhibit A).

26. In his position as Security Manager, Donald D. Mangin is familiar with and has first-hand knowledge of the job duties and responsibilities, and of the day-to-day activities and job duties of Campus Security Aides, which included the activities of George Archuleta as Campus Security Aide. (Donald D. Mangin Affidavit, ¶ 5, Exhibit B).

27. At no time during George Archuleta's employment as a Campus Security Aide did Defendant Rio Rancho Public Schools ever receive a complaint regarding or relating to George Archuleta. (See, RRPS Answers to Interrogatories No. 17, attached hereto as Exhibit I).

28. Millan Baca is an Assistant Principal at V. Sue Cleveland High School and has been an administrator with the Rio Rancho Public Schools for six years. (See Millan Baca Deposition pp. 5:18-20; 11:24-12:23, Exhibit A).

29. Millan Baca has never received any complaints from students regarding George Archuleta and has never heard any complaints about George Archuleta third hand. (Millan Baca Deposition pp. 120:24-121:6, Exhibit A).

30. Security Manager Donald D. Mangin, Jr., worked with George Archuleta at the V. Sue Cleveland High School for seven years. (Donald D. Mangin Deposition pp. 7:8-11, 22-24; 19:6-11, Exhibit P).

31. It has never been reported to Donald D. Mangin, Jr., that a Campus Security Aide has either intentionally or incidentally touched a student's genital area during a pat-down search. (Donald D. Mangin Deposition pp. 30:23-31:17, Exhibit P).

32.     Donald D. Mangin, Jr., has no knowledge of any complaint made against George Archuleta, has no knowledge of any lawsuits brought against George Archuleta for illegal searches, and has no knowledge of any complaints made by students against any Rio Rancho Publics Schools Campus Security Aides.  (Donald D. Mangin Deposition pp. 51:3-112; 75:19-23, Exhibit P).

33.     There are no facts in the record to show that at any time George Archuleta was employed as a Campus Security Aide at V. Sue Cleveland High School that Defendant Rio Rancho Public Schools was ever informed or ever had any notice or knowledge that George Archuleta had ever touched the genitals of any student.

34.     There are no facts in the record to show that at any time George Archuleta was employed as a Campus Security Aide at V. Sue Cleveland High School that Defendant Rio Rancho Public Schools was ever informed or ever had any notice or knowledge that George Archuleta had ever engaged in any prior improper behavior of any kind.

35.     Assistant Principal Millan Baca testified that during the 2019-2020 school year, there was "quite a blow up of violence or threatened violence on the campus of Cleveland High School that even extended to Rio Rancho High School," and school officials were afraid there was the potential for "a large fight or […] a violent confrontation either on campus or off campus."  (Millan Baca Deposition p. 73:4-7, 14-17, Exhibit A).

36.     Assistant Principal Millan Baca testify that in February 2019, there was a shooting at V. Sue Cleveland High School, and with 2,500 students at the school there is great concern that there will be a great act of violence at the school.  (Millan Baca Deposition pp. 136:21-137:11, Exhibit A).

37.     Defendant Archuleta denies ever touching D.M. genitals.  (George Archuleta Deposition p. 58:4-8, Exhibit F).

38.     Defendant Archuleta denies ever groping D.M., L.M., or J.M. (George Archuleta Deposition p. 72:1-6, Exhibit F).

39.     Mr. Baca testified that school officials "were incredibly busy especially in the fall of their sophomore year trying to keep […] two groups of boys from hurting each other," and both L.M. and J.M. were believed to be involved, or peripherally, involved with the two groups. (Millan Baca Deposition pp. 73:8-17; 81:6-20; 84:10-13, Exhibit A).

40.     Mr. Baca testified that they were incredibly busy in the Fall of that 2019-2020 school year trying to keep these two groups of boys from hurting each other. (Millan Baca Deposition p. 84:4-13, Exhibit A).

41.     Mr. Baca testified that "[w]hen those two groups were having the interactions that they were, and student and parents were us emails with or phone calls where they had taken a screenshot of a Snapchat and it was showing some type of a handgun or automatic rifle, we were incredibly worried that there would be a shooting at school." (Millan Baca Deposition p. 137:12-18, Exhibit A).

Undisputed Material Facts as to Plaintiff D.M.

42.     D.M. testified that when he was either 15 or 16 years old, he was searched a total of four (4) times by Defendant Archuleta. (D.M. Deposition pp. 7:21-22; 43:20-44:2, attached hereto as Exhibit J).

43.     D.M. alleged that during school hours at V. Sue Cleveland High School, Defendant Archuleta would subject him "to unlawful and pretextual searches for drugs on his person," and that while conducting these searches Defendant Archuleta would inappropriately touch D.M.'s genitals and grope D.M.'s penis and buttocks. (D.M. Complaint ¶¶ 8, 9).

44. D.M. alleges that Defendant Archuleta would follow him through the halls at school and "stare at D.M.'s buttocks," would constantly verbally harass and demean D.M. during the school day, and would threaten to search D.M. again. (D.M. Complaint ¶¶ 10, 11, 12).

45. Assistant Principal Millan Baca testified to having had about ten disciplinary interactions with D.M., including an incident on January 24, 2019, when a staff member reported that D.M. had dropped a vape pen near a bathroom. (Millan Baca Deposition pp. 35:22-36:10; 38:5-12, Exhibit A).

46. Mr. Baca testified that the staff member's observation and report of D.M. dropping a vape pen and then picking it up and putting it into his pocket provided reasonable suspicion to search D.M. for drugs. (Millan Baca Deposition p. 38:13-22, Exhibit A).

47. Mr. Baca testified that from the time he was observed putting the vape pen in his pocket, D.M. was escorted by security up to the office and had been in the presence of high school personnel the entire time. (Millan Baca Deposition p. 39:4-19, Exhibit A).

48. Mr. Baca testified that D.M. was searched in that D.M. was asked to remove his jacket and when security searched the jacket the vape device was located. (Millan Baca Deposition pp. 39:20-40:4, Exhibit A).

49. On February 21, 2019, Defendant Archuleta observed D.M. fighting with J.M. in the boy's restroom and Defendant Archuleta escorted both D.M. and J.M. to the principal's office. (D.M. Deposition pp. 45:8-14; 100:7-12; 202:24-203:2, Exhibit J; J.M. Deposition p. 128:17-25, attached hereto as Exhibit K; George Archuleta Deposition p. 52:6-11, Exhibit F).

50. D.M. testified that Defendant Archuleta searched D.M. in the second-floor sophomore office, without an administrator present. (D.M. Deposition pp. 51:22-52:3; 195:15-23, Exhibit J).

51. D.M. alleges that he was touched on his buttocks and penis by Defendant Archuleta during this search. (D.M.'s Answer to RRPS Interrogatories No. 2, attached hereto as Exhibit L).

52. The Student Code of Conduct prohibits fighting and assault and battery and D.M. received 3 days of out-of-school suspension for the incident that occurred on February 21, 2019, and the discipline records do not indicate that he was searched by anyone. (D.M. discipline records, attached hereto as Exhibit M; Student Code of Conduct, Exhibit H).

53. The second search of D.M. by Defendant Archuleta began with D.M. being escorted to the main office, with D.M. in the nurse's office while a police resource officer searched him with a wand metal detector. (D.M. Deposition pp. 103:2-104:19, Exhibit J).

54. The third search of D.M. by Defendant Archuleta occurred on the afternoon of March 4, 2020 at the school bus pick up area. Defendant Archuleta observed a female student asking D.M. what he had in his hand with D.M. placing the item in his pocket. (Safety & Security Incident Report, attached hereto as Exhibit N; George Archuleta Deposition pp. 58:23-59:3, Exhibit F; D.M. Deposition pp. 52:23-53:15, Exhibit J).

55. When Defendant Archuleta asked to see what D.M. had placed in his front pocket, D.M. pulled out of his pocket a colorful box containing a disposable nicotine Puff Bar. (Safety & Security Report, p. 2, Exhibit N; George Archuleta Deposition p. 59:3-7, Exhibit F).

56. Defendant Archuleta did not make contact with D.M.'s genital area during this event. (D.M. Deposition p. 101:11-14, Exhibit J).

57. Following the directive of his on-scene supervisor, Donald D. Mangin, Defendant Archuleta advised D.M. to report to assistant principal Millan Baca the next morning. (George Archuleta Deposition p. 59:9-19, Exhibit F).

58. Defendant Archuleta kept the Puff Bar that he confiscated from D.M. (Safety & Security Report, p. 2, Exhibit N).

59. The fourth search of D.M. by Defendant Archuleta occurred when Mr. Baca met with D.M. the following morning, March 5, 2020. (George Archuleta depo p. 59:17-24; Millan Baca depo pp. 46:16-47:7; Safety & Security Report, p. 2, Exhibit N).

60. On March 5, 2020, D.M. was searched because Mr. Baca observed D.M. refusing to take his hands out of his pockets and when asked what was in his pockets D.M. would not reply, and Mr. Baca suspected that D.M. might have a weapon or contraband in his pocket. (Millan Baca Deposition 52:14-21, Exhibit A).

61. Based on a reasonable suspicion that D.M. had contraband in his possession, Mr. Baca asked Defendant Archuleta to search D.M. and his backpack. (Millan Baca Deposition pp. 47:3-7, 53:25-54:6, Exhibit A; Safety & Security Report, p. 2, Exhibit N).

62. Defendant Archuleta did not find any contraband on this occasion. (Safety & Security Report, p. 2, Exhibit N).

63. When Defendant Archuleta touched D.M.'s genitals, D.M. did not yell, scream, physically resist, or say anything whatsoever to either Defendant Archuleta or Mr. Baca. (D.M. Deposition p. 190:11-17, Exhibit J).

64. D.M. testified that he didn't say anything or resist because he was shocked and didn't know what to do. (D.M. Deposition p. 190:19-21, Exhibit J).

65. Defendant Archuleta did not make skin-to-skin contact with D.M.'s genitals during the search in Mr. Baca's office. (D.M. Deposition pp. 78:21-79:8; 84:10-18, Exhibit J).

66. After his sophomore year, D.M. had no additional encounters with Defendant Archuleta. (D.M. Deposition p. 100:13-23, Exhibit J).

67.  D.M. testified that he never brought any complaint or concern about George Archuleta, or about any other Rio Rancho Public Schools security personnel, to anyone who is an administrator within the Rio Rancho Public Schools system, or to the Rio Rancho Schools Board of Education, while he was a student. (D.M. Deposition pp. 32:23-33:19; 34:22-25, Exhibit J).

68.  D.M. testified that he never told his parents, never told Millan Baca, and never told any school staff member or counselor, that George Archuleta touched his genitals during a search of D.M.'s person in Mr. Baca's office when Mr. Baca was present. (D.M. Deposition pp. 192:2-5; 193:9-14, Exhibit J).

69.  D.M. testified that he never reported that George Archuleta was repeatedly threatening him on a daily basis to any school administrator or to police. (D.M. Deposition pp. 205:20-206:20, Exhibit J).

70.  There are no facts in the record to show that D.M., or anyone on his behalf, ever reported to any Rio Rancho Public Schools administrator or that George Archuleta had ever touched D.M.'s genitals or had ever groped D.M.'s penis or buttocks, as alleged in his Complaint.

71.  There are no facts in the record to show that D.M., or anyone on his behalf, ever reported to any Rio Rancho Public Schools administrator that George Archuleta had ever verbally harassed or demeaned D.M., as is alleged in his Complaint.

Undisputed Material Facts as To Plaintiff L.M.

72.  L.M. alleged that during school hours at V. Sue Cleveland High School, when he was 14 or 15 years old, on at least three different occasions Defendant Archuleta would pretextually search L.M.'s person and on at least one occasion Defendant Archuleta put his hands inside L.M.'s pockets and fondled L.M.'s genitals through L.M.'s clothing. (L.M. Complaint ¶¶ 8, 9).

73. On August 29, 2019, Defendant Archuleta was told by Coach Ridenour that there were students smoking in a locker room, Defendant Archuleta went to the locker room and L.M. and two other students were present. (George Archuleta Deposition p. 65:5-9, Exhibit F).

74. On August 29, 2019, Defendant Archuleta called for Assistant Principal Galindo to come to the locker room, Defendant Archuleta explained the particulars to Mr. Galindo, and Mr. Galindo asked Defendant Archuleta and a second campus security aide to conduct the search. (George Archuleta Deposition p. 65:10-17, Exhibit F).

75. L.M. does not remember why he was searched on the second occasion, he just remembers the specifics of the search conducted in Assistant Principal Galindo's office. (L.M. Deposition p. 66:14-25, attached hereto as Exhibit O).

76. With regard to the search in Mr. Galindo's office, L.M. testified that Mr. Galindo directed Defendant Archuleta to search L.M. during which vaping juice was found and confiscated. (L.M. Deposition pp. 67:3-12; 115:24-116:21; 119:1-4, Exhibit O).

77. L.M. testified that while patting him down, Defendant Archuleta put his hands in his pockets, felt "around" his thigh near the "V line" and then Defendant Archuleta was feeling "around" his penis and testicles, for approximately 5 seconds. (L.M. Deposition pp. 64:9-12, 24-25; 122:24-123:1, Exhibit O).

78. L.M. was searched a third time after being caught vaping in the restroom by Defendant Archuleta. Defendant Archuleta escorted L.M. to the principal's office where Assistant Principal Galindo directed Defendant Archuleta to search L.M. (L.M. Deposition p. 67:14-68:3, Exhibit O).

79. L.M. testified that, with regard to all of the searches that Defendant Archuleta conducted, L.M. "knows for a fact" Mr. Galindo and a separate security guard were present, and

that Mr. Galindo directed Defendant Archuleta to conduct those searches. (L.M. Deposition pp. 55:1-56:14, 119:1-4, Exhibit O).

80. L.M. testified that other than saying "whoa" or "whoa dude" during a search that was in the presence of an assistant principal and was being conducted by George Archuleta, L.M. never made any protest or complaint to any administrator that L.M. felt that Mr. Archuleta's conduct was inappropriate. (L.M. Deposition pp. 56:15-57:10, Exhibit O).

81. L.M. testified that he does not recall ever telling the assistant principal "This man just touched my penis" or "fondled my testicles" at the time that George Archuleta was conducting a search in the presence of the assistant principal. (L.M. Deposition p. 57:4-10, Exhibit O).

82. There are no facts in the record to show that L.M., or anyone on his behalf, ever reported to any Rio Rancho Public Schools administrator that George Archuleta had ever put his hands in L.M.'s pockets and fondled L.M.'s genitals, as is alleged in his Complaint.

83. Defendant Archuleta never groped L.M. "skin to skin." (L.M. Deposition p. 60:5-24, Exhibit O).

Undisputed Materials Facts as to Plaintiff J.M.

84. J.M. was either 15 or 16 years of age when he claims he was searched inappropriately by Mr. Archuleta on two occasions during his sophomore year, which was Fall of 2019 to Spring of 2020. (J.M. Deposition pp. 7:20-23; 150:12-21; 155:10-13, Exhibit K).

85. J.M. testified that during his sophomore year, he was written up for disciplinary offenses over 40 or 50 times and that he was searched by school personnel more than 50 times. (J.M. Deposition pp. 123:21-124:9, Exhibit K).

86. One of the disciplinary infractions and searches occurred in early October 2019, when J.M. was called into Principal Scott Affentranger's office the day after school security had

intervened in an incident where J.M. "and his group (gang) of friends were supposed to fight another kid" and J.M. was observed on security camera footage as present at the incident. (Safety & Security Incident Report, attached hereto as Exhibit Q).

87. Defendant Archuleta recalls searching J.M. on October 4, 2019, when Mr. Baca asked Defendant Archuleta to search J.M. and J.M.'s backpack, whereupon Defendant Archuleta located an electronic cigarette and a bottle of E-Cig juice. (George Archuleta Deposition pp. 67:22-68:23, Exhibit F; Safety & Security Report, Exhibit Q).

88. J.M. testified that during two pat-down searches, Defendant Archuleta engaged in "inappropriate conduct." (J.M. Deposition pp. 155:24-156:1, Exhibit K).

89. J.M. testified that he was instructed to take off his shoes and insoles, and Defendant Archuleta checked his socks. (J.M. Deposition pp. 156:7-157:6, Exhibit K).

90. J.M. testified that he was then told by Defendant Archuleta to flip his pant waistband inside out, told him to turn around, and then Defendant Archuleta put his hands in J.M.'s pockets. (J.M. Deposition p. 157:7-11, Exhibit K).

91. J.M. testified that Defendant Archuleta "felt a bulge or something" and asked if J.M. had short on underneath. (J.M. Deposition p. 157:9-13, Exhibit K).

92. Defendant Archuleta then did a pat down of J.M.'s legs "all the way up and down," and checked the pant cuffs and socks, and Defendant Archuleta was "checking my left cuff on my left leg, and he's going up patting my leg, and he's getting really high in my thigh at this point." (J.M. Deposition p. 157:18-24, Exhibit K).

93. J.M. testified that as Defendant Archuleta was patting J.M. really high on the left thigh, J.M. felt something touch him on his left testicle. (J.M. Deposition p. 158:4-7, Exhibit K).

94. The touching of the left testicle occurred over J.M.'s pants and may have occurred for a few seconds. (J.M. Deposition p. 160:3-6, 17-22, Exhibit K).

95. J.M. testified that during the second instance, which occurred in the security office next to the nurse's office, Defendant Archuleta was patting down J.M.'s legs when Defendant Archuleta "grabbed between [J.M.'s] legs" and "essentially tried to grab everything." (J.M. Deposition pp. 166:5-9; 168:10-14, Exhibit K).

96. J.M. was never searched again in what he characterized as an inappropriate manner. (J.M. Deposition p. 127:10-23, Exhibit K).

97. J.M. testified that after a second search incident with Defendant Archuleta, J.M. went to the office of Principal Scott Affentranger "specifically to talk to him about the situation." (J.M. Deposition p. 94:5-12, Exhibit K).

98. J.M. testified that he "expressed to" Mr. Affentranger that during the search by Defendant Archuleta, J.M. believed that "there was some really weird and off-putting things that had went on […]." (J.M. Deposition p. 95:1-5, Exhibit K).

99. J.M. testified that he told Mr. Affentranger that when he was searched, he believed "there was something that went on that is with – outside the guidelines of how a security guard is supposed to perform a search," and J.M. expressed to the principal that while being patted down on his legs, Defendant Archuleta "was getting really high on the thigh area." (J.M. Deposition pp. 94:8-95:20, Exhibit K).

100. Defendant Archuleta does not recall ever searching J.M. without a witness present. (George Archuleta Deposition p. 73:19-24, Exhibit F).

101. J.M. testified that he told his mother about these two incidents but that his mother never reported inappropriate conduct by Defendant Archuleta to any school administration official or to the police. (J.M. Deposition pp. 162:25-163:10; 181:17-20; 214:9-16, Exhibit K).

102. There are no facts in the record to show that J.M. or anyone on his behalf, ever reported to any Rio Rancho Public Schools administrator that Defendant Archuleta had ever touched or fondled J.M.'s "genitals inappropriately on multiple occasions," as is alleged in his Complaint.

Respectfully Submitted,

WALZ AND ASSOCIATES, P.C.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.
Alisha L. Walz, Esq.
*Attorneys for RRPS Defendants*
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com

~and~

QUIÑONES LAW FIRM LLC

*/s/ Carlos M. Quiñones, Esq.*
CARLOS M. QUIÑONES, ESQ.
*Attorney for Defendant Archuleta*
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505
(505) 992-1515
quinoneslaw@cybermesa.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of September, 2023, I filed the foregoing electronically through the CM/ECF system which caused all parties of record to be served by electronic mail, as more fully reflected in the Notice of Electronic Filing.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.