# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**             **Case No. 1:21-cv-00427 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULEETA, in his individual and official capacity,**

  **Defendants.**

**and**

**SARAH MONTOYA, o.b.o L.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**             **Case No. 1:21-cv-00648 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULEETA, in his individual capacity,**

  **Defendants.**

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**             **Case No. 1:21-cv-00751 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and**
**GEORGE ARCHULEETA, in his individual capacity, and**
**JOHN DOE # 1, in his individual capacity,**

  **Defendants.**

<u>**DEFENDANT GEORGE ARCHULETA'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT ON THE BASIS OF**</u>
<u>**QUALIFIED IMMUNITY ON COUNT I**</u>

COMES NOW Defendant George Archuleta (hereinafter "Defendant Archuleta"), by and through counsel, Quiñones Law Firm LLC (Carlos M. Quiñones, Esq.), and pursuant to Fed.R.Civ.P. 56 and D.N.M. LR-Civ. 56.1, hereby moves for summary judgment on the basis of qualified immunity on the claims asserted in Count I by Plaintiffs Mark Mondragon o.b.o. D.M., Sarah Montoya o.b.o. L.M., and Angela Salazar o.b.o. J.M.[1] (hereinafter collectively referred to as "Plaintiffs" but otherwise individually). Counsel for Plaintiffs were notified and Plaintiffs oppose this Motion. Counsel for other Defendant Rio Rancho Public Schools Board of Education was contacted and they do not oppose this Motion. In support, Defendant Archuleta states as follows:

## I.    INTRODUCTION

Plaintiffs filed their respective lawsuits in state court on March 15, 2021; June 10, 2021; and June 29, 2021. (*See* "Complaint" [Doc. 1] in *Mondragon* case; "Complaint" [Doc. 1] in *Montoya* case; and "Complaint" [Doc. 1] in *Salazar* case (hereinafter collectively referred to as "Complaints"). Because Plaintiffs asserted claims in their respective Complaints for alleged federal constitutional violations against Defendant Archuleta in their respective "Count I" claims, Defendant Archuleta removed all three (3) lawsuits to this Court. In doing so, it was asserted that pursuant to 28 U.S.C. § 1367, this Court had supplemental jurisdiction over the state law claims because they are so related

---

[1] An Order Consolidating these three (3) cases was filed on December 8, 2022 (Doc. 49).

to the federal law claims that they form part of the same case and controversy under Article III of the United States Constitution. (*See* respective Notices of Removal at ¶ 3).

At Count I of their respective Complaints, Plaintiffs assert a federal claim under 42 U.S.C. § 1983 for alleged illegal search and seizure under the Fourth Amendment against Defendant Archuleta in his individual capacity. (*See* "Count I" of parallel Complaints). At Count II, Plaintiffs bring claims under NMSA § 41-4-12 (the "law enforcement" waiver of immunity) of the New Mexico Tort Claims Act (TCA) against Defendant Archuleta and Defendant Rio Rancho Public Schools Board of Education (Defendant Rio Rancho Public Schools). (*See* "Count II" of parallel Complaints). Count III of the parallel Complaints is a claim under Section 41-4-12 against Defendant Rio Rancho Public Schools. (*See* "Count III" of parallel Complaints). At Count IV, Plaintiffs bring claims under NMSA § 41-4-6 (the "premises liability" waiver of immunity) against both Defendants Archuleta and Rio Rancho Public Schools. (*See* "Count IV" of parallel Complaints).[2]

## II.    LEGAL STANDARD REGARDING SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit and a dispute over a material fact is "genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 538 (Cir. 2014).

---

[2] Defendant Archuleta, along with Defendant Rio Rancho Public Schools, filed a joint motion for summary judgment on all claims brought under the New Mexico Tort Claims Act (Counts II, III, and IV). That motion was filed contemporaneously with the filing of this motion.

3

As the movant, Defendant Archuleta bears the initial burden of showing the absence of evidence to support each Plaintiff's claims. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Once that burden is met, the burden shifts to the Plaintiffs who are each required to show that genuine issues remain for trial through "reference to affidavits, deposition transcripts, or other exhibits to support the claim." *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Shapiola v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993); Fed. R. Civ. P. 56(c)(1)(A). Because Defendant Archuleta does not bear the burden of persuasion at trial, he "need not negate" Plaintiffs' claims, but "may make [a] prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Shulenberg v. BNSF Railway Co.*, 911 F.3d 1276, 1286 (10th Cir. 2018); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)(non-movant "must establish an inference of the existence of each element essential to the case").

In deciding this motion, the Court must view the facts in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). But if Plaintiffs fail to make a sufficient showing on an essential element of their case, and on which they have the burden of proof at trial, Mr. Archuleta is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)(if evidence is merely colorable, or not significantly probative, summary judgment is appropriate); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993)(mere scintilla of evidence will not prevent summary judgment).

### III.    LEGAL STANDARD REGARDING QUALIFIED IMMUNITY

Government officials who perform discretionary functions are entitled to the defense of qualified immunity from claims brought pursuant to 42 U.S.C. § 1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)(*citing Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861 (1978)); *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001 (1975)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *McCook v. Springer School Dist*., 44 Fed.Appx. 896, 901 (10th Cir. 2002)(*quoting Holland ex rel. Overdorff . Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001)); *see also Saucier v. Katz,* 533 U.S. 194, 206 (2001)(public officials not liable for bad guesses in gray areas; they are liable for transgressing bright lines); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)(qualified immunity defense shields public officials who have "reasonable, but mistaken beliefs;" operates to protect from the sometimes "hazy borders" of the law).

The defense of qualified immunity gives rise to a presumption that the state actor defendant is immune from suit. *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018)(*citing Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). And "special rules apply when an official raises a defense of qualified immunity on summary judgment," requiring the plaintiff to bear a heavy two-fold burden. *Hinton v. City of Elwood Kan*., 997 F.2d 774, 779 (10th Cir. 1993); *Dimas v. Pecos Ind. Sch. Bd. Of Ed*., 2023 WL 2573345, *6 (D.N.M. March 20, 2023)(Riggs, J.)(*citing Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012)). To meet this

burden, the "plaintiff must put forward evidence showing that (1) 'the defendant's actions violated a constitutional or statutory right,' and (2) 'the right at issue was clearly established at the time of the defendant's unlawful conduct.'" *Id,* (*quoting Medina*, 252 F.3d at 1128); *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2006)).  If the plaintiff fails to satisfy either prong of this two-part test, the defendant is entitled to qualified immunity. *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019)(*quoting Estate of Ceballos v. Husk*, 919 F.3d 124, 1212–13 (10th Cir. 2019)); *Hunt v. Montano*, 39 F.4th 1270, 1285 (10th Cir. 2022)(plaintiff must establish *both* prongs).

"In determining whether the plaintiff meets the [two-part] burden, the Court ordinarily accepts the plaintiff's version of the facts – 'that is, the facts alleged.'" *Dimas,* 2023 WL 2573345, *6 (*quoting Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018)).  "However, at the summary judgment phase of the litigation, 'the plaintiff's version of the facts *must find support in the record*.'"  *Id* (emphasis supplied)(*quoting Halley,* 902 F.3d at 1144).  Accordingly, each Plaintiff must show facts from the record that a reasonable jury could find support a violation of their constitutional rights .  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

With regard to the second prong of the analysis, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019)(*quoting Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308 (2015)(internal quotations omitted)).  "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of

authority from other courts must have found the law to be as the plaintiff maintains." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016)(quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)(*quoting Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).  Although a plaintiff need not show that "the very action in question [has] … previously been held unlawful, in the light of pre-existing law the unlawfulness must be apparent."  *A.M. v. Holmes*, 830 F.3d at 1136 (*quoting Albright v. Rodriquez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).  But "[t]he proffered case law must be 'particularized to the facts' of the instant case. […]  And it's the plaintiff's burden to identify the relevant clearly established law." *N.E.L. v. Douglas Co., Colo.*, 740 Fed.Appx. 920, 929 (10th Cir. 2017)(citations omitted); *see also Hunt v. Montano,* 39 F.4th 1270, 1284 (10th Cir. 2022)(plaintiff has the burden to show that the law was clearly established when the alleged constitutional violation occurred).

The Court has the discretion to decide which of the two prongs of the qualified immunity analysis to address first, "in light of the circumstances of the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).  But if Plaintiff fails "to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248, n.3 (10th Cir. 2020)(*quoting Cummings*, 913 F.3d 1227, 1239 (quotations omitted)).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material facts and that he or she is entitled to judgment as a matter of law." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).

"Where the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective reasonableness of his actions, the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were ***improperly motivated***." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 649 (10th Cir. 1988)(footnote omitted)(emphasis supplied).

## IV.    ARGUMENT

### A. Defendant Archuleta is Entitled to Qualified Immunity and Summary Judgment on Plaintiffs' Section 1983 Claims for Illegal Search and Seizure Under the Fourth Amendment because the facts in the record do not show a constitutional violation and Plaintiffs cannot show that the constitutional right they assert was clearly established.

Count I asserts a Section 1983 claim under both the Fourth and Fourteenth Amendments, alleging that Plaintiffs had a "clearly established right to be free from unreasonable and warrantless search and seizure," that Defendant Archuleta violated this right by searching D.M., L.M., and J.M. "without reasonable suspicion or other legal justification," and that the searches were "patently unreasonable" in that Mr. Archuleta touched and/or groped Plaintiffs' genitals or buttocks. D.M. Complaint, ¶¶ 26-28; L.M. Complaint, ¶¶ 22-24; J.M. Complaint ¶¶ 30-32. Defendant Archuleta is entitled to qualified immunity and summary judgment on these claims because there are no facts in the record to show the violation of either the Fourth or Fourteenth Amendments and because Plaintiffs cannot show that the right they seek to assert was clearly established at the time of the alleged conduct.

**Fourth Amendment Law**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "Reasonableness is the 'touchstone' of the constitutionality of any government search, requiring "a balancing of the need for the particular search against the invasion of personal rights that the search entails.'" *Woods as Next Friend of T.W. v. Rio Rancho Public Schools*, *4, 2019 WL 251734 (D.N.M. January 17, 2019)(Johnson, J.)(*quoting Bd. of Educ. Of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. V. Earls*, 536 U.S. 822, 828, 122 S.Ct. 2559 (2007)).

"In a public-school setting, 'what is reasonable depends on the context within which a search takes place,' and 'requires some modification of the level of suspicion of illicit activity needed to justify a search.'" *Id*, (*quoting A.M. v. Holmes*, 830 F.3d at 157-58 (citations omitted); *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 825, 122 S.Ct. 2559 (2002)(student privacy interest limited in public school where State responsible for maintaining discipline, health, and safety). "Accordingly, the constitutionality of a student search depends 'on the reasonableness, under all the circumstances, of the search' and involves a two-fold inquiry: (1) whether the school search was justified at its inception; and (2) whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id*, (*quoting New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733 (1985)(*quoting Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868 (1968)).

As stated in *T.L.O.*, "[u]nder ordinary circumstances, a search of a student by a teacher or other school official will be 'justified in its inception' when there are

reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, at 341-42, 105 S.Ct. 733. "'[R]easonable suspicion is not a requirement of absolute certainty,' but only of 'sufficient probability,' and requires only a 'moderate chance of finding evidence of wrongdoing.'" *Woods*, at \*4 (*quoting T.L.O.*, at 346, 105 S.Ct. 733; *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 371, 129 S.Ct. 2633 (2009)). And "[s]earches on students are reasonable in scope 'when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'" *Id*, (*quoting T.L.O.,* at 342, 105 S.Ct. 733).

Importantly, in the public-school setting, where "swift and informal disciplinary procedures" are often needed "to maintain order in the schools," a search does not always require "individualized suspicion" to be reasonable under the Fourth Amendment. *Veronia Sch. Dist.. 47J v. Action*, 515 U.S. 646, 653, 115 S.Ct. 2386 (1995). Thus, although it is well-settled that students do not "shed their constitutional rights ... at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969), "Fourth Amendment rights ... are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia Sch. Dist. 47J,* 515 U.S. at 656. Based on these guidelines, the Supreme Court has recognized that a search in the school context may still be reasonable without individualized suspicion in "'limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a

requirement of individualized suspicion.'" *Vernonia Sch. Dist. 47J,* 515 U.S. at 674 (quoting *United States v. Martinez–Fuerte,* 428 U.S. 543, 560 (1976)).

In the context of the Fourth Amendment, the Supreme Court has acknowledged that public schools have an undeniable compelling interest in keeping weapons, drugs, and contraband out of schools, in protecting students and staff from violent/fighting individuals, and preventing school violence to maintain "an environment in which learning can take place." *T.L.O.*, 469 U.S. at 339-40, 105 S.Ct. 733; *Milligan v. City of Slidell*, 226 F.3d 652, 655 (5th Cir. 2000)(school had compelling interest to protect students and deter possibly violent misconduct). Further, one recent district court noted,

> [s]chools are expected to ensure a safe learning environment for their students and staff. In light of school shootings and other acts of violence on school property, when school personnel learn of a potential threat of violence, the school is obligated to investigate it. Within the bounds imposed by the Constitution and state law, schools have the reasonable discretion and authority to investigate threats and discipline their students as appropriate. But consistent with the obligation to act in good faith, schools often must make certain decisions with imperfect knowledge and under time pressure. *Sabbah v. Springfield School Dist.*, 2021 WL 2138792, *1 (E.D.Pa. May 26, 2021)(Pratter, J.).

Assistant Principal Milan Baca testified that there was a shooting at V. Cleveland High School in February of 2019, and with 2,500 enrolled students at the school, there is great concern that there will be "a great act of violence" at the school. UMF 36.[3] During the 2019-2020 school year, there was "quite a blow up of violence or threatened violence on the campus of Cleveland High School that even extended to Rio Rancho High

---

[3] Defendants' Joint Statement of Undisputed Material Facts with supporting Exhibits was filed contemporaneously, Doc. 65.

School," and school officials were afraid there was the potential for "a large fight or [ …] a violent confrontation either on campus or off campus."  UMF 35.

Specifically, school officials "were incredibly busy especially in the fall of their sophomore year trying to keep […] two groups of boys from hurting each other," and school officials were receiving information from students and parents with Snapchat screenshots "showing some type of a handgun or automatic rifle [and] we were incredibly worried that there would be a shooting at school."  UMF 39, 40.  Both L.M. and J.M. were believed to be involved, or peripherally involved, with the two groups that school officials were concerned about.  UMF 39.

1. **The school searches of D.M. were justified by reasonable, individualized suspicion that D.M. possessed contraband and/or a weapon and each search as conducted was reasonable in scope.**

D.M. was a 16 year-old student at V. Sue Cleveland High School when he was searched on several occasions by Defendant Archuleta, a campus security aide.  UMF 42. The first search was on February 21, 2019, after D.M. was observed by Mr. Archuleta fighting in the boy's restroom with J.M.  UMF 49.  Fighting and assault/battery of another student is a serious infraction and a violation of the school code of conduct. UMF 52. D.M. testified that before going to the office, Mr. Archuleta first did a search of his person and belongings, that D.M. emptied his pockets and Mr. Archuleta felt around his thighs and buttocks, put his hands into D.M.'s pockets and touched D.M.'s penis. UMF 51.  There was never any skin-to-skin contact between Mr. Archuleta and D.M.'s genitals.  UMF 65.  D.M. was then taken down to the main office and was searched by a school police officer with a wand metal detector.  UMF 53.  Mr. Archuleta then patted

D.M. down again, put his hands in D.M.'s pockets and touched D.M.'s penis.  UMF 37.

Mr. Archuleta denies ever touching D.M.'s genitals.  UMF 51.

The third search of D.M. occurred on March 4, 2020, by Mr. Archuleta as D.M. was preparing to take the bus home.  UMF 54.  At that time, another student gave D.M. a colorful box that D.M. thought was candy. UMF 55.  Mr. Archuleta overheard a student ask what D.M. had in his pocket, and wrote in his report, "I heard a female student asking a male student what he had in his hand [and] the male student looked up at me and placed the object in his pocket."  UMF 54.  D.M. testified that Mr. Archuleta "started taking everything out of my pockets and feeling around my legs trying to see if I'm trying to hide something there," but at no time did Mr. Archuleta touch D.M.'s genitals. UMF 56. Mr. Archuleta asked what was in his pocket and D.M. pulled out the colorful box which contained a vape pen.  UMF 55.  Possession of a vape pen on campus is a violation of the school code of conduct.  UMF 18. Mr. Archuleta confiscated the box and vape pen and told D.M. to go to the sophomore principal's office the next morning.  UMF 57-59.

The next morning, March 5, 2020, D.M. went to sophomore principal Baca's office where Mr. Baca asked D.M. if he had anything on him and D.M. would not reply. UMF 60.  Mr. Baca observed D.M. "digging around in his pockets and trying to push something down into his pocket," and asked D.M. again if he had anything in his pockets, asked him to get his hands out of his pockets, and asked him to keep his hands up on the table.  UMF 60.  After D.M. was observed repeatedly putting his hands in his pockets trying to push something, refusing to keep his hands out of his pockets, and refusing to say if he had anything in his pockets, Mr. Baca felt D.M. was "acting suspicious" and could possibly have a weapon or contraband, and instructed Mr. Archuleta to search

D.M. and D.M.'s backpack. UMF 61.  Mr. Archuleta then told D.M. that he was going to search him and as Mr. Archuleta was about to conduct the search, D.M. said, "Don't touch my dick," and then Mr. Archuleta conducted an exterior pat down of D.M.'s pants and thighs, then put his hands in D.M.'s pockets and touched D.M.'s genitals, but there was no skin-to-skin contact.  UMF 65.  When Mr. Archuleta touched D.M.'s genitals, D.M. did not yell, scream, physically resist, or say anything whatsoever to either Mr. Archuleta or Mr. Baca.  UMF 63.

Facts in the record show that on all occasions, the school searches conducted by Mr. Archuleta were justified at their inception and reasonably related to the circumstances that justified the searches in the first place.  *T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733.  The first two searches occurred on February 21, 2019, immediately after D.M. was caught fighting with another student on school grounds, a serious incident that was a violation of the code of conduct, and Mr. Archuleta had reasonable suspicion to conduct a pat-down of outer clothing to search pockets for a weapon. Under these circumstances, just one week after a shooting had occurred on school premises, where D.M. had just been observed engaged in violent conduct, it was reasonable to believe that such a student could have a weapon on his person that could be used on another student or on the campus security aide.   A limited pat-down search of the student's outer clothing, for purposes of protection of the campus security aide and others in the vicinity, where the student is known to have just engaged in a fight with another student, is not unreasonable under the Fourth Amendment in a school setting and environment where weapons are widespread and a school shooting had occurred just one week prior.

With regard to the search on March 4, 2020, Mr. Archuleta knew that another student had called attention to D.M. possibly being in possession of contraband and Mr. Archuleta contemporaneously observed D.M. put something in his pocket. Under these circumstances, Mr. Archuleta had reasonable, individualized suspicion to believe that D.M. possessed contraband. It was reasonable under these circumstances to conduct a limited pat-down of outer clothing – particularly the front pocket – where a vape pen was ultimately located and confiscated. The next day. March 5th, when D.M. reported to the assistant principal's office, Mr. Baca observed that D.M. was fidgeting, would not keep his hands out of his pockets and would not leave his hands on the table, and Mr. Baca believed that D.M. had something in his pockets such as a weapon or contraband, so he directed Mr. Archuleta to search D.M. Under these circumstances, Mr. Baca had reasonable, individualized suspicion to direct that Mr. Archuleta conduct a limited, pat-down search of D.M.'s outer clothing, particularly D.M.'s pockets. It is school practice at V. Sue Cleveland High School that campus security aides do not conduct a search of a student unless requested to do so by an administrator. UMF 21, 25.

In addition to the searches being reasonable at their inception, based upon the facts in the record, the searches actually conducted were at all times "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733; *A.M. v. Holmes*, 830 F.3d at 1159 (search of student that is justified at inception, is also justified as to outer clothing and backpack); *H.Y., ex rel. K.Y. v. Russell County Bd. of Educ.*, 490 F.Supp.2d 1174, (M.D.Ala. 2007)(reaching into students' pockets not excessively intrusive and was permissible in scope). The searches as described by D.M. were no more intrusive than necessary to accomplish their

purpose; they were brief, non-skin-to-skin pat-downs of outer clothing and pockets.  Even if Mr. Archuleta did briefly come in contact with D.M.'s buttocks or genitals during a pat-down search, or search of D.M.'s pockets, which Mr. Archuleta denies, there is no evidence in the record to show that the contact was anything other than incidental or accidental. There was never any skin-to-skin contact, all contact was brief, and there are no facts to show any prolonged rubbing or touching described as of a sexual nature; any such touching was incidental to the pat-down and was *de minimis* and does not rise to the level of a constitutional violation.  *See Golden v. County of Westchester*, 2012 WL 4327652, *6 (S.D.N.Y. September 18, 2012)(Ramos, J.)(incidental contact with breasts and genital area during pat-down search of outer clothing was *de minimis* intrusion and not a Fourth Amendment violation).

Plaintiff D.M. cannot meet his qualified immunity burden of demonstrating that Mr. Archuleta committed a Fourth Amendment violation.  Mr. Archuleta is entitled to summary judgment as a matter of law.

**2. The school searches of L.M. were justified by reasonable, individualized suspicion that L.M. possessed contraband or vaping materials and each search as conducted was reasonable in scope.**

L.M. was a 14- or 15-year-old high school student who was searched on three occasions during his freshman year, which was from the Fall of 2019 to Spring of 2020. UMF 72.  On all three occasions, either a school principal or another campus security aide was present. UMF 79.  Additionally, the undisputed facts in the record show that on all three occasions, Assistant Principal Galindo directed Mr. Archuleta to conduct the search of L.M.  UMF 74, 79.  The facts in the record do not show the violation of L.M.'s Fourth Amendment rights.

The first search of L.M. occurred on August 29, 2019, when Coach Ridenour reported that there were students vaping in the locker room.  UMF 73.  Mr. Archuleta learned that there were three students in the locker room, which included L.M.  UMF 73.  Mr. Archuleta called for Assistant Principal Galindo to come to the locker room, Mr. Archuleta explained the particulars of the situation to Mr. Galindo, and Mr. Galindo directed Mr. Archuleta and a second security aide to conduct the search.  UMF 79.  Mr. Archuleta conducted a pat-down search on L.M. and located and confiscated contraband in the form of vaping "juice."  UMF 76.  L.M. testified that Mr. Archuleta did not "feel near" L.M.'s genital area, and did not touch L.M. in any inappropriate way.  UMF 80, 81.

There are no facts in the record to show that locker room search conducted by Mr. Archuleta at the behest of Mr. Galindo violated the Fourth Amendment.  Based upon information from a reliable source – a school staff member – Mr. Galindo had reasonable, individualized suspicion to believe that L.M. had engaged in a violation of school rules by smoking on school premises, and Mr. Galindo directed that Mr. Archuleta search L.M.  There are no facts in the record to show that Mr. Archuleta conducted anything other than a reasonable, limited, pat-down of a student's outer clothing and that he located contraband in the form of a vaping liquid.  Plaintiff L.M. cannot show the violation of a constitutional right with regard to the August 29, 2019, school search.

With regard to the second search, which took place in assistant principal Galindo's office, L.M. testified that he does not remember the alleged infraction for which he was searched, but he does remember the specifics of the search conducted.  UMF 75.  L.M. "knows for a fact" that Mr. Galino was present during the second search and that Mr. Galindo directed Mr. Archuleta to conduct that search.  UMF 79.  L.M.

testified that while patting him down, Mr. Archuleta put his hands in his pockets, felt "around" his thigh near the "V line" and then Mr. Archuleta was feeling "around" his penis and testicles, for approximately 5 seconds. UMF 77.  There was never any skin-to-skin contact during this search.  UMF 83.  L.M. testified that while Mr. Archuleta's hands were still in his pockets, L.M. said, "Whoa, dude," and took a step back. UMF 80.

With regard to this second search, the undisputed facts are that Mr. Galindo was present for the search and that it was Mr. Galindo directed that the search take place. Furthermore, facts in the record show that the search conducted, as described by L.M., was not unreasonable under the law.  A student search that includes reaching into the student' pockets, where there was no skin-to-skin contact with the student's private area, even where there may be brief incidental contact with genitalia, is not a constitutional violation.  *H.Y., ex rel. K.Y.*, 490 F.Supp.2d at 1186 (searching in student pockets not excessively intrusive and was permissible in scope); *See Golden,* 2012 WL 4327652, *6 (incidental contact with genital area during pat-down search of outer clothing was *de minimis* intrusion and not a Fourth Amendment violation).  There is no evidence in the record to show that any contact by Mr. Archuleta of L.M.'s genital area during the pocket search was anything other than incidental or accidental; no evidence of any prolonged rubbing, no evidence that touching was sexual in nature, and no evidence of any sexual comments made by Mr. Archuleta.  L.M.'s evidence regarding the second search does not show any conduct that rises to the level of a constitutional violation.

On a third occasion, Mr. Archuleta discovered L.M. vaping in the restroom, Mr. Archuleta confiscated the vaping device and escorted L.M. to the principal's office, where Assistant Principal Galindo directed Mr. Archuleta to conduct a search. UMF 78.

Again, Mr. Galindo ordered the search.   Under the circumstances, where L.M. was known to have been vaping on school grounds, and where a vaping device was confiscated, there was reasonable, individualized suspicion to conduct a limited, pat-down search of the student's outer clothing and backpack for additional contraband or vaping materials.   Evidence in the record shows that when a student is found to have one vaping device, the majority of the time those students are found to have numerous vaping devices, often empty, in their possession.   UMF 20.   There are no facts in the record to show that the search was unreasonable.

With regard to the scope of the search, L.M. described the search as, "he's in your pockets, searching around your pockets.   Then he goes to, like, the V-line, which is, like close to my – my testicles. And around there he, like, starts to, like, cup in and actually, like grab my testicles and my – my penis at, like, the same time.   And, like, he would, like, feel it for a little bit, like, a little while."   UMF 77.   There was no skin-to-skin contact during this search.   UMF 83.   This conduct is said to have occurred in front of Mr. Galindo, but L.M. never said anything in protest to this conduct.   UMF 79, 80.   L.M. never said to Mr. Galindo, "This man just touched my penis" or "fondled my testicles." UMF 81.

There is no evidence in the record to show that any contact by Mr. Archuleta of L.M.'s genital area during the pocket search was anything other than incidental or accidental; other than describing a "grab" or "cup" of the genital area, there is no evidence of any prolonged rubbing and no evidence that the touching was sexual in nature.   L.M.'s evidence regarding the third search does not show any conduct that rises to the level of a constitutional violation.

**3.  The school searches of J.M. were justified by reasonable, individualized suspicion that L.M. possessed contraband and/or weapons and each search as conducted was reasonable in scope.**

J.M. was a 15- or 16-year-old high school student when he claims he was searched inappropriately by Mr. Archuleta on two occasions during his sophomore year, which was Fall of 2019 to Spring of 2020.  UMF 84.  J.M. testified that during his sophomore year, he was written up for disciplinary offenses over 40 or 50 times and that he was searched by school personnel more than 50 times.  UMF 85.

One of the searches occurred in early October, 2019, when J.M. was called into Principal Scott Affentranger's office the day after school security had intervened in an incident where J.M. "and his group (gang) of friends were supposed to fight another kid" and J.M. was observed on security camera footage as having been present at the incident. UMF 86.  The October 2019, incident occurred at a time when there was heightened concern by school administrators that there was the potential for a "great act of violence" at Cleveland High School and J.M. was specifically believed to be involved, or peripherally involved, with a group of boys that was causing the concern for potential violence on campus.  UMF 36.

Mr. Archuleta recalls searching J.M. on October 4, 2019, when Mr. Baca asked Mr. Archuleta to search J.M. and J.M.'s backpack, whereupon Mr. Archuleta located an electronic cigarette and a bottle of E-Cig juice.  UMF 87. J.M. testified that he was instructed to take off his shoes and insoles, Mr. Archuleta checked his socks, and then told J.M. to flip his pant waistband inside out, told him to turn around, and then Mr. Archuleta put his hands in J.M.'s pockets.  UMF 89, 90.  According to J.M., Mr. Archuleta "felt a bulge or something" and asked if J.M. had shorts on underneath. UMF

91.  Mr. Archuleta then did a pat down of J.M.'s legs "all the way up and down," and checked the pant cuffs and socks, and Mr. Archuleta was "checking my left cuff on my left leg, and he's going up patting my leg, and he's getting really high in my thigh at this point."  UMF 92.  As Mr. Archuleta was patting J.M. really high on the left thigh, J.M. felt something touch him on his left testicle. UMF 93.  The touching of the left testicle occurred over J.M.'s pants and may have occurred for a few seconds. UMF 94.

The facts in the record concerning the October 2019, search shows that it was reasonable for Mr. Baca to instruct Mr. Archuleta to conduct a search of J.M. and his backpack weapons and contraband and that the search conducted, as J.M. described, was not unreasonable under the law.  As noted, the search occurred during a time of heightened concern regarding the potential for school violence, and school officials were worried that the violence could involve guns.  UMF 35, 36.  A student search that includes a pat-down of outer clothing, where the pat-down is described as "really high" on the student's thigh and touches the left testicle, without skin-to-skin contact, or any evidence of prolonged groping or touching of a sexual nature, is not a constitutional violation. *See Golden,* 2012 WL 4327652, *6 (incidental contact with genital area during pat-down search of outer clothing was *de minimis* intrusion and not a Fourth Amendment violation).  There is no evidence in the record to show that any over-clothing contact by Mr. Archuleta of J.M.'s genital area during the search was anything other than incidental or accidental.  J.M.'s evidence regarding the October 2019, second search does not show any conduct that rises to the level of a constitutional violation.

The second incident involving a search by Mr. Archuleta occurred in the security office next to the nurse's office. UMF 95. Mr. Archuleta does not recall ever searching

J.M. without a witness present. UMF 100. Mr. Archuleta first searched J.M.'s back pack, told him to flip his waistband, looked in his socks, then told J.M. to face the other direction. UMF 90. Mr. Archuleta was performing a "cop pat down" of J.M.'s legs, "doing the same, you know, leg to leg pat down, and then out of nowhere, I was grabbed between – my legs. But this time it wasn't – it wasn't just my left testicle. He essentially tried to grab everything." UMF 95. J.M. testified that he was again searched by Mr. Archuleta on additional occasions but that J.M. was never again searched in what he felt was an inappropriate manner. UMF 96.

There is no evidence in the record to show that any contact by Mr. Archuleta of J.M.'s genital area, which was at all times over the clothing and never skin-to-skin, was ever anything other than incidental or accidental; other than describing being "grabbed between – my legs" where Mr. Archuleta was described as trying "to grab everything," there is no evidence of any prolonged rubbing and no evidence that touching was sexual in nature. J.M.'s evidence regarding this search does not show any conduct that rises to the level of a constitutional violation.

**4. Plaintiffs cannot show that the rights they seek to assert were clearly established at the time of the alleged conduct.**

Plaintiffs cannot meet their qualified immunity burden of showing that the constitutional right they assert was clearly established at the time of the alleged conduct. *Dimas*, 2023 WL 2573345, \*6. The facts in the record do not show that any of the alleged searches lacked Fourth Amendment reasonableness at either the inception of the searches or in the scope of the searches. Accordingly, Defendant Archuleta is entitled to qualified immunity. Further, it was not clearly established that a campus security aide, who was required by school district policy to conduct the pat down of a student at the

direction of a school administer – where the administrator possessed the individualized suspicion -- could violate any student's constitutional rights.

Furthermore, as the Ninth Circuit has stated, "not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or *de minimis* and thus constitutionally reasonable." *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001); *Zayas v. Ortega*, 2018 WL 11227735, *10 (N.D.Cal. August 10, 2018)(Chen, J.)(officer entitled to qualified immunity where contours of *de minimis* touch are not clearly established and facts do not approach egregious where open palm search over clothed female chest area lasted about 10 seconds). Accordingly, at no time when Mr. Archuleta was employed as a campus security aide, was it a clearly established violation of the Fourth Amendment to conduct an over-the-clothing student pat-down search, including the search of pockets, where he inadvertently or incidentally touch a student's genitals.

**B. Defendant Archuleta is Entitled to Qualified Immunity and Summary Judgment on Plaintiffs' Section 1983 Claims for Illegal Search and Seizure Under the Fourteenth Amendment because the facts in the record do not show a constitutional violation and Plaintiffs cannot show that the constitutional right they assert was clearly established.**

To the extent that Plaintiffs pursue any Section 1983 claim under the Fourteenth Amendment, Defendant Archuleta is entitled to the defense of qualified immunity. Pursuant to the Fourteenth Amendment, public school students have a right to be free from violations of bodily integrity, including freedom from excessive physical abuse by school employees. *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401(1997). Claims of excessive force, or of physically abusive government conduct, are to be analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 394-95, 109 S.Ct.1865 (1989). But even if the Fourteenth Amendment

were to apply to an in-school, student pat-down search, Plaintiffs' claims would not reach the substantive due process requirement of demonstrating conduct that shocks the conscience. *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999) (internal quotations and citations omitted); *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 750 (10th Cir. 2013)(substantive due process prohibits only the most egregious official conduct). *Id.* There simply are no facts in the record to show that Mr. Archuleta's conduct demonstrates "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995). There are no facts to show that the described incidental, non-sexual contact, was conscience shocking.

Mr. Archuleta is entitled to qualified immunity on any substantive due process claim because Plaintiffs cannot show the violation of the Fourteenth Amendment and it was not clearly established that the right they seek to assert was clearly established at the time of the alleged conduct. Accordingly, summary judgment should be granted on Plaintiffs' Fourteenth Amendment claims.

## VI. CONCLUSION

Plaintiffs' version of the facts, that are supported by the record, simply do not show the violation of a constitutional right. Plaintiffs cannot show that any alleged student search was unreasonable at its inception or unreasonable in scope. Further, Plaintiff cannot show that the rights they seek to assert were clearly established at the time Mr. Archuleta was said to have searched Plaintiffs. Plaintiffs have not met this heavy, two-part burden and Mr. Archuleta is entitled to qualified immunity and to summary judgment on Count I.

WHEREFORE, Defendant George Archuleta respectfully requests the Court grant his Motion for Summary Judgment on the Basis of Qualified Immunity on Count I and dismiss all of Plaintiffs' claims against him with prejudice and requests an award of fees and costs as may be allowed by law, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**QUIÑONES LAW FIRM LLC**

By: _Electronically Filed /s/ Carlos M. Quiñones_
       CARLOS M. QUIÑONES, ESQ.
       1223 S. Saint Francis Dr., Ste. C
       Santa Fe, NM  87505
       (505) 992-1515   (505) 992-1714 (fax)
       *Attorney for Defendant George Archuleta*

It is hereby certified that undersigned counsel filed the foregoing electronically through the CM/ECF system on September 11, 2023, which caused all counsel to be served by electronic means:

_Electronically Filed /s/ Carlos M. Quiñones__
CARLOS M. QUIÑONES