IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARK MONDRAGON, o.b.o. D.M.,
a minor child,

    Plaintiffs,

vs.                           Case No. 1:21-cv-00427 KK/JMR

RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and
GEORGE ARCHULEETA, in his individual and official capacity,

    Defendants.

and

SARAH MONTOYA, o.b.o L.M.,
a minor child,

    Plaintiffs,

vs.                           Case No. 1:21-cv-00648 KK/JMR

RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and
GEORGE ARCHULEETA, in his individual capacity, Defendants.

and

ANGELA SALAZAR, o.b.o J.M.,
a minor child,

    Plaintiffs,

vs.                           Case No. 1:21-cv-00751 KK/JMR

RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and
GEORGE ARCHULEETA, in his individual capacity, and JOHN
DOE # 1, in his individual capacity,

    Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON THE BASIS OF GOVERNMENTAL IMMUNITY**

1

Sarah Montoya, as representative of L.M.[1], Mark Mondragon as representative of D.M., and Angela Salazar as representative of J.M.[2] (collectively "Plaintiffs" or "Children"), through undersigned counsel, responds as follows to Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity (Doc. No. 66, "Def. Mot." or "Motion"). As explained below, the Motion lacks merit and should be denied in its entirety.

## I.   STATEMENT OF FACTS

Plaintiffs' Disputed Material Facts and Additional Material Facts are stated in a separate document titled Plaintiffs' Joint Statement of Material Facts which has been filed contemptuously with this motion response (Doc. 76). Plaintiffs' Material Facts are lettered and are referred to as PAF as a shorthand for Plaintiffs' Additional Material Facts. Defendants' Material Facts are numbered and are referred to as DUF as shorthand for Defendants' Undisputed Material Facts. Material facts that the Defendants asserted and Plaintiffs have disputed are numbered and are referred to as Disputed Material Facts or DF.

## II.   OVERVIEW

Plaintiffs incorporate by reference Section II of their Response in Opposition to Summary Judgment on the Basis of Qualified Immunity (Doc. 77) at pages 2-4.

## III.   LEGAL STANDARD

Plaintiffs incorporate by reference Section III A of their Response in Opposition to Summary Judgment on the Basis of Qualified Immunity (Doc. 77) at pages 4-5.

## IV.   ARGUMENT ON COUNT II

A.  <u>Archuleta is a Law Enforcement Officer under NMSA 1978, § 41-4-12</u>

The crux of Defendants' argument is that Archuleta cannot be a law enforcement officer unless his "principal duties" are of a "law enforcement nature." Def. Mot. at 5. Defendants derive

---

[1] L.M. is referred to in deposition transcripts and statements of fact as both L.M. and E.M.
[2] J.M. is referred to in deposition transcripts and statements of fact as both J.M. and J.S.

this "principal duties" requirement from NMSA 1978, § 41-4-3(D). That statute defines a "law enforcement officer" as:

> [A] full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA 1978, § 41-4-3(D) (cited in Def. Mot. at 7). Defendants go on to discuss—for pages—cases interpreting the "principal duties" language in Section 41-4-3(D). *See* Def. Mot. at 7-12.

The Defendants misunderstand the significance of recent amendments to the Tort Claims Act stating in footnote 2 of their motion that the amendments are not the operative version of the statute. However, it is settled law that under the New Mexico Tort Claims Act the version of the statute in effect at the time a complaint is filed rather than when a tort occurs is the governing statute. *Methola v. Eddy Cnty.*, 1980-NMSC-145, ¶ 14, 95 N.M. 329, 331–32, 622 P.2d 234, 236–37("The Tort Claims Act is a remedial act which applies only prospectively, in the absence of expressed legislative intent to make it retroactive. *See Southwest Distributing v. Olympia Brewing*, 90 N.M. 502, 565 P.2d 1019 (1977). Since the right to sue governmental entities and their officials was governed entirely by statute, the applicable statutes are those which were in effect when the suits became pending cases").

The specific legal question presented here with regard to the applicability of the law enforcement definition contained 41-4-12 when a tort was committed when the 1977 iteration of the statute was the operative statute and was filed after the statute was amended to add the law enforcement definition in Section 41-4-12 was recently addressed by Judge Strickland in the case of *Bradshaw v. Management and Training Corporation*, Judge Strickland ruled that the holding in *Methola* controlled and compelled the conclusion that the applicable statue in that case was the one in effect when the Plaintiff filed their lawsuit, not the date of occurrence of tort. *Bradshaw v. Mgmt. & Training Corp.*, No. 1:22-CV-00139-MIS-LF, 2023 WL 5934397, at *13 (D.N.M. Sept. 12, 2023). The first of the three complaints filed by plaintiffs against Defendants was filed by D.M. on March 15, 2021. See Doc 1-3 at page 6. L.M.'s complaint was filed on June 10, 2021 see Doc

3

1-3 in 1:21-cv-00648. J.S.'s complaint was filed on June 29, 2021 see Doc 1-3 in 1:21-cv-00751. *Methola* and *Bradshaw* make it clear that the September 20, 2020 amendments to NMSA 1978, § 41-4-12 is the applicable version of the statute in the instant case. The changes to NMSA 1978, § 41-4-12 were significant because the legislature specifically amended to NMTCA to clarify the scope of the law enforcement officer waiver by adding the new definition to NMSA 1978, § 41-4-12. Senate Bill 5 was titled, in relevant part, "AN ACT … CLARIFYING DUTIES OF A LAW ENFORCEMENT OFFICER IN THE TORT CLAIMS ACT" and amended NMSA 1978, § 41-4-12 as follows:[3]

| Previous Version | May 20, 2020 Amended Version |
|---|---|
| The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.<br><br>NMSA 1978, § 41-4-12 (effective to May 19, 2020). | The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, failure to comply with duties established pursuant to statute or law or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties. *For purposes of this section, "law enforcement officer" means a public officer vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of committing a crime, whether that duty extends to all crimes or is limited to specific crimes*.<br><br>NMSA 1978, § 41-4-12 (Eff. May 20, 2020 to Sept. 20, 2020) (emphasis added). |

By its plain language, the May 20, 2020 amendment's definition supersedes the one found in NMSA 1978, § 41-4-3(D). And, crucially, it removes the "principal duties" language included in NMSA 1978, § 41-4-3(D). The September 20, 2020 amendment further modified the law

---

[3] The May 2020 Amendment is attached as Plaintiffs' Exhibit A.

enforcement officer definition replacing the term "public officer vested by law" with "public officer or employee vested by law" NMSA 1978, § 41-4-12. The definition in NMSA 1978, § 41-4-12 discusses public officers and employees vested with "the power" to maintain order or to detain persons suspected of committing crimes. This is a significant change from the language used in NMSA 1978, § 41-4-3 which focused on an individual's duties.

Under the new definition of NMSA 1978, § 41-4-12 what matters is the ability of an individual to engage in the functions described rather than the obligation to carry out the functions. Another reason the definition in NMSA 1978, § 41-4-12 controls over NMSA 1978, § 41-4-3 is that the language in NMSA 1978, § 41-4-12 specifically states before providing the definition that the definition is "for the purposes of this section". Meaning that for purposes of NMSA 1978, § 41-4-12 the definition in that section controls over definitions in other sections of the Tort Claims Act, such as NMSA 1978, § 41-4-3.

The case law Defendants cite to in support of the principal duties test are all based on the interpretation of the definition in NMSA 1978, § 41-4-3. *Rayos v. State ex rel. New Mexico Dep't of Corr., Adult Prob. & Parole Div.*, 2014-NMCA-103, ¶ 8, 336 P.3d 428, 431:

> "Significantly, the statutory provision directs us to determine a public employee's "principal duties *under law.*" Section 41–4–3(D) (emphasis added). However, not all duties of public employees are enumerated in a statute or regulation. Accordingly, our cases have also considered such sources as departmental job descriptions and affidavits in determining the duties of public employees."

None of the cases cited by Defendant interpret the version of the NMSA 1978, § 41-4-12 which is actually the operative statute in this case. This is significant because the definition contained in NMSA 1978, § 41-4-12 – which was introduced by the legislature to clarify what officers' duties are under the TCA – omits the language contained in NMSA 1978, § 41-4-3 regarding an officer's principal duties and instead focuses on an induvial power to actually perform the functions in the definition. Simply put the principal duties test does not apply in this case because the statutory

language the principal duties test is rooted in is replaced with different language in the statutory amendment discussing the power to act rather than an obligation to act. Under the definition in NMSA 1978, § 41-4-12 Defendant Archuleta is a public officer or employee vested by law with the power to both maintain order and to detain individuals suspected of committing crimes and the waiver provision applies to each tort he committed in this case.

## B. Maintaining Order

Defendants cite to *Hernandez* to provide some meaning the term maintain public order. They omit the second half of the cited paragraph which describes several law enforcement duties that the 10th circuit interpreted, within the context of the principal duties test under 41-4-3, as duties germane to maintaining public order:

> "Traditional law-enforcement duties that directly impact public order include "preserving the public peace, preventing and quelling public disturbances, and enforcing state laws, *including but not limited to* the power to make arrests for violation of state laws." *Limacher*, 198 P.3d at 376 (emphasis added); *see also Baptiste*, 848 P.2d at 1107 ("Maintaining public order can be accomplished without the power to arrest.")."

*Hernandez v. Fitzgerald*, 840 Fed. Appx. 333, 338 (10th Cir. 2020)

Defendant Archuleta acting in his role as a security guard performed the kinds of functions specifically discussed in *Hernandez*, including maintaining public order. PAF KKKK. School Principal Milan Baca stated in his deposition that security and student discipline go "hand in hand". *Id*. Security and student discipline both contribute towards maintaining public order in a school. The searches Mr. Baca directed security guards to conduct at V. Sue Cleveland were intended to promote student discipline and security. Id.

Mr. Mangin also testified that the daily routine of his security guard staff members is geared towards enforcing order in the school through patrolling, detecting and remedying activities that would disrupt order in the school such as students using bathrooms for fights or a gathering place

6

during class time. *Id*. Head principal Affentranger stated that his work in conjunction with security officers is "to maintain order". *Id*. Affentranger also specifically ties the use of the school's search policy to search for prohibited items on students as an important means of maintaining order in the school. *Id*.

While Archuleta clearly performed the kinds of functions that maintain public order as discussed in *Hernandez* the plain definition of the term public order is more helpful in determining its meaning given that *Hernandez's* interpretation of the term was undertaken through the lens of the principal duties test which is not applicable in the instant case. Law Insider defines public order as follows, "Public Order means the situation that exists when people obey the laws, rules or authority of the State".[4]

The job duties of security guards as described by Principals Affentranger and Baca and Mr. Mangin are all in line with the plain meaning of the term maintain public order. The specific actions that Mr. Archuleta has been sued for are batteries that occurred in the scope of his duties performing searches of the plaintiff children. PAFs FFF, III, TTT, WWW, BBBB, and CCCC.

### C. Detaining Individuals Suspected of Committing Crimes

According to Mr. Mangin the purpose of security guards at V. Sue Cleveland is to detect if students are engaged in "illegal activity". PAF G. During the searches Defendant Archuleta performed on the plaintiffs he detained the plaintiffs. PAFs FFF, TTT, WWW, BBBB, CCCC. Security guards at V. Sue Cleveland under the school's search policy were directed to, when appropriate, seize the property of students and provide that property to sworn, salaried and commissioned law enforcement officers to further criminal investigation and prosecution of

---

[4] Law Insider, Public Order, LAWINSIDER.COM, https://www.lawinsider.com/dictionary/public-order (last visited [April 5, 2024]).

students. Disputed Fact 1. Mr. Archuleta was a public officer or employee vested by law with the power to detain individuals suspected of committing crimes.

### D. Defendant Rio Rancho Public Schools is also subject to the waiver of Sovereign Immunity contained in NMSA 1978, § 44-4-12

"Because the doctrine of respondeat superior applies to claims under the NMTCA, a governmental entity may be held vicariously liable "for any tort of its employee acting within the scope of duties for which immunity is waived."" *Bradshaw v. Mgmt. & Training Corp.*, No. 1:22-CV-00139-MIS-LF, 2023 WL 5934397, at *16 (D.N.M. Sept. 12, 2023)(quoting *Silva v. New Mexico*, 745 P.2d 380, 385 (N.M. 1987)). Sections III A-C of Plaintiffs Response establish liability for Rio Rancho Public Schools due to the actions of their employee Archuleta.

### E. Violations of the New Mexico Constitution as basis for Waiver of Immunity

Plaintiffs agrees with Defendants arguments regarding violation of the State Constitution as a basis for waiver of sovereign immunity under Section 41-4-12 and will not be asserting violations of the State Constitution as grounds for a waiver of Sovereign immunity under Section 41-4-12.

### V.     ARGUMENT ON COUNT III

Defendant Rio Rancho Public Schools claims that they are entitled to summary judgment on Count III which alleges that Rio Rancho Public Schools through their negligence, specifically negligent hiring, training, supervision and retention of Defendant Archuleta caused the batteries described in the Complaints and Plaintiffs' Statement of Undisputed Material facts to occur because Mr. Archuleta is not a law enforcement officer. Def. Mot. at 12-13. As argued extensively in the foregoing pages of this motion Mr. Archuleta is a law enforcement officer.

Defendants make no other argument in support of summary judgment on Count III – the motion as to Count III should be denied and any additional arguments as to the fact sufficiency for

negligent training, hiring, retention and supervision should not be considered because Defendant Rio Rancho Public Schools has not met their initial burden of production on any other legal argument for summary judgment on this count. "Defendants Archuleta and Rio Rancho Public Schools bear the initial burden of showing the absence of evidence to support Plaintiffs' claims." Def. Mot. at 4 citing *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

New Mexico law is clear that when negligence causes a listed tort in Section 41-4-12 to occur that immunity is waived, this includes negligent training and supervision. *Turner v. City of Portales*, No. CV 98-1367 BB/RLP, 1999 WL 35808310, at *2 (D.N.M. Nov. 18, 1999)(Both *Quezada* and *Ortiz* held that, if negligent training or supervision causes one of the torts named in Section 41-4-12 to occur, immunity is waived for the negligent training or supervision). Plaintiff has alleged in Count III of their Complaints that Rio Rancho Public Schools through its negligent supervision of Archuleta caused the batteries to occur and the only argument made to dismiss Count III is whether or not Mr. Archuleta is a law enforcement officer.  Count III should not be dismissed.

## VI.   ARGUMENT ON COUNT IV

Immunity from liability for damages resulting from bodily injury are waived under Section 41-4-6 when injury is caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. Ann. § 41-4-6(A). The New Mexico Supreme Court interpret[s] Section 41-4-6(A) broadly to waive immunity 'where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." *Armijo v. Bd. of Cnty. Commissioners of the Cnty. of Socorro*, No. CV 20-355 GBW/SMV, 2021 WL 1176317, at *6 (D.N.M. Mar. 28, 2021)(citing *Encinias v. Whitener*

*Law Firm, P.A.*, 310 P.3d 611, 616–17 (N.M. 2013)). However, immunity is not waived for a condition that only endangers the eventual victim. *Id*. The dangerous condition may arise due to the presence of dangerous actors on public property. *Id*.

In the instant case Archuleta posed a danger to the entire student body due to his proclivity to grope students during searches. PAFs FFF, III, TTT, WWW, BBBB, and CCCC. Rio Rancho Public Schools had actual knowledge of Mr. Archuleta posing a danger to students in the school due to Joseph Salazar informing principal Affentranger that he had been touched inappropriately by Mr. Archuleta. PAF NNN. Liability may also exist when a governmental entity should have known of a dangerous condition prior to the injury occurring. Def. Motion at 16 (citing *Smith v. New Mexico*, 2020 WL 6702018, *Upton,* 140 N.M. 205, 208, and *Callaway v. New Mexico Dept. of Corrections*, 1994-NMCA-049 ¶ 19, 875 P.2d 393, 399.

The dangerous condition may also arise from deficiencies in "safety policies necessary to protect the people who use the building" or general noncompliance with these policies. *Armijo v. Bd. of Cnty. Commissioners of the Cnty. of Socorro*, No. CV 20-355 GBW/SMV, 2021 WL 1176317, at *6 (citing *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, at 1261-3 (N.M. 2006)(failure to follow appropriate emergency protocols and an individualized safety protocol established for an asthmatic student)).

In previous cases waiver of immunity for liability has been found under Section 41-4-6 when schools do not follow safety procedures. In *Upton* an asthmatic student died when the child's school did not follow safety protocols to address the child's breathing issues during physical activity. *Upton*, 2006-NMSC-040, ¶ 13 (Sept. 12, 2006). *Armijo* expands on when violation of safety procedures or policies can waive sovereign immunity for the operation of a building:

> "Just as schools generally have safety procedures in place for various kinds of emergencies, a school simply cannot operate in a safe, reasonable, and prudent manner

> without affording, at the very least, the health and safety services that students have been promised, and upon which parents have relied. Safety procedures are particularly vital for those students known to have special needs and special risks. In this instance, the School District's failures to comply with such protocols and assurances created a dangerous condition, no different for Sarah than was the swimming pool for the plaintiff in *Leithead*."

*Armijo v. Bd. of Cnty. Commissioners of the Cnty. of Socorro*, No. CV 20-355 GBW/SMV, 2021 WL 1176317, at *6.

In the instant case all students in the school are subject to search by school employees, specifically security guards like Mr. Archuleta. The school recognizes that searches of students may cause harm to students if done in an inappropriate manner – which is exactly why they have enacted a search policy that discusses in Section C requirements that govern the conduct of permissible searches by only authorized persons. *See* Defendant Exhibit G. The policy requires that searches be conducted 1) in private 2) by an authorized school official of the same sex as the person to be searched 3) in the presence of a witness of the same sex. *Id*. The policy specifically prohibits strip searches. *Id*. Searches are no more effective at detecting contraband or other prohibited items when performed by someone of the same sex, are performed in private, or performed in the presence of a witness. Those conditions are present to prevent unwanted or inappropriate conduct during the search of students. Strip searches – which are objectively more effective at locating items on a person than other searches – are outright banned. The only conceivable reason to ban a more effective type of search is for the benefit of the person being searched.

Rio Rancho Public Schools took additional steps to protect students during searches by training security guards in how searches are to be conducted. The training on how searches are to be conducted include numerous safety measures. Guards are to not place their hands in

11

a student's pockets[5] during a search. PAF F. Students should always be searched in the presence of a school administrator. PAF H. A student's groin, buttocks, or inner thigh should never be touched during a search. PAF I. Guards are trained that even incidental touching of a student's genitals during a search is not permitted. PAFs I, K, M, U, V, W, X, Y. The

Mr. Archuleta testified specifically that he understood this training and that if he followed the training provided by the school it would not be physically possible for him to touch a student's genitals during a search. PAF Y. Sadly Mr. Archuleta did not follow the school's search policies or training on how to conduct searches. PAFs FFF, GGG, III, TTT, WWW, YYY, ZZZ, BBBB, CCCC.

To monitor compliance with the school's search policy and training on the conduct of searches security guards are required to write a report each and every time they conduct a search of a student. PAFs BBB and CCC. Archuleta did not write reports for each of his searches. PAF XXX, AAAA. The school policy that required searches to be videotaped is likewise in place for the benefit of students by enabling a means to monitor staff actions and deter staff from engaging in inappropriate conduct that they know is being videotaped. Archuleta testified that he never followed policy that searches be video recoded because he never had a functioning body worn camera – even though he was instructed to video record searches. PAFs WW, XX, YY and ZZ. Had the school followed their own policies the harm to the Plaintiffs would either have been prevented outright or Archuleta's bad acts would have been discovered after the first time he groped a student. It bears repeating – the school's policies and training on searches are in place precisely because they are aware of the inherent dangers of allowing school officials and employees to have hands on contact with a student.

---

[5] The only stated exception to this rule is to retrieve a weapon from a student's pocket.

The policies and training are in place to prevent the specific type of harm that occurred in this case – inappropriate touching of students during a search. Much like placing lifeguards at a pool to prevent swimmers from drowning these policies and training are protective measures to prevent the foreseeable harm of inappropriate touching during searches. *See Leithead v. City of Santa Fe*, 1997-NMCA-041, 123 N.M. 353, 940 P.2d 459 (Holding that lifeguard services at pools are so essential that they are akin to other kinds of safety equipment that are fundamental in making premises reasonably safe and waiving immunity from liability under Section 41-4-6).

The record in this case demonstrates that the school had actual knowledge of the danger Archuleta posed to students and did not follow their own policies to monitor Archuleta's compliance with school policies and training that were designed to make sure searches happened in a way that was safe for students. Immunity for liability is accordingly waived pursuant to Section 41-4-6 as an operational failure to respond to or discover conditions which can pose a danger to a class of persons involved in or affected by an activity on the property. *See Vanhorn as Next Friend of Vanhorn v. Carlsbad Mun. Sch. Dist.*, 2024 WL 322044, at *4 (N.M. Ct. App. Jan. 22, 2024)(citing *Gebler v. Valencia Reg'l Emergency Commc'n Ctr.*, 2023-NMCA-70, ¶ 16, 535 P.3d 763). Waiver of immunity of liability also exists due to the school's failure to create or to implement reasonably appropriate safety policies and operational procedures to make public properties safe for the public who use them. *Id.*

Defendants' citation to *Trujillo v. Salazar*, 2006 WL 1228827, at *9-10(D.N.M. Mar. 1, 2006) forecloses arguments that Archuleta is personally liable under Section 41-4-6 and no argument will be offered in this response that Section 41-4-6 is applicable to Defendant

13

Archuleta. To be clear Plaintiffs do believe liability exists under Section 41-4-6 for Rio Rancho Public Schools for the reasons stated above and do not abandon or waive any of their arguments as to the school by conceding that Section 41-4-6 does not apply to Defendant Archuleta as an individual.

## CONCLUSION

With facts and inferences being required to be drawn in Plaintiffs favor at this stage of litigation the facts in the record support waiver of immunity for liability on all counts the Defendants have moved for summary judgment. The *Methola* and *Bradshaw v. Mgmt. & Training Corp* make it crystal clear that the version of Section 41-4-12 that applies in this case is the version of 41-4-12 that was in effect at the time the complaints were filed. The most recent amendment was in September of 2020 and each of the Plaintiff's respective complaints were filed in 2021. Under the new law which was specifically written to clarify duties of law enforcement officers under Section 41-4-12 Archuleta is a law enforcement officer. Section 41-4-6 clearly applies and waives immunity from liability under both recognized legal theories in New Mexico: operational failure to respond to or discover conditions which can pose a danger to a class of persons involved in or affected by an activity on the property and school's failure to create or to implement reasonably appropriate safety policies and operational procedures to make public properties safe for the public who use them. The Defendants' motion should be denied.

Respectfully submitted,

*/s/ Jason Bowles*
Jason Bowles
Bowles Law Firm
4811 Hardware Dr NE
Bldg D, Suite 5
Albuquerque, NM 87109
505-217-2680
jason@bowles-lawfirm.com

-and-

14

Todd J. Bullion
Law Office of Todd J. Bullion
4801 Lang Ave NE
Suite 110
Albuquerque, NM 87109
(505) 494-4656
todd@bullionlaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of April, 2024, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Carlos M. Quiñones
Jerry Walz
Alisha Walz
quinoneslaw@cybermesa.com
jerryawalz@walzandassociates.com
awalz@walzandassociates.com

*Counsel for Plaintiffs*

*/s/ Todd J. Bullion*
Todd J. Bullion