# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                              **Case No. 1:21-cv-00427 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual and official capacity,**

      **Defendants.**

**and**

**SARAH MONTOYA, o.b.o L.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                              **Case No. 1:21-cv-00648 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual capacity,**

      **Defendants.**

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                              **Case No. 1:21-cv-00751 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and**
**GEORGE ARCHULETA, in his individual capacity, and**
**JOHN DOE # 1, in his individual capacity,**

      **Defendants.**

**DEFENDANTS' JOINT REPLY TO**
**PLAINTIFFS' JOINT STATEMENT OF UNDISPUTED FACTS**

COME NOW Defendants, Rio Rancho Public Schools Board of Education, by and through counsel, Walz and Associates, P.C., (Jerry A. Walz and Alisha L. Walz), and George Archuleta, by and through counsel Carlos M. Quiñones, Esq., Quiñones Law Firm LLC, and pursuant to D.N.M.LR-Civ. 56.1(b) hereby submit this joint reply to "Plaintiffs' Joint Statement of Undisputed Facts," filed on January 26, 2024. (Doc. 76).[1]

In response to Defendants' motions for summary judgment, Plaintiffs may set forth additional facts other than those which respond to Defendants' UMFs, but "each additional fact must be lettered." D.N.M. LR-Civ. 56.1(b); *Wells v. Hi Country Auto Group*, 2014 WL 12623030, *2 (D.N.M. January 8, 2014)(Johnson, J.)(additional facts should be set forth in a separate portion of plaintiff's response instead of intermixed with plaintiff's response to the undisputed material facts); *Amparan v. Demir*, 234 F.Supp.3d 1110, 1114 (D.N.M 2017)(court would not consider plaintiff's additional facts set out in response to defendant's undisputed material facts). And in all instances, the facts disputed by Plaintiffs and any additional facts set forth "must refer with particularity to those portions of the record upon which the non-movant relies." D.N.M. LR-Civ. 56.1(b). Local Rule 56.1 "is designed to isolate the relevant facts and to present them in an *orderly* fashion to the Court." *Wells*, 2014 WL 12623030, *6 (emphasis supplied)(*quoting Coffey v. United States*, 870 F.Supp.2d 1202, 1209 (D.N.M. 2012)).

---

[1] Defendants note that at the outset that "Plaintiffs' Joint Statement of Undisputed Facts" mis-identifies one of the plaintiff-students as "J.S," in its opening sentence wherein it is stated, "Comes now, Plaintiffs *J.S.,* D.M. and L.M. […]," despite the fact that this particular plaintiff-student filed suit specifically using the letters "J.M." throughout his complaint. *See* Complaint, Doc. 1. In an effort to avoid further confusion, Defendants will refer to this individual as "J.M.(J.S.)."

## I.  **Objections to Plaintiffs' assertions in Section  I, "Disputed Material Facts."**

1.    Defendants object to Plaintiffs' response to Defendants' Undisputed Material Fact ("UMF") 8, as follows:

a.    Plaintiffs' response fails to dispute or controvert the facts asserted therein, which is a listing of the "Essential Job Responsibilities" of a Campus Security Aide as specifically identified on the job description submitted by Defendants in their Exhibit C.

b.    Plaintiffs' response misrepresents and misconstrues facts in the record by stating that "Mr. Mangin's statement in his deposition that the *purpose of security guards at V. Sue Cleveland is to detect if students are engaged in 'illegal activity*.'" (Doc. 76, p. 3)(emphasis supplied).  The testimony relied upon does not pertain to the "purpose" of campus security aides in general but refers instead to campus security aides entering school bathrooms to make sure that students are not fighting or vaping or otherwise engaging in "illegal activity."  (Plaintiffs' Exhibit A, Mangin Deposition 16:7-17:20, [76-1]).

c.    Plaintiffs' response fails to comply with D.N.M. LR-Civ. 56.1(b), by asserting facts regarding the Campus Security Aide's so-called "role" without referring "with particularity to those portions of the record upon which" Plaintiffs rely.

d.    Plaintiffs' response fails to comply with D.N.M. LR-Civ. 56.1(b) by including additional facts concerning school policies regarding "Seizure of Items," without separately lettering these facts.

2.    Defendants object to Plaintiffs' response to UMF 10.  Plaintiffs' response to UMF 10 cross references 20 of Plaintiffs' "Additional Material Facts" ("PAF") as set forth in their Joint Statement of Undisputed Facts at BB, EE, FF, WW, XX, YY, FFF, GGG, III, LLL, SSS, TTT, UUU, VVV, WWW, YYY, ZZZ, BBBB, CCCC, and DDDD. (Doc. 76), pp. 15-27.  Plaintiffs' response to UMF 10 fails to "refer with particularity to those portions of the record upon which the non-movant relies."   D.N.M. LR-Civ. 56.1(b).  Plaintiffs' failure to follow the local rules has made "this entire matter far more complicated than it need have been" and has unreasonably forced Defendants and the Court "to undertake the tedious task of parsing through Plaintiff's confusing and disorganized response" to Defendants' facts.  *Wells*, at *6.  Without waiving this objection, Defendants state that they have responded fully to each of Plaintiffs' 20 "PAF" identified in the response to UMF 10.

3.    Defendants object to Plaintiffs' responses to UMF 12 and 13.  In UMF 12 and 13, it is asserted that Assistant Principal Millan Baca testified as to "what typically will occur" during the search of a student; Mr. Baca used the word "typically" several times in his response to questioning.  (Millan Baca Deposition p. 18:7-24; 23:15-20, Defendants' Exhibit A, [65-1]).  In an effort to controvert Mr. Baca's specific testimony as to what typically occurs, Plaintiffs refer to the deposition testimony of Security Director Don Mangin but fails to "refer with particularity to those portions of the record upon which the non-movant relies."   D.N.M. LR-Civ. 56.1(b).   Further, Plaintiff improperly cross-references additional facts from the depositions of each Plaintiff citing to PAF "FFF, GGG, III, LLL, SSS, TTT, UUU, VVV, WWW, YYY, ZZZ, BBBB, CCCC, and DDDD," without referring with particularity to the record.

4.     Defendants object to Plaintiffs' response to UMF 14.  Plaintiffs' response represents that "security manager Don Mangin" stated "*that it is never permissible*" during a student search to place their hand in a student's pocket "unless they are retrieving a weapon located during a search."  (Doc. 76, p. 4).  The deposition testimony cited does not support Plaintiffs' statement.  Instead, when asked by Plaintiffs' counsel whether campus security aides are "explicitly told that they are not to reach into a person's pocket," Mr. Mangin responded, "We do not teach them to go into their pocket.  We ask them – we teach them if they find something in the pocket, ask the – the student to hand that to them unless, like I said, unless it's a weapon."  (Don Mangin Deposition p. 15:25-16:6, Plaintiffs' Exhibit A, [76-1]).

5.     Defendants object to Plaintiffs' response to UMF 15, which states that "[i]t is not against school policy for a campus security aide to place his hand in a student's front pocket during a pat down search."  In support of this fact, Defendants cited to Assistant Principal Baca's testimony where Plaintiffs' counsel asked, "Is it against school policy for a guard to place their hand in a student's front pockets during a pat down search?"  Mr. Baca stated, "Not to my knowledge."  (Millan Baca Deposition, p. 25:1-4, Defendants' Exhibit A, [65-1]).  Plaintiffs' response to UMF 15 mischaracterizes the facts stated therein and mischaracterizes the deposition testimony of Mr. Mangin.  As noted above, Defendants were unable to locate any testimony by Mr. Mangin wherein he states, "that it is never permissible for a security officer to place their hand in a student's pocket during a search."

6.     Defendants object to Plaintiffs' response to Defendants' UMF 20, which refers to Mr. Baca's deposition wherein he testified that "very often" when students are

found to have one vape device, "we find them with numerous vape devices, the majority of the time," and that "students have a propensity to carry around multiple devices, very often empty devices." (Millan Baca Deposition p. 40:14-25, Defendants' Exhibit A, [65-1]). Mr. Baca further testified that "[w]e're dealing with an adolescent brain very often that is dealing with an addiction to either nicotine or marijuana." (Id). Mr. Baca's testimony is clearly based his personal experience with student searches wherein he states, "Very often when we find a student with one vape device, we find them with numerous vape devices, the majority of the time." (Id, 40:14-16). Plaintiffs' assertions that there is a lack of foundation and speculation are not supported by their citation to the record. Further, Plaintiffs' assertions regarding the "school's search policy and law" are not supported by any reference to any portion of the record upon which they rely and are "additional facts" that should have been separately lettered, and not intermixed in their response to UMF 20. *Wells*, 2014 WL 12623030, at *2 ("additional facts should have been put forth in a separate portion of Plaintiff's response instead of intermixed with Plaintiff's response to the [UMFs]").

7.     Defendants object to Plaintiffs' response to UMF 21 on the grounds that Plaintiffs' response cross references four of Plaintiffs' "Additional Material Facts" ("PAF") as set forth in their Joint Statement of Undisputed Facts at FFF, TTT, WWW and YYY. (Doc. 76, pp. 20, 23-25). Plaintiffs' response to UMF 21 fails to "refer with particularity to those portions of the record upon which the non-movant relies." D.N.M. LR-Civ. 56.1(b). Without waiving this objection, Defendants state that they have responded fully to each of Plaintiffs' "PAF" identified as FFF, TTT, WWW, and YYY.

8.    Defendants object to Plaintiffs' response to UMF 22 on the grounds that Plaintiffs' response cross references four of Plaintiffs' "Additional Material Facts" ("PAF") as set forth in their Joint Statement of Undisputed Facts at FFF, TTT, WWW and YYY. (Doc. 76, pp. 20, 23-25).  Plaintiffs' response to UMF 22 fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).   Without waiving this objection, Defendants state that they have responded fully to each of Plaintiffs' PAF FFF, TTT, WWW, and YYY.

9.    Defendants object to Plaintiffs' response to UMF 27 on the grounds that Plaintiffs' response cross references Plaintiffs' PAF NNN as set forth in their Joint Statement of Undisputed Facts. (Doc. 76, p. 22).  Plaintiffs' response to UMF 27 fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).  Without waiving this objection, Defendants state that they have responded fully to Plaintiffs' PAF NNN.

10.    Defendants object to Plaintiffs' response to UMF 33 on the grounds that Plaintiffs' response merely cross references Plaintiffs' PAF NNN as set forth in their Joint Statement of Undisputed Facts (Doc. 76, p. 22), and thus fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).   Defendants further object on the grounds that the four pages of deposition testimony upon which Plaintiffs rely contain no specific facts to show that "Rio Rancho Public Schools was ever informed or ever had any notice or knowledge that George Archuleta *had ever touched the genitals of any student*," as is asserted in Plaintiffs' Response to UMF 33.  The deposition testimony of J.M.(J.S.), as relied upon by Plaintiffs, does not controvert the factual assertion in UMF 33.  J.M.(J.S) stated that in

his opinion he informed Principal Affentranger that Mr. Archuleta had touched him "in a sexually inappropriate matter," but there are no specific facts in J.M's(J.S.'s) deposition to show that he ever told Mr. Affentranger that Mr. Archuleta had touched his genitals or his left testicle.    (J.M.(J.S). Deposition p. 93:22-96:22, Plaintiffs' Exhibit J, [76-10]). Deposition testimony to the effect that "some really weird and off-putting things" had occurred, and that something went on "outside the guidelines of how a security guard is supposed to perform a search," and that during the pat-down Mr. Archuleta "was getting really high on the thigh area," does not controvert the factual assertion contained in Defendants' UMF 33.  Without waiving these objections, Defendants state that they have responded fully to Plaintiffs' PAF NNN.

11.    Defendants object to Plaintiffs' response to UMF 34 on the grounds that Plaintiffs' response again merely cross references Plaintiffs' PAF NNN as set forth in their Joint Statement of Undisputed Facts (Doc. 76, p. 22), and thus fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).

12.    Defendants object to Plaintiffs' response to UMF 35 because it fails to comply with D.N.M. LR-Civ. 56.1(b) in that it fails to "refer with particularity to those portions of the record upon which the non-movant relies."  Further, Plaintiffs' response fails to controvert Mr. Baca's deposition testimony that there was "a blow up of violence or threatened violence" at Cleveland High School during the 2019-2020 school year and school officials "were afraid" of the potential for a "large fight" or "a violent confrontation either on campus or off campus."  (Millan Baca Deposition, p. 73:4-7, 14-17, Defendants' Exhibit A, [65-1]).

13.    Defendants object to Plaintiffs' response to UMF 36 because it fails to comply with D.N.M. LR-Civ. 56.1(b) in that it fails to "refer with particularity to those portions of the record upon which the non-movant relies." Further, Plaintiffs' response fails to controvert Mr. Baca's deposition testimony that there was a shooting at V. Sue Cleveland High School in February of 2019 and that there was concern that there would be a great act of violence at school. (Millan Baca Deposition, p. 136:21-137:11, Defendants' Exhibit A, [65-1]).

14.    Defendants object to Plaintiffs' response to UMF 39 on the grounds that Plaintiffs mischaracterize the facts asserted in UMF 39 as Mr. Baca's "opinions" and "speculation and conjecture." (Doc.76, pp. 6-8). The facts in UMF 39 show that Mr. Baca testified as to the fact that school officials were busy during the fall of Plaintiffs' sophomore year trying to "keep […] two groups of boys from hurting each other" and that both L.M. and J.M.(J.S.) were believed to be involved, or peripherally involved, with the two groups." (Doc. 65, p. 9)(citing Milan Baca Deposition pp. 73:8-17; 81:6-20; 84:10-13, Defendants' Exhibit A, [65-1]). Plaintiffs' response fails to controvert the material facts set forth in UMF 39. Accordingly, Mr. Baca's deposition supports UMF 39 as an undisputed material fact in that:

- Plaintiffs' counsel asked Mr. Baca whether he had looked at any documents to refresh his recollection about any interactions he may have had with L.M., and Mr. Baca testified: that L.M. was listed in a document created by Mr. Baca during the 2019-2020 school year "when we had quite a blow up of violence or threatened violence on the campus of Cleveland High School;" that the document was titled "CHS Feud" and concerned a feud between R.R. and X.D. "over a girl that R.R.

liked but that liked X.D.," that L.M. was included in the document because Mr. Baca had asked other principals as to "who would be involved in this" and L.M. was listed as being on the periphery as "loosely backing up one of the two parties that we were afraid was going to get into a large fight or have a violent confrontation;" and that L.M. was included in the document because a student had specifically told Mr. Baca that L.M. would "back R.R. if this turns into a large assault," and because "we knew that L.M. was considered to be "a close friend" of R.R. (Millan Baca Deposition, p. 72:20-73:17, 78:11-25, 80:9-16, Defendants' Exhibit A, [65-1]).

- Mr. Baca testified: "loosely back someone up" means that "They might jump into a fight if a fight actually did occur. And there were quite a few fights that happened between those two groups. Most of them off campus." (Id, p. 78:13-16).

- Mr. Baca testified that he personally placed J.M.(J.S.) on the "CHS Feud" document because J.M.(J.S.) "and R.R. were very close" and because students had told Mr. Baca that J.M.(J.S.) would back up R.R. (Id, p. 81:9-20, 82:8-25).

Furthermore, Plaintiffs' assertion at p.7 that "There was no evidence that L.M. was part of any group or gang," is unsupported by reference to the record. The record shows that J.M.(J.S.) testified that both L.M. and D.M. were in the "group" that J.M.(J.S.) was affiliated with. (Defendants' Ex. R, J.M.(J.S.) Dep. 66:4-21, attached hereto). J.M.(J.S.) further testified that he was part of a group of friends from middle school that included D.M., R.R., G.M., and A.V. (Id, 86:14-87:16).

Evidence in the record shows that D.M. testified that during his freshman year, his "friend group didn't like this other group that was – that was talking all kinds of crap to us like all the time, [and] my friend group didn't like this other group so a couple of

fights happened." (Defendants' Ex. S, D.M. Dep. 145:6-146:5, attached hereto). D.M. testified that there was a "group chat" on Instagram that year that included A.V., I.M., D.M., and an individual named Wayne, who were all students at Rio Rancho Public Schools at the time, and that someone in that group chat labeled D.M. as a "snitch." (Id, 145:20-21; 148:2-23; 153:8-14). D.M was "homies with Andres at the time," and D.M. "was in a group with A.V.," and D.M. "and Andres were against Irvin and Wayne at the time." (Id, 149:20-23; 155:10-12). D.M. testified that Wayne wanted to fight D.M. at the time. Id, 155:23-156:1. The Instagram "group chat" includes the following, "No straps either cuz y'all pussy like that," and D.M. testified that the word "straps" is another name for a handgun. (Id, 149:24-150:6; Defendants' Exhibit U, attached hereto).

Finally, evidence in the record shows that in September of 2018, Assistant Principal Baca knew of the Instagram "group chat" and was trying to identify the students involved because he wanted to "protect them, to try to keep them from turning – from blowing up into something larger." (Defendants' Ex. T, Baca Dep. 68:12-69:24; 147:2-15, attached hereto). Mr. Baca testified that the boys involved with the Instagram group chat were asked if they had access to weapons, and parents were called as well, and there was concern "that rather than a fight being between two individuals, it was starting to mushroom into large groups of individuals against one another." (Id, 68:23-69:24). Further, Mr. Baca testified that "W.S." was asked about the group chat comment, "no straps," and that W.S. said "that he had heard that a lot of boys were carrying guns at the time." (Id, 68:12-16).

15.    Defendants object to Plaintiffs' response to UMF 40 on the grounds that Plaintiffs mischaracterize Mr. Baca's testimony as opinions, speculation and conjecture.

(Doc.76, pp. 6-8).  As noted above, Mr. Baca's testimony contains facts supported by his personal knowledge, that school officials were busy in the Fall of 2019 trying to prevent "two groups of boys from hurting each other." (Millan Baca Deposition, p. 84:9-13, Defendants Exhibit A, [65-1]).

16.    Defendants object to Plaintiffs' response to UMF 41 on the grounds that Plaintiffs mischaracterize the facts asserted in UMF 41 as speculation, and as lacking relevance, materiality, and foundation.  (Doc.76, p. 8).  Mr. Baca's testimony, as stated in UMF 41 shows that during the specific time frame when those two groups of students were "having the interactions that they were," students and parents provided school officials with "a screenshot of a Snapchat […] showing some type of handgun or automatic rifle," and school officials "were incredibly worried that there would be a shooting at the school."  (Millan Baca Deposition, p. 137: 12-18, Defendants' Exhibit A, [65-1]).  Mr. Baca's testimony is not speculative; it is based upon his personal knowledge regarding the "feud" between two groups of students, who he knew had previously engaged in fights, and is based upon contemporaneously-received Snapchat images of some type of gun.  (Id, p. 78:13-16, 137:12-18).  The facts in Mr. Baca's testimony are material and relevant to issues known to school officials and confronting school officials in 2019 and 2020, in light of a known shooting on school grounds in February of 2019, in light of a known potential conflict between two groups of students in the Fall of 2019 - that potentially involved a firearm - and in light of general issues regarding school and student safety and the prevention of violence, and the school's obligation to investigate. *Becker v. Bateman*, 707 F.3d 1019, 1022 (10th Cir. 2013)(a fact is material "if under the substantive law it is essential to the proper disposition of the claim").

Further, facts in the record show that in the Fall of 2018, D.M., who was friends and in a "group" with J.M.(J.S.) and L.M. at the time, was known to be involved in a discussion with other students that involved fighting and "straps" and that Mr. Baca was informed that a lot of the boys were carrying guns at that time. (Defendants' Ex. T, Millan Baca Dep. 69:3-16, attached hereto). D.M was searched on March 5, 2020, and Mr. Baca suspected that D.M. might have a weapon in his pocket. (Id, Baca Dep. 52:14-2). Under the law, reasonable suspicion to conduct a search in a school setting does not require "absolute certainty" that a student is in possession of a weapon, it only requires suspicion of a "moderate chance of finding evidence of wrongdoing." *T.L.O.*, 469 U.S. at 341-42, 346, 105 S.Ct. 733.

17.    Defendants acknowledge and correct an inadvertent error in their UMF 49; Defendant Archuleta escorted D.M. to the principal's office on February 21, 2019, after D.M. and J.M.(J.S.) were caught fighting on campus; J.M.(J.S.) testified he went to his first period class and "security came down and got me." (J.M.(J.S.) Deposition, p. 128:22-132:3, Defendants' Exhibit R, attached hereto). This factual assertion is undisputed.

18.    Defendants object to Plaintiffs response to UMF 52. Defendants do not assert that there is a lack of evidence that D.M. was searched on or about February 21, 2019; it is stated that "discipline records do not indicate that [D.M.] was searched by anyone."

19.    Defendants object to Plaintiffs' response to UMF 60 disputing the testimony of Mr. Baca, who stated that on March 5, 2020, Mr. Baca "suspected a weapon or contraband" in D.M.'s pocket. (Millan Baca Deposition, p. 52:7-21, Defendants'

Exhibit A, [65-1]).  Plaintiffs fail to refer with particularity to any portion of Mr. Baca's deposition to controvert the fact that on March 5, 2020, Mr. Baca suspected that there might be a weapon or contraband in D.M.'s pocket.  Defendants further object that Plaintiffs' response to UMF 60 cross-references information contained in Plaintiffs' additional facts and therefore fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).  Without waiving this objection, Defendants state that they have responded fully to Plaintiffs' PAF P.

20.     Defendants object to Plaintiffs' response to UMF 61 because the deposition testimony specifically elicited by Plaintiffs' counsel asked Mr. Baca to identify what facts "supported reasonable suspicion that [D.M.] had specifically a weapon?"  (Millan Baca Deposition, p. 52:24-25, Plaintiffs' Exhibit C, [76-3]).  Defendants further object that Plaintiffs' response to UMF 61 cross-references information contained in Plaintiffs' additional facts and therefore fails to "refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).  Without waiving this objection, Defendants state that they have responded fully to Plaintiffs' PAF P.

21.     Plaintiffs' response to UMF 86 fails to specifically controvert the facts set forth therein with reference to any portion of the record.  UMF 86 includes statements taken directly from an October 4, 2019, "Safety & Security Incident Report," which indicate that J.M.(J.S.) was recorded on a school security camera as having been present with a group of friends who were reportedly "supposed to fight another kid which [sp] security intervened before it happened." (Defendants' Exhibit Q, [65-17]).

Further, evidence in the record, pertaining to whether J.M.(J.S.) was ever "in a gang or otherwise involved in organized criminal activity," shows that J.M.(J.S.) admitted that as a freshman and sophomore, "other people in [his] grade" threatened him with "physical violence […] on a regular basis." (Defendants' Ex. R, J.M.(J.S.) Dep. 13:10-22, attached hereto). J.M.(J.S.) also admitted that these "other people" who threatened him were considered by school administrators to be "a rival group of students." (Id, 14:8-15). Additionally, J.M.(J.S.) testified that while in middle school, when he was about five feet eight inches tall and weighing about 200 pounds, he was expelled from school based upon allegations made by a female school aide that he had struck or hit the student aide. (Id, 78:9-82:22).

22.    Defendants object to Plaintiffs' response to UMF 88 which, without citation to the record, cross references six of Plaintiffs' Additional Material Facts as set forth in their Joint Statement of Undisputed Facts at HHH, QQQ, RRR, SSS, YYY, and ZZZ (Doc. 76), pp. 21, 23, 25. Plaintiffs' response to UMF 88 fails to "refer with particularity to those portions of the record upon which the non-movant relies." D.N.M. LR-Civ. 56.1(b). Without waiving this objection, Defendants state that they have responded fully to each of Plaintiffs' "PAF" identified at HHH, QQQ, RRR, SSS, YYY, and ZZZ.

23.    Defendants object to Plaintiffs' response to UMF 94 which misstates J.M.'s(J.S.'s) deposition testimony; J.M.(J.S.) specifically testified that the touching in question was for "a few seconds," not "several seconds" as Plaintiffs represent. (J.M.(J.S.) Deposition, p. 160:5-6, 17-22, Defendants' Exhibit K, [65-11]). Further, without citation to the record, Plaintiffs' response cross references three of Plaintiffs'

Additional Material Facts as set forth in their Joint Statement of Undisputed Facts at TTT, UUU, and VVV. (Doc. 76, pp. 23-24). Plaintiffs' response to UMF 94 fails to "refer with particularity to those portions of the record upon which the non-movant relies." D.N.M. LR-Civ. 56.1(b). Without waiving this objection, Defendants state that they have responded fully to each of Plaintiffs' "PAF" identified at TTT, UUU, and VVV.

24.    Defendants object to Plaintiffs' response to UMF 102 on the grounds that it mischaracterizes the facts in the record. There are no facts in the record, and specifically no facts in J.M.'s(J.S.'s) deposition testimony, to show that J.M.(J.S.) ever specifically told Principal Affentranger "that his penis and testicles were grabbed" during any search conducted by Mr. Archuleta. (J.M.(J.S.) Deposition, p. 94:5-96:5, Defendants' Exhibit K. [65-11]). Defendants further object that Plaintiffs' response cross references Plaintiffs' Additional Material Facts as set forth in their Joint Statement of Undisputed Facts at NNN and thus fails to "refer with particularity to those portions of the record upon which the non-movant relies." D.N.M. LR-Civ. 56.1(b). Without waiving this objection, Defendants state that they have responded fully to Plaintiffs' PAF NNN.

## II. **Defendants' Joint Responses and Objections to Plaintiffs' "Additional Undisputed Material Facts."**

B.    Defendants partially dispute Plaintiffs' PAF B for mis-identifying "THC" as "THS" and for incompleteness in that Mr. Mangin testified that vaping is a security concern because it is "illegal to have […] nicotine or THC on the school premises," because a lot of students cannot handle the THC "and then they have to have the

ambulance come," and because some students cannot handle the nicotine.  (Deposition of Don Mangin, p. 10:1-12; 11:10-17, Plaintiffs' Exhibit A, [76-1]).

C.    Defendants partially dispute Plaintiffs' PAF C in that Mr. Mangin specifically testified that in his "experience" a vape pen could not be mistaken for a handgun because "they come in many different variations [and he's] never seen one that looked anything near a handgun."  (Id, p. 29:11-18).

D.    Defendants dispute the assertion in Plaintiffs' PAF D in that it is not an accurate reflection of the testimony of Mr. Affentranger in the record but is instead the conclusion of counsel.  Mr. Affentranger specifically testified that a student in possession of a tobacco product is "a violation of board policy," that school officials do not "want tobacco in the possession of minors," and that "a lot of the tobacco-like products nowadays are not necessarily tobacco-like products [but] are traced with THC or actually they're pure THC."  (Deposition of Scott Affentranger, p. 9:16-11:10, Plaintiffs' Exhibit E, [76-5]).  Mr. Affentranger did not testify that vape pens are not inherently dangerous to the student body the way a firearm or other weapon could be.

F.    Defendants dispute the assertion in Plaintiffs' PAF F in that it is not an accurate reflection of the testimony of Mr. Mangin.  Mr. Mangin did not testify that "security guards at V. Sue Cleveland *are to never put their hands in a student's pocket*." (Doc. 76, p. 12)(emphasis supplied).  Mr. Mangin testified that aside from retrieving a weapon, security aides are not taught to go into student pockets, and that if the security aide feels "something in the pocket, ask the – the student to hand that to them unless […] it's a weapon."  (Deposition of Don Mangin, p. 15:1-16:6, Plaintiffs' Exhibit A, [76-1]).

G.    Defendants dispute the assertion in Plaintiffs' PAF G in that it misrepresents and misconstrues the testimony of Mr. Mangin.  Mr. Mangin did not testify that "the purpose of security guards at V. Sue Cleveland is to detect if students are engaged in 'illegal activity.'"  (Doc. 76, p. 12)    The testimony relied upon by Plaintiffs does not pertain to the "purpose" of campus security aides in general but refers instead to campus security aides entering school bathrooms to make sure that students are not fighting or vaping or otherwise engaging in "illegal activity."  (Don Mangin Deposition, p. 16:7-17:20, Plaintiffs' Exhibit A, [76-1]).

H.    Defendants object to Plaintiffs' PAF H as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF H sets out multiple "additional facts" but fails to separately letter each additional fact as is required by the local rules.  Without waiving this objection, Defendants state that Rio Rancho Public Schools Policy 1009 pertains to "Searches and Seizures."  (Defendants' Exhibit G, [65-7]).

I.    Defendants object to Plaintiffs' PAF I as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF I sets out multiple "additional facts" but fails to separately letter each additional fact as is required by the local rules and fails to "refer with particularity to those portions of the record upon which the non-movant relies," for each of the multiple additional facts set forth.  Defendants further object to Plaintiffs mischaracterization of the facts asseted.  Without waiving any objection, Defendants state that Mr. Mangin was asked by Plaintiffs' counsel, "How are pat-down searches conducted if a student is suspected of having a ***vape pen***."  (Deposition of Don Mangin, p. 29:15-17, Plaintiffs' Exhibit A, [76-1] (emphasis supplied)).  Later, when specifically asked, "Why can't they pat them ***in their pants,***" Mr. Mangin stated, "we're not trained to search that part of their

body," referencing the groin or genital area.  (Id, p. 30:16-22 (emphasis supplied)).  Mr. Mangin further testified that during a pat-down search for a vape pen, "there shouldn't be even incidental contact with a student's genitals," because they are "trained to just pat the pockets."  (Id, pp. 30:23-31:2).  When asked, "Are there any circumstances in which it would be acceptable for a security guard *to intentionally touch* a student's genitals during a search," Mr. Mangin stated, "No, that's not the way they're trained."  (Id, p. 30:3-7 (emphasis supplied)).  Mr. Mangin agreed that if *intentional* touching of a student's genitals occurred during a search, it would be wrong.  (Id, p. 30:8-10).

J.     With respect to Plaintiffs' PAF J, Defendants clarify that Mr. Mangin testified that he could not recollect ever being made aware of any of the Plaintiffs being suspected of having a weapon.  (Id, p. 43:13-24).

L.     Defendants object to Plaintiffs' PAF L in that it misstates Mr. Affentranger's testimony.  The testimony cited by Plaintiffs shows that Mr. Affentranger stated that if a security guard believed or suspected that a student had a weapon, the security guard would be "permitted to place their hands in the suspect's pocket and feel around for a weapon."  (Deposition of Scott Affentranger, p. 25:3-9, Plaintiffs' Exhibit E, [76-5]). Mr. Affentranger was never asked and never testified if that was the "only" scenario when searching a student's pockets would be permitted.

M.     With respect to Plaintiffs' PAF M, Defendants clarify that Mr. Affentranger testified that "incidental touching" of a student's genitals "could happen" during a search and that the school's procedure is to have no contact with genitals, "even if it's incidental contact."  (Deposition of Scott Affentranger, p. 28:9-29:3, Plaintiffs' Exhibit E, [76-5]).

O.    Defendants object to Plaintiffs' PAF O on the grounds that it misstates the testimony of Mr. Affentranger who never stated that "[p]at down searches should only occur when a security guard suspects a student may have a weapon on their person." (Doc. 76, p. 13).  Mr. Affentranger was asked to testify regarding the specific wording of a document entitled "Processes and Procedures Search & Seizure, Rio Rancho Public Schools."   (Id, p. 63:10-13. [76-5]).  Mr. Affentranger testified as to what the document states, and when specifically asked whether the language therein permits a pat-down search to occur when other than a weapon is suspected, Mr. Affentranger replied, "It's silent on the topic of your question."  (Id, p. 64:24-65:7).

P.    Defendants specifically dispute Plaintiffs' PAF P in that it states that D.M. was never suspected of having a weapon at school.  (Doc. 76, p. 13).  Mr. Baca testified that on March 5, 2020, he personally "suspected a weapon or contraband" in D.M.'s pocket.  (Baca Dep. 52:7-21, Plaintiffs' Exhibit C.  When Plaintiffs' counsel asked Mr. Baca whether D.M. had ever been under suspicion for "carrying a gun at school *because some other students had threatened him with violence*," Mr. Baca replied, "no." (Millan Baca Dep. 63:23-64:3, Plaintiffs' Exhibit C, [76-3] (emphasis supplied)).

S.    Plaintiffs' PAF S states that Mr. Archuleta admits that he never suspected any of the Plaintiffs of being in possession of a weapon while they were at school.  The undisputed facts in the record show that each of the alleged searches was conducted pursuant to either the directive of a school administrator, or as a result of an objectively reasonable concern for the safety of school personnel, or both.  (Plaintiffs' Additional Fact, FFF; Plaintiffs' Exhibit D, Archuleta Dep. 52:2-13 [76-4]; Defendants' Ex. A, Baca

Dep. 47:5-7, 52:1-6 [65-1]; Defendants' UMF 79, L.M. Dep. 56:4-14 [76-11]; Plaintiffs'

Exhibit B, pp. 4-7 [76-2]).

T.      Defendants object to Plaintiffs' PAF T in that it cross-references "PUMF

L through O" without referring "with particularity to those portions of the record upon

which the non-movant relies."   D.N.M. LR-Civ. 56.1(b).   Further, Defendants object

because they are unable to determine what "PUMF" refers to as this term is not defined

or used in any of Plaintiffs' pleadings.   To the extent that Plaintiffs intended to refer to

what they represent are "additional facts," or "PAF", as located at PAF L through O,

Defendants state that they have fully responded to those assertions.

U.      Defendants object to Plaintiffs' PAF U as a violation of D.N.M. LR-Civ.

56.1(b) in that PAF U sets out multiple "additional facts" which are not separately

lettered.   Without waiving this objection, Defendants state that the record shows that Mr.

Archuleta understood the search procedure with regard to pat-down searches and he was

trained not to pat-down the area on a student between the waist and three inches above

the knee.   (Deposition of George Archuleta, p. 18:2-10, Plaintiffs' Exhibit D, [76-4]).

Mr. Archuleta understood that he should not touch a student's genitals and that it would

be wrong to touch a student's genitals during a search. (Id, 18:11-14; 19:2-5). Mr.

Archuleta testified that incidental or accidental contact of a student's genitals should not

be possible during a pat-down search, because a pat-down search did not include a pat-

down "below the waist or more than three inches above the knee."  (Id, 18:15-19:1).

V.      Defendants respond to Plaintiffs' PAF V to clarify that Mr. Archuleta had

been trained and knew that with regard to a pat-down search, he should not pat down a

student in their groin area. (Deposition of George Archuleta, p. 18:2-10, Plaintiffs' Exhibit D, [76-4]).

W.    Defendants object to Plaintiffs' PAF W as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF W sets out multiple "additional facts" which are not separately lettered. Without waiving this objection, Defendants respond to Plaintiffs' PAF W to state that Mr. Archuleta had been trained and knew that with regard to a pat-down search, he should not pat down a student's genitals, and everybody was "specifically told that [...] under no circumstances" could they touch a student's genitals during a search. (Deposition of George Archuleta, p. 18:2-10; 94:2-7, Plaintiffs' Exhibit D, [76-4]).

X.    Defendants respond to Plaintiffs' PAF X to clarify that Mr. Archuleta testified that incidental or accidental contact of a student's genitals should not be possible during a pat-down search, because a pat-down search did not include a pat-down "below the waist or more than three inches above the knee." (Id, 18:15-19:1).

BB.    Defendants object to Plaintiffs' PAF BB as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF BB sets out multiple "additional facts" which are not separately lettered. Without waiving this objection, Defendants respond to Plaintiffs' PAF BB to state that Mr. Archuleta did not testify as to a school policy but did state that he did not recall being "instructed not to place [his] hands in students' pockets during searches." (Id, p. 28:6-24, [76-4]). Mr. Archuleta did testify that he did not put his hand in student pockets because of sharp objects or syringes and that he "didn't want to be poked." (Id, p. 28:18-24).

EE.    Defendants object to Plaintiffs' PAF EE as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF EE sets out multiple "additional facts" which are not separately

lettered. Defendants further object that Plaintiffs' PAF EE does not accurately reflect the question or testimony and is based upon a hypothetical question. Mr. Archuleta was never asked whether "he knew that reasonable suspicion to search did not exist." (Id, p. 35:4-19, [76-4]).

FF.    Defendants object to Plaintiffs' PAF FF as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF FF sets out multiple "additional facts" which are not separately lettered.

II.    Defendants object to Plaintiffs' PAF II as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF II sets out multiple "additional facts" which are not separately lettered as is required.

JJ.    Defendants object to Plaintiffs' PAF JJ as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF JJ sets out multiple "additional facts" which are not separately lettered. Defendants further object on the grounds that the multiple facts asserted are not material facts and are not relevant to any of the issues presented by the motions for summary judgment. *Becker v. Bateman*, 707 F.3d 1019, 1022 (10th Cir. 2013)(a fact is material "if under the substantive law it is essential to the proper disposition of the claim").[2]

---

[2]  Defendants object to Plaintiffs' PAFs JJ, KK, LL, MM, NN, and OO as the assertions contained therein are not relevant or material to any of the issues presented by Defendants' motions for summary judgment. At the summary judgment stage, the Court will view the undisputed material facts in the light most favorable to the nonmoving party and will draw all reasonable inferences in their favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 707 F.3d 1019, 1022 (10th Cir. 2013). Plaintiffs' assertions in PAFs JJ, KK, LL, MM, NN, and OO are not essential to the proper disposition of Plaintiffs' claims and not relevant to the resolution of Defendants' motions. As is more fully briefed in Defendants' replies in support of

KK.    Defendants object to Plaintiffs' PAF KK as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF KK sets out multiple "additional facts" which are not separately lettered. Defendants further object on the grounds that the multiple facts asserted are not material facts and are not relevant to any the issues presented by the motions for summary judgment. Plaintiffs' assertions are not essential to the proper disposition of their claims or to the resolution of the motions for summary judgment.

LL.    Defendants object to Plaintiffs' PAF LL on the grounds that the facts asserted are not material facts and are not relevant to the issues presented by the motions for summary judgment. Plaintiffs' assertions are not essential to the proper disposition of their claims or to the disposition of the motions for summary judgment.

MM.    Defendants object to Plaintiffs' PAF MM on the grounds that the facts asserted are not material facts and are not relevant to the issues presented by the motions for summary judgment. Plaintiffs' assertions are not essential to the proper disposition of their claims or to the disposition of the motions for summary judgment.

NN.    Defendants object to Plaintiffs' PAF NN on the grounds that the facts asserted are not material facts and are not relevant to the issues presented by the motions for summary judgment. Plaintiffs' assertions are not essential to the proper disposition of their claims or to the disposition of the motions for summary judgment.

OO.    Defendants object to Plaintiffs' PAF OO on the grounds that the facts asserted are not material facts and are not relevant to the issues presented by the motions for summary judgment. Plaintiffs' assertions are not essential to the proper disposition of their claims or to the disposition of the motions for summary judgment.

---

summary judgment, Plaintiffs' argument and reliance upon *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007) is misplaced and of no avail.  Doc. 77, pp. 3-4.

SS.    Defendants object to Plaintiffs' PAF SS on the grounds that the assertions contained therein do not accurately reflect the testimony cited.  Mr. Archuleta testified that, to him, the word "jito" means "like a son or a family member."  (Deposition of George Archuleta, 62:19-24, Plaintiffs' Exhibit D, [76-4]).  Mr. Archuleta stated that it would not be appropriate to refer to any students as "jito," because students "have a first name or a last name and that's the way I would address them."  (Id, 63:22-64:4).  Mr. Archuleta agreed that "calling a student jito would imply a certain closeness that would not be appropriate between a student and a security guard."  (Id, 64:5-9).

TT.    Defendants object to Plaintiffs' PAF TT as a violation of D.N.M. LR-Civ. 56.1(b) in that PAF TT sets out multiple "additional facts" which are not separately lettered as is required.

UU.    Defendants object to Plaintiffs' PAF UU as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required.

VV.    Defendants object to Plaintiffs' PAF VV as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required.  Further, Plaintiffs' PAF VV contains argument of counsel.

WW.  Defendants object to Plaintiffs' PAF WW as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

XX.    Defendants object to and refute Plaintiffs' PAF XX in that counsel's questioning of Mr. Archuleta did not fully state the policy in question when Mr. Archuleta was asked, "and there should be a recording of [a particular search] per school

policy, right?" to which Mr. Archuleta responded, "I haven't seen the policy so I don't know."  (Deposition of George Archuleta, p. 80:7-15, Plaintiffs' Exhibit D, [76-4]). When asked to read the document concerning the policy in question, Mr. Archuleta stated, "When possible, record the search on video through either a lapel or security camera."  (Id, at 85:3-7).  When counsel again asked "So you were trained that searches should be recorded," Mr. Archuleta responded, "yes" and then stated that the policy states, "when possible," to which Plaintiffs' counsel stated, "that's a good catch."  (Id, at 85:8-23).

YY.    Defendants object to Plaintiffs' YY as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants further refute the assertions in that Plaintiffs fail to cite to Mr. Archuleta's testimony wherein he stated that he was trained that searches should be recorded, "*when possible,*" as is stated in the policy.  (Id, at 85:8-23, [76-4]).

CCC.  Defendants object to Plaintiffs' PAF CCC as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.   Defendants further object that the portion of Mr. Affentranger's testimony relied upon by Plaintiffs does not support the assertion that "searches need to be documented by security guards so each security guard's *compliance with policy* can be monitored."  Doc. 76, p. 20 (emphasis supplied).  Mr. Affentranger was not asked about, nor was he testifying about, school "policy."   Mr. Affentranger testified that forms entitled "Safety & Security Incident Reports" were to be completed each time a student is searched and that if such forms were not completed, "It would be a violation of *our protocol*."  (Deposition of Scott Affentranger, p. 69:16-70:13, Plaintiffs'

Exhibit E, [76-5](emphasis supplied)).  Mr. Affentranger acknowledged that without such documentation, "a problem could develop that administration is not aware of."  (Id, 70:20-24).

DDD.  Defendants object to Plaintiffs' PAF DDD to clarify that D.M. testified that during a search of D.M. by Mr. Archuleta, in the presence of Mr. Baca, "I actually told George to not touch my dick.  And right away Mr. Baca told me to shut up." (Deposition of D.M., p. 33:20-34:5, Plaintiffs' Exhibit H, [76-8]).

FFF.   Defendants object to Plaintiffs" PAF FFF as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants do not dispute that D.M. testified as he did in the specific portions of the deposition cited; Defendants object to Plaintiffs' insertion of legal argument wherein it states, "Merely observing a child in a fight does not provide reasonable suspicion to search the child."  (Doc. 76, p. 21).

GGG.  Defendants object to Plaintiffs" PAF GGG as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

HHH.  Defendants object to Plaintiffs" PAF HHH as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

III.      Defendants object to Plaintiffs' PAF III as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants do not dispute that D.M. testified as he did in the specific portions of the deposition cited.

MMM.  Defendants object to Plaintiffs' PAF MMM as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules and because Plaintiffs' reference to the record does not support the totality of the multiple statements asserted.  Defendants do not dispute that D.M. testified that during searches when he was touched "inappropriately" by Mr. Archuleta, it was "very traumatic" and terrible for D.M, and that the searches made him depressed, distressed, embarrassed and affected him emotionally.

NNN.  Defendants object to Plaintiffs' PAF NNN as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants also specifically dispute several of the assertions contained in PAF NNN as follows:

First, Defendants dispute Plaintiffs' assertion that J.M.(J.S). ever "told Mr. Affentranger the *details* of what happened to him including that his testicle was touched." Doc. 76, p. 22 (emphasis supplied). J.M.'(J.S.'s) testimony is that "there were only two times when Mr. Archuleta touched him inappropriately."   (Deposition of J.M.'s(J.S.'s), pp. 150:12-17; 155:24-156:1; 181:17-20, Defendants' Exhibit K, [65-11]).   J.M.(J.S.) testified that during the first search, as J.M.(J.S.) was "facing the wall," Mr. Archuleta was "getting really high on my thigh on the left side and kind of – I'm kind of shook.  I just – I feel something – something touch me on my left – my left testicle."  (Id, 157:21-158:7).  J.M.(J.S.) testified that during the second search, Mr. Archuleta was doing the "leg to leg pat down, and then out of nowhere, I was grabbed between – between my legs. But this time it wasn't – it wasn't just – it wasn't just my left testicle. He essentially tried to grab everything."  (Id, pp. 166:5-6; 168:9-4).  J.M.(J.S.) testified that "after the second

incident" with Mr. Archuleta, J.M.(J.S.) went to Mr. Affentranger office "specifically to talk to him about the situation."  (Id. p. 94:5-13).  J.M.(J.S.) testified that he reported *only one* of the incidents to Principal Affentranger.  (Id., p. 188:8-13, Defendants' Exhibit R, attached hereto).  J.M.(J.S.) testified that, "I was telling [Mr. Affentranger] the details." (Deposition of J.M.(J.S.) p. 94:5-13, Plaintiffs' Exhibit J, [76-10]).  When asked, "what did you say exactly," J.M.(J.S.) stated, "I had – I had expressed to him that *in the last time that I had been searched*, I believe that there was – there was some really weird and off-putting things that had went on between, you know, the search and after, so I had told him that – I had told him essentially what happened in that room […]."  (Id, 94:25-95:7). When asked again, "What did you tell him, though? You said you essentially told him. What did you tell him," J.M.(J.S.) stated as follows:

> Yes, I told him that when I was pulled into the security room for searching, that I believe there was something that went on that is with – outside the guidelines of how a security guard is supposed to perform a search, I guess you could say.
>
> And I had expressed to him that when I was getting patted down on my legs for, quote/unquote, contraband that George was – he was getting – he was getting really high on the thigh area.  And as I'm facing the wall, because I've been through this so many times, I'm just – you know, I'm kind of like get it over with already.
>
> As I'm facing the wall, I'm kind of like, -- almost like when I heard that sound, I'm kind of in shock, and then my brain registered that my – my left – my left testicle had been touched, and I told Mr. Affentranger how I felt about it, and he didn't care.  (Id, 95:9-96:3).

J.M.'s(J.S.'s) testimony does not support the assertion that he ever "told Mr. Affentranger the *details* of what happened to him including that his testicle was touched."  Doc. 76, p. 22 (emphasis supplied).  J.M.'s(J.S.'s) testimony that his "brain registered that his left

testicle had been touched" and that he "told Mr. Affentranger how he felt about it," does not support the assertion in PAF NNN.

Second, Defendants dispute that "J.M.(J.S.) went into greater detail describing the second incident in which Mr. Archuleta grabbed both of his testicles and his penis when speaking to the principal." Doc. 76, p. 22. Again, J.M.(J.S.) testified that he reported *only one* of the two incidents to Principal Affentranger. (Id., p. 188:8-13, Defendants' Exhibit R, attached hereto). J.M.'s(J.S.'s) own testimony controverts Plaintiffs' assertion in PAF NNN that J.M.(J.S.) reported in detail *two incidents* to Mr. Affentranger. Moreover, there are no facts in the cited deposition testimony regarding J.M.'s(J.S.'s) meeting with Mr. Affentranger where J.M.(J.S.) described any detail concerning the second search or describing "*both of his testicles and his penis*" being grabbed, as is asserted in PAF NNN. Doc. 76, p. 22 (emphasis supplied); J.M.(J.S.) (Deposition, p. 166:5-6; 168:9-4, Defendants' Exhibit K, [65-11]) ("I was grabbed between – between my legs.").

Third, Defendants dispute Plaintiffs' characterization that Mr. Affentranger "responded in a *nonchalant manner* and asked J.M.(J.S.) if there was anything else." Doc. 76, p. 22 (emphasis supplied). J.M.'s(J.S.'s) testimony did not use the words "nonchalant manner;" J.M.'s(J.S.'s) testimony as cited speaks for.

Fourth, Defendants dispute the assertion in PAF NNN that, "No other action was taken by Affentranger," on the grounds that Plaintiffs fail to cite to any portion of the record to support the assertion.

OOO. Defendants object to Plaintiffs' PAF OOO as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered

as is required by the local rules.  Defendants further object to Plaintiffs' characterization of Mr. Affentranger's testimony wherein it is asserted that, "Mr. Affentranger *claims* […]."  Doc. 76, p. 22 (emphasis supplied).  Mr. Affentranger's testimony as cited by Plaitniffs speaks for itself.

TTT.  Defendants object to Plaintiffs' PAF TTT as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants further object to the assertion that "Mr. Archuleta continued patting J.M.'s(J.S.'s) leg moving upwards until he was touching J.M.'s(J.S.'s) testicle."  Doc. 76, p. 23 (emphasis supplied).  J.M.(J.S.) testified that Mr. Archuleta was "getting really high on my thigh on the left side [and] I feel something – something touch me on my left testicle."  (Deposition of J.M.(J.S.), p. 158:4-7, Plaintiffs' Exhibit J. [76-10]).  Defendants also object to the assertion that "Mr. Archuleta *left his hand* on J.M.'s(J.S.'s) testicle for a few seconds."  Doc. 76, p. 24 (emphasis supplied). J.M.(J.S.) testified that he felt "something" and that the "touch" lasted a few seconds; there is no testimony that Mr. Archuleta's full hand was "on J.M.'s(J.S.'s) testicle for a few seconds."  (Id, p. 158:4-7; 159:24-160:22).  Lastly, Defendants object to the characterization in PAF TTT that the search in question "took place in an *isolated* area of the school."  Doc. 76, p. 24 (emphasis supplied).  With regard to the location where the search took place, J.M.(J.S.) testified, "I guess you could say it's a public hallway," and further testified there were no other persons present besides Mr. Archuleta and J.M.(J.S.) Deposition of J.M.(J.S.), p. 165:2-18, Defendants' Exhibit K, [65-11]).

UUU.  Defendants object to Plaintiffs' PAF UUU as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

VVV.  Defendants object to Plaintiffs' PAF VVV as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants further object to the mischaracterization of the testimony relied upon in that J.M.(J.S.) specifically testified that he felt "something" and that the "touch" lasted "a few seconds;" there is no testimony that Mr. Archuleta's full hand was on J.M.'s(J.S.'s) testicle and the testimony is that J.M.(J.S.) described it as "a few seconds," not "several seconds," as asserted.  (Deposition of J.M.(J.S.), p. 158:4-7; 159:24-160:22, Defendants' Exhibit K, [65-11]).  Further, J.M.(J.S.) did not testify that the location was "isolated;" J.M.(J.S.) testified that the location of the search was "a public hallway," and that no other persons were present besides Mr. Archuleta and J.M.(J.S.)  (Id, p. 165:2-18).

WWW.      Defendants object to Plaintiffs' PAF WWW as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants dispute the following assertions: that the second search occurred in an "isolated area," as J.M.(J.S.) testified that it occurred in "a public hallway."  (Id, p. 165:2-18); that Mr. Archuleta "grabbed both of J.M.'s(J.S.'s) testicles and his penis," as J.M.(J.S.) testified only that "I was grabbed between – between my legs;" (id, p. 166:5-6; 168:9-14), and that "Mr. Archuleta held J.M.'s(J.S.'s) penis and testicles with his hand for a few seconds," as J.M.(J.S.) never stated that Mr. Arhculeta held his penis and testicles with his hand.

XXX.  Defendants object to Plaintiffs' PAF XXX as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules, and because it cross references separate PAFs, and thus fails to "refer with particularity to those portions of the record upon which" Plaintiffs rely.  Without waiving theses objections, Defendants state that they have fully responded to Plaintiffs' PAF TTT and WWW.

YYY.  Defendants object to Plaintiffs' PAF YYY as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

AAAA.    Defendants object to Plaintiffs' PAF AAAA as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.

BBBB.    Defendants object to Plaintiffs' PAF BBBB as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants object to Plaintiffs' assertions that L.M. ever used the phrase, "grabbed and fondled;" L.M. testified that he remembers Mr. Archuleta, "feeling around, like feeling around my penis and my – I don't know what you call them – testicles."  (Deposition of L.M., p. 64:20-22, Defendants' Exhibit O, [65-15]).  L.M. testified that at first, Mr. Archuleta felt around his thigh, "and then, he went kind of to the V line," which L.M. described as "close to my – my testicles."  (Id, at p. 64:10-12; 122:23-123:1).  L.M. did not testify the "v line" is "the area between the thigh and groin in the pelvic area," as is asserted in PAF BBBB.

CCCC.        Defendants object to Plaintiffs' PAF CCCC as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants object that PAF CCCC asserts that "[d]ecision was made by Mr. Archuleta and a principal to search L.M. […];" L.M. specifically testified that the principal said "I need to be searched […]." (Deposition of L.M., p. 67:22-25, Defendants' Exhibit O, [65-15]).

DDDD.        Defendants object to Plaintiffs' PAF DDDD as it contains an assertion of Plaintiffs' counsel's argument.  Without waiving this objection, Defendants state that Assistant Principal Millan Baca testified that, "Very often when we find a student with one vape device, we find them with numerous vape devices, the majority of the time. […] And students have a propensity to carry around multiple devices, very often empty devices."  (Deposition of Millan Baca, p. 40:14-25, Defendants' Exhibit A, [65-1]).

EEEE.        Defendants object to Plaintiffs' PAF EEEE as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules and fails to "refer with particularity to those portions of the record upon which" Plaintiffs rely.  Defendants further object to the assertion in PAF EEEE that, "It has been claimed by RRPS that observing a student with contraband on one occasion gives the school cart blanche to search the student again […]." Doc. 76, p. 27.  Plaintiffs fail to cite or refer to any portion of the record to support this assertion.  Conversely, the record shows that Assistant Principal Millan Baca did testify that, "Very often when we find a student with one vape device, we find them with numerous vape devices, the majority of the time. […] And students have a propensity to

carry around multiple devices, very often empty devices."  (Deposition of Millan Baca, p. 40:14-25, Defendants' Exhibit A, [65-1]).

FFFF.    Defendants object to Plaintiffs' PAF FFFF as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules.  Defendants further object that the portions of the record cited to by Plaintiffs do not support the statement that, "Following these searches L.M. lost interest in going to school and skipped school habitually, [and] began drinking alcohol to the point of blacking out."  Doc. 76, p. 27.  Defendants also object that the portions of the record cited to by Plaintiffs do not support the statement that, L.M. "did this to dull or numb the feelings he was experience (sic) after being molested by Mr. Archuleta."  Id.

HHHH.    Defendants object to Plaintiffs' PAF HHHH to the extent that the assertions contained therein imply that L.M. "no longer liked being at school" as a result of any conduct by Mr. Archuleta.  Doc. 76, p. 27.  The portions of the record cited to and relied upon by Plaintiffs do show that when L.M. was asked, what was the reason you ditched so much school your sophomore year, L.M. replied, "Honestly, like just being at that school, it didn't – it didn't feel great.  I – I felt like – I just had a hard time being as that school.  And I – I didn't want to go back, I'd rather go – I'd rather go somewhere where I don't' have to feel like I'm being watched or looked at a certain way."  (Deposition of L.M., p. 10:2-7, Plaintiffs' Exhibit K, [76-11]).  The cited portions of L.M.'s deposition do not show that L.M. "no longer liked being at school" as a result of Mr. Archuleta's conduct during a search.

JJJJ.    Defendants dispute the assertions contained in PAF JJJJ, that "L.M., D.M., and J.M.(J.S.) were *never affiliated with any high school gangs or groups*."  Doc. 76, p. 28 (emphasis supplied).  The record shows that J.M.(J.S.) testified that both L.M. and D.M. were in the "group" that J.M.(J.S.) was affiliated with.  (Defendants' Ex. R, J.M.(J.S.) Dep. 66:4-21, attached hereto).  J.M.(J.S.) further testified that he was part of a group of friends from middle school that included D.M., R.R., G.M., and A.V.  (Id, 86:14-87:16).  D.M. testified that during his freshman year he was part of a group that included A.V. and that he was "homies with Andres at the time."  (D.M. Dep. 145:6-146:5; 149:20-23; 155:10-12, Defendants' Ex. S, attached hereto).

Facts in the record show that school officials believed that J.M.(J.S.) and L.M. were affiliated or associated with a particular group of students in that Assistant Principal Millan Baca testified that he personally placed the names of both J.M.(J.S) and L.M. on a document from the 2019-2020 school year entitled "CHS Feud" which he testified pertained to a feud between R.R. and X.D., and that L.M. was included in the document because Mr. Baca had asked other principals as to "who would be involved in this" and L.M. was listed as being on the periphery as "loosely backing up one of the two parties that we were afraid was going to get into a large fight or have a violent confrontation." L.M. was also included in the "CHS Feud" document because a student had specifically told Mr. Baca that L.M. would "back R.R. if this turns into a large assault," and because "we knew that L.M. was considered to be "a close friend" of R.R. (Millan Baca Deposition, p. 72:20-73:17; 78:11-25, 80:9-16, Defendants' Exhibit A, [65-1]). J.M.(J.S.) was included in the document because J.M.(J.S.) "and R.R. were very close"

and because students had told Mr. Baca that J.M.(J.S.) would back up R.R.  (Id, p. 81:9-20, 82:8-25).

Additionally, the record shows that a Safety & Security Incident Report dated October 4, 2019, contained information concerning J.M.(J.S.) who was escorted to Principal Affentranger's officer where J.M.(J.S.) was interviewed about an "incident he was involved in" the day before.  (Defendants' Exhibit Q, [65-17]).  Exhibit Q further states, "Joseph and his group (gang) of friends were supposed to fight another kid which (sic) security intervened before it happened.  Security reviewed camera footage and observed [J.M.(J.S.)] grouped up with several of his buddies."  (Id).  J.M.(J.S.) testified that he was interviewed by Mr. Affentranger and that "I guess you could say there was – security said there was a situation, and the day after, I got called into the office – well, technically, we all did – and Mr. Affentranger continued to pretty much get me to I guess you could say comply with the story that he had in mind.  And I told him that I'm not going to agree with something that is not true […]."  (Deposition of J.M.(J.S.), p. 64:3-14, Defendants' Exhibit R attached hereto).  J.M.(J.S.) further testified that he and his friends were called into the office about the "situation," which he described as there being "a whole lot of people there. It's like there was over 30 people."  (Id, at 64:18-25).  J.M.(J.S.) testified that "We were all getting lunch […] and from what I heard the next day, is there was a situation that ensued between one of my friends and somebody else [ and] they said – they said that there was going to be a fight, but no, there was never no fight."  (Id, at 65:3-15).

J.M.(J.S.) further testified that when he was in his freshman and sophomore years, he was threatened with physical violence on a regular basis by other students who were

37

considered by school administrators to be "a rival group of students." (Defendants' Ex. R, J.M.(J.S.) Dep. 13:10-22; 14:8-15, attached hereto).

KKKK.        Defendants object to Plaintiffs' PAF KKKK as a violation of D.N.M. LR-Civ. 56.1(b) in that it sets out multiple "additional facts" which are not separately lettered as is required by the local rules. Defendants further object that none of the testimony relied-upon by Plaintiffs, as cited to the record, support the assertion that "One of the *primary purposes of security guards* working at V. Sue Cleveland Highschool was to maintain order and discipline in the school." Doc. 76, p. 28 (emphasis supplied). None of the individuals identified in PAF KKKK were ever question about, and never testified as to, the "primary purposes of security guards." The testimony cited shows that Mr. Mangin first testified as to the ways vaping is a security issue, then described a typical day at school for Mr. Mangin, and finally testified regarding whether security guards are trained "how to enter a bathroom and make sure it's safe." (Deposition of Don Mangin, p. 11:10-13:5; 16:7-23, Plaintiffs' Exhibit A, [76-1]). The testimony cited shows that Mr. Baca was asked about "working with security" and "handling student discipline," and also testified about "serious examples which would involve security." (Deposition of Millan Baca, p. 11:4-23, Defendants' Exhibit A, [65-1]). Mr. Baca also testified about whether, as part of his job, he directs security guards to search students for contraband. (Id, at 12:22-13:8). Finally, the testimony cited shows that Mr. Affentranger testified generally about how he works with the security personnel at his school, and what his personal role is. (Deposition of Scott Affentranger, p. 16:10-17-22, Plaintiffs' Exhibit E, [76-5]).

Respectfully Submitted,

WALZ AND ASSOCIATES, P.C.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.
Alisha L. Walz, Esq.
*Attorneys for RRPS Defendants*
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com

~and~

QUIÑONES LAW FIRM LLC

*/s/ Carlos M. Quiñones, Esq.*
CARLOS M. QUIÑONES, ESQ.
*Attorney for Defendant Archuleta*
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505
(505) 992-1515
quinoneslaw@cybermesa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of May, 2024, I filed the foregoing electronically through the CM/ECF system which caused all parties of record to be served by electronic mail, as more fully reflected in the Notice of Electronic Filing.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.