## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                    **Case No. 1:21-cv-00427 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual and official capacity,**

      **Defendants.**

**and**

**SARAH MONTOYA, o.b.o L.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                    **Case No. 1:21-cv-00648 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual capacity,**

      **Defendants.**

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
**a minor child,**

      **Plaintiffs,**

**vs.**                                                    **Case No. 1:21-cv-00751 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and**
**GEORGE ARCHULETA, in his individual capacity, and**
**JOHN DOE # 1, in his individual capacity,**

      **Defendants.**

**DEFENDANT GEORGE ARCHULETA'S REPLY IN SUPPORT
OF SUMMARY JUDGMENT ON THE BASIS
OF QUALIFIED IMMUNITY ON COUNT I**

COMES NOW Defendant George Archuleta (hereinafter "Defendant Archuleta"), by and through counsel, Quiñones Law Firm LLC (Carlos M. Quiñones, Esq.), and pursuant to Fed.R.Civ.P. 56 and D.N.M. LR-Civ. 56.1, hereby submits this reply brief in support of Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity on Count I, filed on September 11, 2023. [Doc. 66] On that same date, Defendant Archuleta and Defendant Rio Rancho Public Schools Board of Education filed Defendants' Joint Statement of Undisputed Material Facts. [Doc. 65] Plaintiffs filed their response to Defendant Archuleta's qualified immunity motion and to the Joint Statement of Undisputed Facts on January 26, 2024. [Doc. 76, 77]

**I.        REPLY TO PLAINTIFFS' STATEMENT OF FACTS**

Defendant Archuleta objects to many of Plaintiffs' responses to statements of fact for noncompliance with D.N.M. LR-Civ. 56.1(b). *See* Defendants' Joint Reply to Plaintiffs' Joint Statement of Undisputed Facts, filed May 22, 2024, [Doc. 84]. Plaintiffs repeatedly fail to refer with particularity to those portions of the record upon which they rely, as they refer to only their own lettered assertions of fact instead of to the record, and in many instances, they respond to Defendants' Joint Undisputed Material Facts by intermixing and setting out multiple additional facts, without lettering each additional fact. D.N.M. LR-Civ. 56.1(b)("each additional fact must be lettered"); *Wells v. Hi Country Auto Group*, 2014 WL 12623030, *2 (D.N.M. Jan. 8, 2014)(Johnson, J.)("additional facts should have been put forth in a separate portion of Plaintiff's response instead of intermixed with Plaintiff's response to the [UMFs]"). Where a non-

movant fails to properly address or support the opposing party's assertion of facts, the Court has a variety of options, including considering the fact undisputed.  Fed.R.Civ.P. 56(e); *Wells,* * 6 n. 7 (D.N.M. Jan. 8, 2014)(Johnson, J.)(Court has authority to deem facts undisputed for failure to follow the requirements of Fed. R. Civ. P. 56 and for violation of procedure set forth in D.N.M. LR-Civ. 56.1(b)); *Amparan v. Demir*, 234 F.Supp.3d 1110, 1114 (D.N.M 2017)(court would not consider Plaintiff's additional facts set out in response to Defendant's UMFs).

## II.    REPLY TO PLAINTIFFS' "OVERVIEW"

D.M., L.M., and J.M.(J.S.)[1] claim that campus security aide George Archuleta violated the Fourth Amendment by searching them "without reasonable suspicion or other legal justification," and even if justified, it was unreasonable "to grope or fondle the students' penises, genitals, or buttocks during a search."   *See* "Complaint" [Doc. 1] in *Mondragon* case, at ¶¶ 27, 28; "Complaint" [Doc. 1] in *Montoya* case, at ¶¶ 23, 24; and "Complaint" [Doc. 1] in *Salazar* case, at ¶¶31, 32.  In their response brief, Plaintiffs are repeatedly described as "children" and claim that Mr. Archuleta improperly searched them by "fondling, grabbing and rubbing their genitals." Plaintiffs' Opposition Brief, p. 2. [Doc. 77]  However, Plaintiffs' characterizations and assertions are not supported by any facts in the record.

The record shows that at the time of the alleged pat-down searches, Plaintiffs were all male high school students in either their freshman or sophomore years.  And

---

[1]  Plaintiffs' response confusingly refers to student J.M. as "J.S." over forty times, despite having filed suit on behalf of a Plaintiff specifically identified as "J.M." Plaintiffs' Opposition to Defendants' (sic) Motion for Summary Judgment on the Basis of Qualified Immunity, ("Plaintiffs' Opposition Brief") Doc. 77; Complaint, Doc. 1.  In an effort to avoid further confusion, Defendants refer to this Plaintiff as "J.M.(J.S.)".

while Plaintiffs deny that that were ever "affiliated with any high school gangs or groups,"[2] the undisputed facts show otherwise: Plaintiffs were friends with each other and all three were in what J.M.(J.S.) agreed was a "group that [they] were affiliated with."  Defendants' Ex. , Dep. J.M.(J.S.), 66:4-21.  Further, it is undisputed that all three Plaintiffs were well-known to Rio Rancho school administrators: J.M.(J.S.) was expelled from middle school as a 5"-8', 200-pound 7th or  8th grader for striking a female school aide, and in the first few weeks of their freshman year, L.M. was caught and disciplined for smoking an e-cigarette on school premises and D.M. was known to have been physically threatened by another student. Defendants' UMF 73; Plaintiffs' Exhibit B, [Doc. 76-2, pp. 11-13]; Defendants' Ex. R, J.M.(J.S.) Dep. 78:9-82:7; Defendants' Ex. A, Baca Dep. 56:16-57:22; Defendants Ex. T, Baca Dep. 68:12-69:24.  It is undisputed that as of September of 2018, school administrators knew of an Instagram group chat involving D.M. where a handgun and the potential for physical violence were discussed, and administrators had been informed by a student in that chat that "a lot of boys were carrying guns at the time."  Defendants' Ex. T, Baca Dep. 68:12-69:21; Defendants' Ex. U.  Regarding this group chat, D.M. stated that his "friend group didn't like this other friend group […] that was talking all kinds of crap to us like all the time." Defendants' Ex. S, D.M. Dep. 145:6-146:5.   Finally, it is undisputed that during his freshman and sophomore years, J.M.(J.S.) was regularly threatened with physical violence by other students, who were considered by school administrators to be "a rival group of students," and that J.M.(J.S.) was written up for disciplinary offenses more than 40 or 50 times

---

[2]  *See* <u>Plaintiffs' Joint Statement of Undisputed Facts</u>, [Doc. 76], pp. 7, 28.

during his sophomore year. Defendants' Ex. R, J.M.(J.S.) Dep. 13:10-14:15; Defendants' UMF 84, 85.

Plaintiffs were not "children" as characterized in their brief. While they may have then been legal minors, these three Plaintiffs were young men known by school officials to be "affiliated" with a "friend group" that discussed fighting, handguns, and potential violence and all three were objectively reasonably suspected of engaging in serious, dangerous activity – potentially involving the possession of handguns – that threatened school safety at V. Sue Cleveland High School.

Mr. Archuleta denies that he ever groped, fondled, grabbed or rubbed D.M., L.M. or J.M.(J.S.) However, Mr. Archuleta's denial and Plaintiffs' assertion that "[t]his case is really Mr. Archuleta's word against the Plaintiffs' word," are not relevant to the disposition of the motion based on qualified immunity because the Court will only consider uncontested facts, viewing those facts in the light most favorable to Plaintiffs. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774-75 (2007)(*quoting U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1062)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Johnson v. Weld Cnty., Colo.*, 594 1202, 1210 (10th Cir. 2010).

Plaintiffs argue that Mr. Archuleta's "word is meaningless" and "should be disregarded" by the Court, claiming that "[p]recedent exists for disregarding a Party's statement of facts that are blatantly contradicted by the record to the point a reasonable jury could not believe the party." Plaintiffs' Opposition Brief, Doc. 77. at p. 4 (*citing Scott*, 550 U.S. at 380, 127 S.Ct. 1769, 1776). But Plaintiffs' argument is not applicable here and is not supported by *Scott v. Harris*, where the Supreme Court concluded that in ruling on a motion for summary judgment based on qualified immunity, where opposing

parties tell two different stories and the plaintiff's version "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt [the plaintiff's] version of the facts [...]." *Id,* 550 U.S. at 378-79, 127 S.Ct. 1769, 1775-76 (video evidence clearly contradicted the *plaintiff's* version of the facts). Furthermore, Plaintiffs' challenge to Mr. Archuleta's credibility misses the mark. Mr. Archuleta's motion for summary judgment specifically relies upon each Plaintiff's "version of events" regarding the searches in question. *See* <u>Defendant's Motion</u>, Doc. 66, pp. 15, 18, 19, 21, 22, 24 ("Plaintiffs' *version of the facts*, that are supported by the record, simply do not show the violation of a constitutional right.")

Further, Plaintiffs' reliance upon school district policies, procedures, or practices is not relevant to Mr. Archuleta's qualified immunity defense.[3] *Davis v. Scherer*, 468 U.S. 183, 194-96, 104 S.Ct. 3013 (1984)(government officials "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *Jensen v. Garden*, 752 Fed.Appx. 620, 626 (10th Cir. 2018)(failure to adhere to policy or regulation, without more, does not equate to a constitutional violation). Accordingly, school district rules or policies in force at the time of the described incidents are not relevant to the constitutional issues before the Court.

In sum, Plaintiffs' unsupported, conclusory, and self-serving assertions in their response brief do not create an issue of fact and are not dispositive. *See Tran v. Sonic Indus. Serv., Inc.*, 490 Fed.Appx. 115, 118 (10th Cir. 2012)(unpublished)(to oppose

---

[3] Plaintiffs assert that Mr. Archuleta was required to document each search with a written report. *See* <u>Plaintiffs' Opposition Brief</u>, p. 3. They further incorrectly assert that Mr. Archuleta was required to video record each search. Id. The undisputed facts are that "*when possible,*" school searches are to be recorded. Plaintiffs' Exhibit D, Archuleta Dep. 85:3-23.

summary judgment, plaintiffs "must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of material fact"). The undisputed facts in the record show that Mr. Archuleta is entitled to the defense of qualified immunity.

### III.   LAW REGARDING SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

In order to avoid summary judgment based upon qualified immunity, each Plaintiff bears a heavy two-prong burden and must show: 1) that Mr. Archuleta's conduct violated their Fourth Amendment rights and 2) that the right they assert "was clearly established at the time of the conduct in question." Plaintiffs' Opposition Brief, pp. 4, 5 [Doc. 77]; *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th 2017)(if plaintiffs fail to satisfy either part of the inquiry, the court must grant qualified immunity). The Court has discretion to "decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009). Pursuant to the "clearly established" prong, Plaintiffs must "point to a Supreme Court or Tenth Circuit decision on point," or show that "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Carabajal*, 847 F.3d 1203, 1208, (*quoting Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2006)).

Relying upon *Taylor v. Riojas*, 141 S.Ct. 52, 53 (2020), Plaintiffs contend that there need not be "a case that is exactly factually on point to give notice to individuals that their actions violate clearly established law." Plaintiffs' Opposition Brief, pp. 5-6 [Doc. 77]. However, the Supreme Court's *per curiam* decision in *Taylor* suggests only that in certain "extreme circumstances," because the alleged conduct is "particularly

egregious," any reasonable official should have realized that the complained-of conduct offended the Constitution. *Taylor*, 141 S.Ct. at 54-54; *see also Truman v. Orem City*, 1 F.4th 1227, 1235-36 (10th Cir. 2021)(discusses the "rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances"). This is not one of those "rare obvious" cases. Plaintiffs' version of the facts, which find support in the record, does not show "particularly egregious" or "extreme circumstances." At best, Plaintiffs' facts show that in a very limited number of instances while conducting legally justified pat-down searches for weapons or prohibited items, a male campus security aide made incidental, extremely brief, non-skin-to-skin contact with male students' thighs, buttocks, and groin areas. In this setting, where long-standing Fourth Amendment precedent regarding school searches instructs that reasonableness "depends on the context within which a search takes place," and where the search "measures adopted are reasonably related to the objectives of the search," Plaintiffs have not shown that incidental, *de minimis* contact that occurs during a student pat-down – which necessarily permits and indeed requires physical contact with the student – violates clearly established constitutional rights of which a reasonable person would have known. *New Jersey v. T.L.O.*, 469 U.S. 325, 342, 105 S.Ct. 733, 743 (1985); *A.M. v. Holmes*, 830 F.3d 1123, 1157-58 (10th Cir. 2016).

## IV.    REPLY TO PLAINTIFFS' ARGUMENT

### A.    Facts in the Record Do Not Show that Mr. Archuleta's Conduct Violated 4th Amendment Rights that were Clearly Established

"[N]ot only police officers, but also school administrators are state actors bound by the Fourth Amendment." Plaintiffs' Opposition Brief, p. 12 [Doc. 77] (*citing Pacheco v. Hopmeier*, 770 F.Supp. 1174, 1181 (D.N.M. 2011)(Black, J.)(*citing New Jersey v.*

*T.L.O.*, 469 U.S. at 333-37, 105 S.Ct. 733). Even though police officers, with limited exceptions, are required under the Fourth Amendment to have either a warrant or probable cause to conduct a search, there is a well-established "exception for school administrators." *Pacheco*, 770 F.Supp. 1174, 1188-89 (*citing T.L.O.*, 469 U.S. at 333, 341, 105 S.Ct. 773). "This relaxed standard of suspicion is applied in the school context due to the heightened governmental interest in maintaining the safety of the educational environment and ensuring its conduciveness to learning, discipline, and the inculcation of students with manners and civility." *Foley v. Carlsbad Municipal Schools*, 2011 WL 13286401, *3 (D.N.M. January 24, 2011)(Brack, J)(citations omitted).

"Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified in its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42, 346, 105 S.Ct. 733 (reasonable suspicion in school setting does not require "absolute certainty;" only requires "moderate chance of finding evidence of wrongdoing"); *Holmes*, 830 F.3d at 1158 ("sufficient probability" is the touchstone of reasonableness in school-search context). Student searches are deemed reasonable in scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id*, 469 U.S. at 342, 105 S.Ct. 733; *Holmes,* 830 F.3d at 1160 (was search method chosen *justifiably* intrusive). It is settled law that "a search of a student which is justified at its inception is also justified as to outer clothing and a backpack." *Holmes*, 830 F.3d at 1160.

Notably, there is no blanket prohibition under the Fourth Amendment against student pat-down searches, pocket searches, or even strip searches; all school searches are reviewed for reasonableness using the two-part inquiry established under *T.L.O.*. *See eg Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 374-75, 129 S.Ct. 2633, 2641-42 (2009)("indignity" of student strip search "does not, of course, outlaw it, but it does implicate the rule of reasonableness as stated in *T.L.O.*"); *Pacheco*, 770 F.Supp. 2d 1174, 1189-90 (search of student's pockets, wallet, and shoes unreasonable and excessively intrusive where there was no suspicion that the student possessed a weapon or drugs and where the student had already been handcuffed and was no longer a security threat); *H.Y. ex rel. K.Y. v. Russell County Bd. of Educ.*, 490 F.Supp.2d 1174, 1186 (M.D.Ala. 2007(classroom searches where school official reached into student pockets "not excessively intrusive" and permissible in scope where officials "had some suspicion" students had taken teacher's property); *Deyo v. Tomball Ind. Sch. Dist.*, 144 F.Supp.3d 905, 917-18 (S.D.Tx. 2015)(female official's search of male, reaching "all the way down" into front and back pockets of student's skinny jeans was justified at inception and in scope); *In re Josue T.*, 1999-NMCA-115, ¶ 23, 989 P.2d 431, 439 (search of male student's pocket, by male official, was reasonable at inception and in scope where official observed student acting quiet and evasive and student refused to remove hand from pocket or empty pocket in question, and pocket bulged with obviously heavy object).

**B. <u>Undisputed Facts in the Record Support Reasonable Suspicion of Contraband or Weapons in light of the Totality of the Circumstances</u>**

Plaintiffs attempt to deflect the significance of evidence in the record that shows in February of 2019, there had been a shooting at V. Sue Cleveland High School,[4] that during the 2019-2020 school year there was "quite a blow up of violence or threatened violence on the campus of Cleveland High School," and that school officials were "afraid" there was the potential for "a large fight or […] a confrontation either on campus or off campus." Defendants' UMF 35, 36 [Doc. 65]. These facts are uncontroverted. It is also uncontroverted that school officials "were incredibly busy" in the Fall of the 2019-2020 school year "trying to keep […] two groups of boys from hurting each other," and that both L.M.[5] and J.M.(J.S.) were believed to be involved directly or peripherally with the two groups. Defendants' UMF 39, 40 [Doc. 65]. At the time when these "two groups were having the interactions they were," school officials "were incredibly worried that there would be a shooting at school;" school officials had received "emails with or phone calls" from students and parents where there was a screenshot image "showing some type of handgun or automatic rifle." Defendants' UMF 41 [Doc. 65].

The undisputed facts further show that as early as September of 2018, school officials were concerned about a potential "blow-up" or fight between two so-called rival

---

[4] It is undisputed that there was a shooting on Valentine's Day in 2019, at V. Sue Cleveland High School. Defendants' UMF 36 [Doc. 65]. Defendant requests that the Court take judicial notice of the contents of a news article about the shooting, not for the truth of the article's assertions, but to show that facts concerning the shooting were publicly known. *New Mexico ex rel. Balderas v. Tiny Lab Productions*, 2020 WL 13310562, *1 (D.N.M. March 23, 2020)(Vazquez, J.). The article can be found at: https://www.koat.com/article/possible-shots-fired-at-v-sue-cleveland-high-school/26339839.

[5] L.M. is referred to in deposition transcripts and statements of fact as both L.M. and E.M.

"friend groups," that a group chat amongst these two groups of Rio Rancho students – that included D.M. – mentioned "straps" or handguns, and that another student involved in the group chat told school officials "that he had heard that a lot of boys were carrying guns at the time." Defendants' Ex. T, Baca Dep. 68:12-69:24; 147:2-15. It is undisputed that school officials had "an ongoing concern that somebody would bring a weapon or a gun to school." Defendants' Exhibit A, Baca Dep. 70:5-8.

These undisputed facts are not about "generalized concerns about violence [or] gun violence," as Plaintiffs contend. Plaintiffs' Opposition Brief, p. 16. These undisputed facts show very concrete, specific concerns among school officials and administrators of the potential for school violence or a school shooting during both the 2018-2019 and 2019-2020 school years, and the reasonable belief – based on reliable information - that the "friend group" of L.M., J.M.(J.S.), and D.M. were or could be involved, and that these individuals could be amongst those reasonably believed to be carrying guns at the time. These undisputed facts are relevant to the reasonableness of the search of D.M., who had been engaged in the "straps" group chat incident and just one week after the February 2019, school shooting, where D.M. was caught fighting in the bathroom with J.M.(J.S.). Defendants' UMF 49; Plaintiffs' Exhibit H, p. 44:21-45:7; Defendants' Ex. S, D.M. Dep. 149:24-150:6. These undisputed facts are relevant to the reasonableness of the search of D.M. in March of 2020, when Vice Principal Baca "suspected a weapon or contraband" after D.M. was asked "to take his hands out of his pockets [and] he was refusing" and when asked what was in his pockets, he would not reply. Defendants' UMF 60, Baca Dep. 52:7-53:21.

Concerns over student possession of handguns or the potential for a school shooting on campus during the Fall of 2019, are also directly relevant to the reasonableness of the search of J.M.(J.S.) in early October, 2019, when he was called into Principal Scott Affentranger's office the day after he was identified as present at an incident where school security had intervened in a situation where there was the potential for a student fight on campus. Defendants' UMF 86; Defendants' Exhibit Q.

All of these concerns are relevant and material to the "substantial" and "compelling" governmental interest in maintaining discipline and order in schools, in protecting students and school personnel, and in preventing school violence," and the school's obligation to take credible information seriously and to investigate further. *T.L.O.*, 469 U.S. at 339-40; *Milligan v. City of Slidell*, 226 F.3d 652, 655 (5th Cir. 2000); *Sabbah v. Springfield School Dist.*, 2021 WL 2138792, *1 (E.D.Pa. May 26, 2021)(Pratter, J.)(emphasis supplied)("when school personnel learn of a potential threat of violence, *the school is obligated to investigate it*."); *Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 480 (5th Cir. 1982)("school officials have both a right and a duty to provide a safe environment conducive to education").

The facts demonstrate that all three Plaintiffs were part of the same so-called "friend group," that D.M. was known to have been part of the September 2018, group chat where potential violence and handguns were mentioned, and that administrators had information that "a lot of boys were carrying guns" at that time. Legitimate and objectively reasonable concerns about student gun violence and the heightened interest in maintaining school safety are also directly relevant and material to the reasonableness of each of the six pat-down searches of Plaintiffs as described in this litigation, where the

Court is required to "balance the government's interest in protecting the health and welfare of students against the privacy interest of the individual." *Foley*, 2011 WL 13286401, *3.[6]

Finally, the repeated assertion that Mr. Archuleta never suspected Plaintiffs of having weapons at school does not prevent summary judgment on the basis of qualified immunity. Plaintiffs' Opposition Brief, pp. 2, 25, 17, 18. The undisputed facts show that all of the pat-down searches were conducted by Mr. Archuleta pursuant to either a directive of an assistant principal or as a result of an objectively reasonable concern for the safety of school personnel, or both. See Plaintiffs' Additional Fact, FFF; Plaintiffs' Exhibit D, Archuleta Dep. 52:9-13; Defendants' Ex. A, Baca Dep. 47:5-7; Defendants' UMF 79, L.M. Dep. 56:4-14; Plaintiffs' Exhibit B, Doc. 76-2, pp. 4-7. Even if Mr. Archuleta did not independently suspect that a student was in possession of a weapon, because he was directed by a school administrator to conduct the pat-down searches and because there are no facts in the record to show that it was not objectively reasonable to rely upon the directives of a school administrator, Mr. Archuleta is entitled to the defense of qualified immunity. Whether or not any of the school administrators had sufficient legal suspicion of a weapon or potential violence to order or justify the pat-down searches

---

[6] V. Sue Cleveland High School officials' concerns during the 2018-2019 and 2019-2020 school years regarding the potential for a school shooting – especially in light of an actual shooting having occurred on campus in February of 2019 – should not be viewed in a vacuum. School shootings on American campuses are not uncommon; in 2019 alone, there were at least 11 shootings at high schools or colleges and schools responded to dozens more credible threats of attacks during 2019. Defendant requests that the Court take judicial notice of a news article with a list of school shootings at American campuses during 2019, as evidence that this information is publicly known and in the public domain. *New Mexico ex rel. Balderas*, 2020 WL 13310562, at *1. This article can be found at:
*See* https://www.nytimes.com/2019/11/14/is/school-shootings-list.html.

is irrelevant here; none of the school administrators who ordered the searches are defendants in these lawsuits, which have been consolidated.

In all circumstances here, Mr. Archuleta's conduct was objectively reasonable under the totality of the circumstances; there was no violation of clearly established law.

**C. <u>D.M. fails to show that Mr. Archuleta's conduct violated clearly established Fourth Amendment rights.</u>**

"The first step in assessing the constitutionality of [Mr. Archuleta's] actions is to determine the relevant facts." *Scott*, 550 U.S. at 378, 127 S.Ct. 1769, 1775. Although D.M. initially stated in answers to interrogatories that he had been "groped and/or improperly searched" by Mr. Archuleta a total of four times, D.M. now concedes that he was searched inappropriately on only two occasions: 1) on February 21, 2019, after a fight with J.M.(J.S.), and 2) on March 5, 2020, in Vice Principal Baca's office. <u>Plaintiffs' Opposition Brief</u>, pp. 17-18, Defendants' Exhibit L.

With regard to the first search, D.M. testified that he had been fighting with J.M.(J.S) in the bathroom when Mr. Archuleta walked in, that during the fight D.M. had received a blow to his head and a black eye, and that D.M. was ultimately taken to the hospital to be checked out. Defendants' UMF 49; D.M. Dep. 45:4-14; 68:2-4. Notably, the bathroom fight occurred just one week after a shooting at the school. Id, UMF 36, Baca Dep. 136:21-137:11. D.M. was taken to the principal's office and at some unspecified point, D.M. claims that Mr. Archuleta searched him without anyone else present. Undisputed facts in the record show that Mr. Archuleta searched D.M. at Mr. Baca's "directive." Plaintiffs' Additional Fact, FFF; Plaintiffs' Exhibit D, Archuleta Dep. 52:2-12.

D.M. testified that Mr. Archuleta "started searching me, he started searching my bag and then he started searching my body.  And as soon as I emptied my pockets for him he started feeling around my thighs and my buttocks.  And he actually touched – he actually touched the tip of my penis and made a swirly motion and asking me, 'What's this?'"  D.M. Dep. 43:8-19.  There was never any skin-to-skin contact during the February 21, 2019, search.

The second search of D.M. occurred on the morning of March 5, 2020, the day after he was found to be in possession of a vape pen while waiting to board a school bus and was told to go Mr. Baca's office the next morning. Defendants' UMF 55, Defendants' Exhibit A, Baca. Dep. 46:16-18.  According to Mr. Baca:

> "I asked [D.M.] if he had anything on him and he said no.  And then he started digging around in his pockets and trying to push something down into his pocket and I asked to get his hands out of his pockets. And asked him if he had anything in his pockets and he said no.  And I asked him to keep his hands on the table.

> And over and over and over, he kept sticking his hands in his pockets trying to push something I don't know where.  Okay.  At that point, I did direct security to search him because I felt he was acting suspicious." Id, Baca Dep. 46:21-47:7.

Mr. Baca further testified that, "[W]hen we asked [D.M.] to take his hands out of his pockets, he was refusing.  When we asked him to keep his hands out of his pockets, he was refusing.  When we asked him what was in his pockets, he wouldn't reply."  Id, Baca Dep. 52:17-21.  Mr. Baca "suspected a weapon or contraband" and directed Mr. Archuleta to search D.M., who was patted down.  Id, Baca Dep. 46: 5-6, 52:1-6.

D.M. testified that Baca was sitting at his desk and that he and Mr. Archuleta "were right in front of his desk while I was being searched."  Plaintiffs' Exhibit H, D.M. Dep. 81:22-25.  D.M. testified that Mr. Archuleta "was feeling on my thighs, weirdly.

Puts his hands in my pockets again.  And then he goes for my wallet, pulls out – pulls out a condom of mine and then refers to me as a little guy."  Id, at p. 81:18-21.  D.M. testified that the search was an exterior pat down of his pants and thighs, "until [Mr. Archuleta] put his hands in my pockets when he seen my pockets were empty."  Id, at p. 83:21-25. When asked whether Mr. Archuleta touched his penis during the search, D.M. stated, "yes."  Id, at p. 84:16-21. There was no skin-to-skin contact.  Id.  In answers to interrogatories, D.M. did not state that Mr. Archuleta ever touched his penis during the March 5, 2019, search.  See Defendants Exhibit K.

Mr. Archuleta is entitled to qualified immunity because D.M. fails to show that either search violated his Fourth Amendment rights.  Both searches were conducted pursuant to the directive of an assistant principal or as a result of an objectively reasonable concern for the safety of students, school personnel or both, and both searches were reasonable at inception and in scope.  With regard to the first search, Mr. Archuleta had personal knowledge that D.M. had just engaged in fighting with another student and was justified in detaining D.M. and delivering him to the principal's office.  Under the totality of the circumstances, where D.M. was known by school officials to have been involved in an Instagram group chat where fighting and handguns were mentioned, where another student in that chat had informed administrators "that a lot of boys were carrying guns at the time," where a shooting had occurred at the high school just one week prior, and where D.M. had just engaged in violent conduct, it was reasonable for Mr. Archuleta to conduct a search of D.M.'s person.  *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868 (1968)(do not need absolute certainty that individual is armed; issue is whether a reasonably prudent person would be warranted in belief that his safety or that of others

was in danger).  Additionally, undisputed facts in the record also show that the search was conducted pursuant to the directive of Assistant Principal Baca.  Plaintiffs' Additional Fact, FFF; Plaintiffs' Exhibit D, Archuleta Dep. 52:2-12.

Further, the pat-down conducted – including pocket searches - was reasonable in scope to discover any concealed weapon that could pose a threat to Mr. Archuleta's safety or that of others at school.  *Id*, 392 U.S. at 29, 88 S.Ct. 1868.  Brief, non-skin-to-skin contact with the buttocks or genital area, which is incidental to a pat-down search is not a Fourth Amendment violation.  *See Golden v. County of Westchester*, 2012 WL 4327652, *6 (S.D.N.Y. September 18, 2012)(Ramos, J.)(incidental contact with breasts and genital area during pat-down search of outer clothing was *de minimis* intrusion).

Regarding the second search, Vice Principal Baca, who knew that D.M. had been part of the group chat discussion where handguns were mentioned, asked D.M, "if he had anything on him," and then observed D.M. continually "trying to push something down in his pocket."  After D.M.'s repeated refusal to remove his hands from his pockets and keep his hands on the table, Mr. Baca suspected either a weapon or contraband and directed Mr. Archuleta to search D.M.  Under the totality of the circumstances, it was reasonable to search D.M. for a weapon or contraband.  *See In re Josue T*., 1999-NMCA-115, ¶ 7, 989 P.2d 431, 434.  In the presence of Mr. Baca, Mr. Archuleta conducted a pat-down search of D.M.s pants, thighs, and pockets.  This search was similarly reasonable in scope under *TLO*. *In re Josue T*., at ¶¶ 23-27, 989 P.2d 431, 438-39.  Brief, incidental contact with D.M.'s penis does not amount to a Fourth Amendment violation.  Plaintiff D.M.'s facts regarding both searches do not show a Fourth Amendment violation. *T.L.O.*,

469 U.S at 341-42, 346, 105 S.Ct. 733 (school officials need only "moderate chance of finding evidence of wrongdoing").

Even if there was contact with D.M.'s buttocks or penis as described, which is denied, Plaintiff has failed to show that it was a clearly established violation of the Fourth Amendment to make brief contact with a student's genitals, without more, during an otherwise constitutionally-legal school pat down search. *Zayas v. Ortega*, 2018 WL 11227735, *12 (N.D.Cal. August 8, 2018)(Chen, J.)(contours of *de minimis* touching are not clearly established and this case does not approach egregious facts). Plaintiff has also failed to show that in a school setting, a campus security aide who conducts a pat-down search pursuant to the directive of a school administrator to search a student, violates the Fourth Amendment where there is no showing that it was objectively unreasonable to rely upon that directive. D.M. has not met his heavy, two-part burden and Mr. Archuleta is entitled to qualified immunity.

**D. L.M. fails to show that Mr. Archuleta's conduct violated clearly established Fourth Amendment rights.**

L.M. concedes that Mr. Archuleta searched him on only two occasions where alleged inappropriate conduct occurred: the so-called "v-line search" and the "penis rubbing search," as characterized by Plaintiffs. Plaintiffs' Opposition Brief, pp. 19-22. L.M. testified that he "knows for a fact" that Vice Principal Galindo directed that Mr. Archuleta conduct both searches and that both Mr. Galindo and another security guard were present during those searches. Defendants' UMF 79, L.M. Dep. 56:4-14. There was no "skin-to-skin" contact with L.M.'s genitals during either search. Defendants' UMF 83.

Prior to either of the two searches in question here, it is undisputed that school officials including Mr. Archuleta knew that as a freshman L.M. had been caught smoking an e-cigarette on campus on August 29, 2019, and that an e-cigarette was located on his person. Defendants' UMF 73, 74; Plaintiffs' Exhibit B, Doc. 76-2, pp. 11-13. At some point thereafter during his freshman year, L.M. was searched again but L.M. cannot recall why he was "pulled to the side or *why I was caught – what I got caught doing*," but L.M. remembers the search. With regard to this so-called "v-line search," which took place in an assistant principal's office, L.M. testified:

> "They put their hands in your – in your pockets. And while he was doing that, he kind of felt around my thigh, at first – at first, around my thigh; and then, he went kind of to the V line. And at that point, I knew. I was, like – I was, like, I'm being violated right now, and it's […] – it's weird. […] he was in my pants like that and I remember him feeling around, like, feeling around my penis and my – I don't know what you call them – testicles. […] It lasted for, like – I don't know – five seconds maybe." Defendants' Exhibit O, L.M. Dep. 63:18-64:25, 116:4-10.

L.M. testified that Mr. Archuleta, "[…] would kind of go towards my – my genital area and cup, actually, like, kind of cup over my penis and my balls and kind of, like – I wouldn't say rub, but, like – he was, like, feel around – feel, like, feel them, feel, and just feel my actual penis and kind of – I don't – like, just grab it, I guess." Plaintiffs' Exhibit K, L.M. Dep. 151:13-19. L.M. further testified, "I remember saying, 'Whoa dude. Whoa dude.,' and taking a step back." Id, at 66:5-6.

With regard to the next, so-called "penis rubbing search," L.M. was "caught in the bathroom […] using the vaping device," and he handed the vaping device to Mr. Archuleta. Defendants' UMF 78; Defendants' Exhibit O, L.M. Dep. 67:16-21. L.M. was then escorted to the principal's office where Assistant Principal Galindo directed that

L.M. be searched.  Defendants' UMF 78.  L.M. testified that, "they made me turn and face the wall with my hands in the air and they patted me down."  Defendants' Exhibit O, L.M. Dep. 68:5-7.  L.M. testified that Mr. Archuleta,

> "was in my pockets.  And that's when he was – I don't know what the word is – groping or – […] I guess groping.  I don't want to say, like – I don't know, rubbing on my penis.  I guess it's that as well.  I don't know.  Groping, we'll call it groping.  Same thing happened; groping around my genitals, my – my penis."  Id, at 68:8-16

L.M. further testified that, Mr. Archuleta was "patting me down from the side and then he went into my pockets.  And same thing, he cupped over my penis and my balls and kind of felt them for a little, […]  like three to five, maybe five seconds.  Just so he could get a couple of feels in and then he'd pull his hand out."  Plaintiffs' Exhibit K, L.M. Dep. 152:8-153:8.

L.M.'s facts regarding both searches do not show the violation of a Fourth Amendment right that was clearly established.  Notably, L.M.'s facts regarding the so-called "v-line" search are insufficient as a matter of law to show a Fourth Amendment violation.  L.M. testified that, other than it occurring during his freshman year, he could not remember anything about when it occurred or the reason why he was allegedly searched, but only remembers that the search took place in Assistant Principal Galindo's office, that Mr. Galinda was present, and that Mr. Galindo directed Mr. Archuleta to conduct the search.  Defendants' UMF 75, 79.  L.M. bears the burden of putting forth sufficient evidence from the record from which a reasonable jury could find support for a Fourth Amendment violation.  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir.

2014).  L.M. has not done so and has not overcome the presumption that Mr. Archuleta is entitled to qualified immunity.[7]

The second search, also conducted pursuant to the directive of an assistant principal, occurred after L.M. handed over a vaping device to Mr. Archuleta.  In their experience, school officials know that when a student is found to have one vaping device, the majority of time those students also possess other, often empty, vaping devices.  Defendants' UMF 20.  Brief, three to five second contact with the genital area during a legally justified pat-down search of student clothing, including what is described as "cupping," is not a violation of the Fourth Amendment.  *See Garcia v. N.Y. State Police*, 138 F.Supp. 2d 298, 304 (N.D.N.Y. 2001)("fairly quick" cupping of female's groin area, during otherwise justified over the clothing pat-down search not Fourth Amendment violation).

Further L.M. fails to show that it was a clearly established violation of the Fourth Amendment to make brief contact with a student's genitals during an otherwise constitutionally-legal pat down search and fails to show that a search by a campus security aide - who is directed by a school administrator to conduct the search – violates the Fourth Amendment where there is no showing that it was objectively unreasonable to

---

[7]  Tellingly, Plaintiffs' facts regarding the so-called "v-line" search as set out in their Joint Statement of Undisputed Facts, are few; there are no details and no facts to show the circumstances leading up to the search, no facts to show where L.M. was located at school or what he was doing prior to the search, no facts to show whether it was Mr. Archuleta or another individual who brought L.M. to Mr. Galindo's office, or whether he was merely called to the office, and no facts to show why L.M. was searched.  Plaintiffs' Joint Statement of Undisputed Facts, (Doc. 76) p. 26.  To avoid qualified immunity, L.M. must show a Fourth Amendment violation; without sufficient facts, L.M. cannot show that the pat-down search he describes was not justified at its inception.

rely upon the administrator's directive. L.M. has not met his heavy, two-part burden and Mr. Archuleta is entitled to qualified immunity.

E. **J.M.(J.S.) fails to show that Mr. Archuleta's conduct violated clearly established Fourth Amendment rights.**

By his own admission, J.M.(J.S.) was written up for disciplinary offenses over 40 or 50 times during his sophomore year - Fall of 2019 to Spring of 2020 – and he claims he was searched by school personnel more than 50 times. Defendants' UMF 84, 85.

Regardless, J.M.(J.S.) contends that he was searched inappropriately on only two occasions by Mr. Archuleta during that school year, the same school year that school officials had ongoing, legitimate concerns regarding the potential for violence, including the possibility of gun violence, between two groups of students, and possibly involving J.M.(J.S.). Defendants' UMF 35, 36, 39, 40, 84.

One of the disciplinary infractions and searches occurred on October 4, 2019, when J.M.(J.S.) was in the Principal Scott Affentranger's office being interviewed about a school-yard incident that had occurred the previous day and Assistant Principal Baca directed Mr. Archuleta to search J.M.(J.S.) and his backpack. Plaintiffs' Exhibit B, Doc. 76-2, pp. 4-7. According to the "Safety & Security Incident Report" dated October 4, 2019, J.M.(J.S.) "and his group (gang) of friends were supposed to fight another kid which (sic) security intervened before it happened. Security reviewed camera footage and observed [J.M.(J.S.)] grouped up with several of his buddies." Id, at p. 7. This search occurred at a time when school officials were concerned about potential student violence and possible gun violence at school.

With regard to this incident, J.M.(J.S.) testified that he was interviewed by Mr. Affentranger and that, "I guess you could say there was – security said there was a

situation, and the day after, I got called into the office – well, technically, we all did – and Mr. Affentranger continued to pretty much get me to I guess you could say comply with the story that he had in mind. And I told him that I'm not going to agree with something that is not true […]." Defendants' Ex. R, J.M.(J.S.) Dep. 64:3-17 [Doc. 84]. The October 4, 2019, report indicates that J.M.(J.S.) was searched, that an Electronic Cigarette and a bottle of "E-Cig juice" was located, that J.M.(J.S.) was given a one-day out of school suspension for possession of the electronic cigarette, and that J.M.(J.S.) was given a five-day out of school suspension "for obstructing an investigation." Plaintiffs' Exhibit B, Doc. 76-2, p. 7.

During this search, J.M.(J.S.) was instructed to remove his shoes and insoles, was instructed to flip his pant waistband inside out, and was told to turn around. Defendants' UMF 89, 90. J.M.(J.S.) testified that during the pat down, Mr. Archuleta was "checking my left cuff on my left leg, and he's going up patting my leg, and he's getting really high on my thigh at this point [and] I feel something – something touch me on my left testicle." Plaintiffs' Exhbitit J, 157:18-24, 158:4-7. J.M.(J.S.) testified that the "touch" lasted "a few seconds," and occurred over J.M.'s(J.S.'s) pants. Id, 158:4-7, 159:24-160:22. J.M.(J.S.) testified that after that, Mr. Archuleta did not resume the search in the area of his crotch or groin stating, "After that he – I guess you could say after that he was trying to be as professional as possible. […] Before – *before the touching* – he was – I guess you could say he was a little sloppy with it." Defendants' Exhibit K, J.M.(J.S.) Dep. 160-23-164:16 (emphasis supplied). J.M.(J.S.) testified that "after it happened, he was kind of trying to be I guess you could say more formal and like trying to do things better after […]" Id.

J.M.(J.S.) testified that he was searched a second time by Mr. Archuleta during that school year; a year where J.M.(J.S.) admits being written up over 40 or 50 different times for disciplinary offenses and searched more than 50 times. Defendants' UMF 84, 85. But with regard to this search, J.M.(J.S.) has not put forth sufficient evidence from the record from which a reasonable jury could find support for a Fourth Amendment violation. *Estate of Booker,* 745 F.3d at 411. J.M.(J.S) did not put forth any facts or details to show the circumstances leading up to the search or where he was located at school, or what had occurred just prior to the alleged search, or why he was searched on the second occasion. In response to a motion based on qualified immunity, J.M.(J.S.) is required to set forth sufficient facts to show a Fourth Amendment violation, but he has not done so. J.M.(J.S.) fails to identify and/or cite sufficient evidence from the record from which a reasonable jury could find support for a Fourth Amendment violation in that the search he describes was not justified at its inception. *Estate of Booker*, 745 F.3d at 411.

As for the scope of the alleged search, J.M.(J.S.) testified that Mr. Archuleta was doing the "leg to leg pat down, and then out of nowhere, I was grabbed between – between my legs. But this time it wasn't – it wasn't just – it wasn't just my left testicle. He essentially tried to grab everything." Plaintiffs' Exhibit K, J.M.(J.S.) Dep. 166:21-168:14. J.M.(J.S.) testified that the grab lasted for "a few seconds." Id, 171:11-172:2.

Mr. Archuleta is entitled to qualified immunity because J.M(J.S.) fails to marshal sufficient undisputed facts from the record to show that either of these two searches violated his Fourth Amendment rights. The October 4, 2019, search occurred at the direction of Mr. Baca when J.M.(J.S.) was in Principal Affentranger's office being

interviewed about a possible fight incident that school officials knew had occurred the previous day and knew that J.M.(J.S.) had been present.  School officials had well-founded concerns at that time of the potential for physical violence and possible gun violence, between two groups of students and the two groups of students – with J.M.(J.S.) present amongst them - had been observed on campus the day before in a possible fight situation.  Moreover, at the time of this search, school officials knew that J.M.(J.S.) had previously engaged in violence against a school aide while in middle school, when J.M.(J.S.) had been approximately five-foot-eight-inches tall and 200 pounds.[8]  School officials had a legitimate governmental interest in protecting students at school generally, in protecting themselves during the interaction with J.M.(J.S.) in Mr. Affentranger's office, and had duty to further investigate the previous day's school-yard incident.  J.M.(J.S.) admitted he was interviewed regarding the school-yard incident and that he received a five-day out of school suspension "for obstructing an investigation."  Plaintiffs' Exhibit B, Doc. 76-2, p. 7.

Under the totality of the circumstances, where concern about either a gun or violence on campus was high, a student pat down and pocket search for weapons was reasonable and justified at its inception and in scope.  Evidence of "a few seconds" of non-skin-to-skin, likely mistaken or incidental, contact with a student's genital area, which is incidental to a lawful pat-down search is not a Fourth Amendment violation.  Such contact is more consistent with what J.M.(J.S.) described as Mr. Archuleta being, "a little sloppy" with the search.  Defendants' Exhibit K, J.M.(J.S.) Dep. 160:23-161:18.

---

[8]  At the time of J.M.(J.S.)'s deposition in July of 2022, less than three years after the October 2019, search in Mr. Affentranger's office, J.M.(J.S.) testified that he was approximately 6'-4" or 6'-5" and 250 pounds.  Defendants' Ex. R, J.M.(J.S.) Dep. 81:7-11 [Doc. 84].

Additionally, J.M.(J.S.) has failed to show that it was a clearly established violation of the Fourth Amendment to make brief contact with a student's genitals during an otherwise constitutionally-legal pat down search and has failed to show that under circumstances where the relaxed standard of suspicion is applicable in a school setting, a campus security aide who is directed by a school administrator to search a student, violates the Fourth Amendment where there is no showing that it was objectively unreasonable to rely upon that directive. J.M.(J.S.) has not met his heavy, two-part burden and Mr. Archuleta is entitled to qualified immunity.

**F. Plaintiffs' Additional Facts Do Not Defeat Summary Judgment Based on Qualified Immunity.**

As the Supreme Court has noted, if a student is reasonably suspected of wrongdoing such as pill distribution, possession of drugs, or carrying a weapon, and the prohibited item can be secreted on the student's person or backpack, then a search of the student's outer clothing or backpack is also reasonable. *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. at 374, 129 S.Ct. 2633; *Holmes*, 830 F.3d at 1160; *Woods as Next Friend of T.W. v. Rio Rancho Public Schools*, 2019 WL 251734, *5 (D.N.M. January 17, 2019)(Johnson, J.)(searches of middle school students, including "full body pat downs," were reasonable in scope because limited to outer clothing, shoes, feet, and backpacks). Accordingly, a student pat-down that is justified at the inception of the search, logically and necessarily requires touching those areas of a student's body covered by clothing and is reasonable under Fourth Amendment law. Brief, non-skin-to-skin contact with the buttocks or genital area, which is incidental to a legally justified pat-down search is not a Fourth Amendment violation, either in general or in a school setting specifically. *See Golden*, 2012 WL 4327652, *6.

27

Plaintiffs rely upon *Safford Unified School District* in discussing how D.M., L.M. and J.M.(J.S.) may have felt as a result of experiencing the searches they describe. Plaintiffs' Opposition Brief, p. 26.  But the conduct they allege here was not a "strip search" and none of the Plaintiffs were ever required to expose any intimate or private areas of their bodies, as occurred in *Safford*.  The searches here, brief pat downs of their outer clothing and the reaching into pants pockets to determine if any Plaintiff was in possession of a weapon or contraband are not objectively unreasonable or unconstitutional and Plaintiffs have failed to meet their burden of showing that the facts as stated violate a clearly established right.

## G. No Clearly Established 4th Amendment Violations.

None of the cases relied upon by Plaintiffs, in any part of their response brief, show that the complained-of conduct of Mr. Archuleta violated clearly established law and none of Plaintiffs' facts regarding the searches, which have support in the record, show any kind of "egregious" or "obviously unconstitutional" conduct.   Plaintiffs' Opposition Brief, pp. 27-28 (*citing Rosales v. Bradshaw*, 72 F.4th 1145, 1147-48 (10th Cir. 2023)(off duty, out of uniform, sheriff's deputy not entitled to qualified immunity where his conduct in blocking a motorist in his own driveway, shouting, and pointing his gun at motorist, was egregious and obviously an unreasonable seizure in violation of the constitution).

## H. No Violation of Clearly Established Fourteenth Amendment Rights.

Plaintiffs' also claim that as "children attending public school," their Fourteenth Amendment rights were violated when they were subjected to "unreasonable warrantless search and seizure."   "Complaint" [Doc. 1] in *Mondragon* case, at ¶ 26; "Complaint"

[Doc. 1] in *Montoya* case, at ¶ 22; and "Complaint" [Doc. 1] in *Salazar* case, at ¶ 30. But Plaintiffs' response did not put forth any specific argument or authority in support of claims for illegal "search and seizure" under the Fourteenth Amendment. Accordingly, Plaintiffs have abandoned such claims and Mr. Archuleta is entitled to qualified immunity. *Martinez v. New Mexico Children Youth & Families Dept.*, 2004 WL 7337735, *10 (D.N.M. July 30, 2004)(Armijo, J.). Qualified immunity is also warranted because Plaintiffs failed to meet their two-part burden of establishing that Defendant's conduct violated their Fourteenth Amendment right to be free from unreasonable search and seizure and that the right was clearly established at the time of the alleged conduct. *Id*.

Instead of briefing a Fourteenth Amendment claim for illegal search and seizure, Plaintiffs' response asserts an entirely new constitutional claim for the violation of their Fourteenth Amendment substantive due process rights. Plaintiffs' Opposition Brief, pp. 29-34. But Plaintiffs' complaints are devoid of any allegations or language specifically identifying the Substantive Due Process Clause of the Fourteenth Amendment; there are no allegations regarding "substantive due process rights," or "the right to bodily integrity," or conduct that is "shocking to the conscience." *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 128 S.Ct. 1061 (1992)(substantive due process claim requires proof of action shocking to the conscience). Further, Plaintiffs have not moved to amend their complaints to add a substantive due process claim. Plaintiffs cannot now insert a new constitutional claim in their response to a motion for summary judgment. *See Glaxiola v. Hart*, 2010 WL 11590709, *3 (D.N.M. January 28, 2010)(Johnson,

J.)(even if Court were to overlook backdoor tactics, plaintiff still has not alleged any facts

that give rise to a substantive due process violation).  Importantly,

> "[I]dentification of the specific constitutional provision at issue is
> critical to a complaint brought under 42 U.S.C. § 1983 because that
> statute is not an independent source of substantive rights, but rather a
> mechanism for enforcing federal rights conferred elsewhere.  Thus, the
> analysis of any claim brought under 42 U.S.C. § 1983 necessarily
> begins by identifying the specific constitutional right which
> Defendants are alleged to have violated. *See Graham v. Connor*, 490
> U.S. 386, 393-94 (1989); *Reno v. Flores*, 507 U.S. 292, 302 (1993).
> Absent such specific identification of the constitutional right at issue in
> a party's pleading, a claim under 42 U.S.C. § 1983 fails as a matter of
> law, and Defendants cannot reasonably be expected to defend against
> such an unspecified claim."

*Martinzez v. New Mexico Children Youth & Families Dept.*, 2004 WL 7337735, *10.

Plaintiffs' complaints fail to identify or allege substantive due process rights in their

complaint and this claim fails as a matter of law.

Even if Plaintiffs had properly asserted a substantive due process claim for

violation of bodily integrity, Mr. Archuleta remains entitled to summary judgment

because the facts, that find support in the record, do not show a violation of the

Fourteenth Amendment and because Plaintiffs do not show that the right they seek to

assert was clearly established at the time of the alleged conduct.

### 1. **Plaintiffs Do Not Show the Deprivation of Substantive Due Process Rights**

Plaintiffs do not show any conduct that "shocks the conscience."  *Cnty. of

Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708 (1998)).  The Supreme Court

has stated that what shocks the conscience "in one environment may not be so patently

egregious in another, and our concern with preserving the constitutional proportions of

substantive due process demands an exact analysis of circumstances before an abuse of

power is condemned as conscience shocking."  *Id*, 523 U.S. at 850, 118 S.Ct. 1798, 1718.

The circumstances here demonstrate that Mr. Archuleta was acting as a campus security aide at V. Cleveland High School whose "essential job responsibilities" included, among other things, assisting in the enforcement of school rules and regulations and assisting with searches of students. Defendants' UMF 7, 8. In each instance where Plaintiffs contend they were improperly searched, Mr. Archuleta was acting as a campus security aide when conducting pat down searches. Defendants' Ex. J, D.M. Dep. 43:8-19, 81:18-25, 83:21-84:21; Defendants; Ex. O, L.M. Dep. 63:18-64:25, 68:5-16, 116:4-10; Defendants' Ex. U, L.M. Dep. 152:8-153:8 [76-11]; Defendants' Ex. K, J.M.(J.S.) Dep. 157:18-24, 158:4-7, 159:24-160:22, 166:21-168:14. In these circumstances, Mr. Archuleta was legally permitted to conduct the pat-down searches, which required physical contact with the student and the student's outer clothing. *See Williams v. Berney*, 519 F.3d 1216, 1222 (10th Cir. 2008)(school children are in environment "where the state has some lawful control over their liberty"); *Holmes*, 830 F.3d 1123, 1159 (search of student justified at inception also justified as to student's outer clothing).

Incidental, non-skin-to-skin, over-the-clothing contact by a male campus security aide with male students' buttocks or genitals during a legally-justified school pat down search, without more, is not conscience shocking conduct and is not a violation of the Fourteenth Amendment. *See Abeyta by & Through Martinez v. Chama Valley Ind. Sch. Dist. No. 19,* 77 F.3d 1253, 1257-58 (10th Cir. 1996); *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)(must show "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking"). "Meeting this standard is difficult, as precedent in this Circuit has created a 'sky-high bar' to demonstrating conduct which shocks the conscience." *Valdez as next friend of K.D. v. Salipan*, 2022 WL 774064, *3

(D.N.M. March 14, 2022)(Johnson, J.); *N.F. on behalf of M.F. v. Alb. Pub. Schs.*, 2015 WL 13667294, *2 (January 30, 2015)(Yarbrough, M.J.)("This is a rigorous standard."). None of the Plaintiffs' facts that find support in the record show conduct that shocks the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. at 846, 118 S.Ct. 1708.

Notably, Plaintiffs alleged that Mr. Archuleta searched them "precisely because he wanted to touch [Plaintiffs'] genitals," to "seek sexual gratification." See "Complaint" [Doc. 1] in *Mondragon* case, at ¶¶ 18, 29, 32; "Complaint" [Doc. 1] in *Montoya* case, at ¶¶ 14, 25, 28; and "Complaint" [Doc. 1] in *Salazar* case, at ¶¶ 16, 34, 37. But there are no facts in the record to show that any of the touching described was ever of a sexual nature and no facts to show that Mr. Archuleta was ever aroused. Conversely, the facts show that any touching of Plaintiff's buttocks or genitals was not skin-to-skin and was brief; lasting at most for "a few" or for three to five seconds. The facts also show that in almost all instances, Mr. Archuleta was *directed* by an assistant principal to conduct the pat-down searches and the searches occurred in the presence of the assistant principal and another security guard or school administrator. These undisputed facts, showing that Mr. Archuleta did not independently initiate the alleged searches does not show circumstances or conduct of an individual who conducted pat-down searches "precisely because" he wanted to touch student genitals to "seek sexual gratification."

Plaintiffs fail to show that Mr. Archuleta's pat-down searches as described constitute conduct that is conscience shocking under the Substantive Due Process Clause of the 14th Amendment. Plaintiffs fail to satisfy the first prong of the qualified immunity analysis and Mr. Archuleta is entitled to summary judgment.

**2. Plaintiffs Do Not Show the Law Was Clearly Established.**

Additionally, Plaintiffs have not shown that the right they seek to assert was clearly established. None of the cases cited to and relied upon by Plaintiffs show that it was clearly established that a school official performing a legally-justified pat down search of outer clothing and pockets would be on notice that brief, incidental or accidental contact with a student's thighs, buttocks or genitals would be a violation of the substantive due process right to bodily integrity. *See Garrity v. Governance Bd. of Carinos Charter School,* 2020 WL 5074385 (D.N.M. August 27, 2020)(Parker, J.)(school chancellor misconduct included grabbing student buttocks, caressing, hugging and kissing students, sticking thumb in student's mouth); *M.S. v. Belen Consolidated Sch. Dist.,* 275 F.Supp.3d 1276 (D.N.M. August 14, 2017)(Armijo, J.)(school resource officer lured student off campus and sexually assaulted her); *S.M. v. Bloomfield Sch. Dist.,* 2017 WL 3159166 (D.N.M. June 12, 2017)(Yarbrough, M.J.)(teacher brushed hand across student's breasts, aggressively touched body and breasts with his hands, threatened to pinch student's breasts); *N.F. on behalf of M.F. v. Alb. Pub. Schs.,* 2015 WL 13667294 (school instructor stared at student's buttocks, attempted to have student sit on his lap, slapped student on stomach, upper thighs, and buttocks, intentionally slid his hand across student's lap and genitals). None of the conduct alleged in the cases put forth by Plaintiffs involved facts concerning contact that occurred during a legally-justified student pat-down search in a school setting.

## VI. CONCLUSION

Plaintiffs fail to meet their heavy two-part qualified immunity burden and Mr. Archuleta is entitled to summary judgment. Plaintiffs fail to set forth sufficient

undisputed facts from the record to show the violation of either the Fourth or Fourteenth Amendments, and further fail to show that the rights they claim were violated were clearly established at the time of the alleged conduct.  There is no clearly established law showing that school officials conducting legally justified school searches, including pat down and pocket searches, who make brief incidental or accidental, non-skin-to-skin contact with a student's thighs, buttocks, or genitals, are violative of either the Fourth or Fourteenth Amendments.

WHEREFORE, Defendant George Archuleta respectfully requests the Court grant his Motion for Summary Judgment on the Basis of Qualified Immunity on Count I and dismiss all of Plaintiffs' claims against him in Count I with prejudice, and requests an award of fees and costs as may be allowed by law; and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**QUIÑONES LAW FIRM LLC**

By:  Electronically Filed /s/ Carlos M. Quiñones
        CARLOS M. QUIÑONES, ESQ.
        1223 S. Saint Francis Dr., Ste. C
        Santa Fe, NM  87505
        (505) 992-1515    (505) 992-1714 (fax)
        *Attorney for Defendant George Archuleta*

## CERTIFICATE OF SERVICE

It is hereby certified that undersigned counsel filed the foregoing electronically through the CM/ECF system on May 22, 2024, which caused all counsel to be served by electronic means:

 Electronically Filed /s/ Carlos M. Quiñones
CARLOS M. QUIÑONES