# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARK MONDRAGON, o.b.o. D.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**           **Case No. 1:21-cv-00427 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual and official capacity,**

  **Defendants.**

**and**

**SARAH MONTOYA, o.b.o L.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**           **Case No. 1:21-cv-00648 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION and**
**GEORGE ARCHULETA, in his individual capacity,**

  **Defendants.**

**and**

**ANGELA SALAZAR, o.b.o J.M.,**
**a minor child,**

  **Plaintiffs,**

**vs.**           **Case No. 1:21-cv-00751 KK/JMR**

**RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION, and**
**GEORGE ARCHULETA, in his individual capacity, and**
**JOHN DOE # 1, in his individual capacity,**

  **Defendants.**

**GEORGE ARCHULETA AND
RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION'S
REPLY IN SUPPORT OF SUMMARY JUDGMENT ON THE BASIS
OF GOVERNMENTAL IMMUNITY**

COMES NOW Defendant George Archuleta (hereinafter "Defendant Archuleta"), by and through counsel, Quiñones Law Firm LLC (Carlos M. Quiñones, Esq.), and Defendant Rio Rancho Public Schools Board of Education ("Defendant Rio Rancho Public Schools"), by and through counsel, Jerry A. Walz and Alisha Walz, Walz and Associates, P.C., and pursuant to Fed.R.Civ.P. 56 and D.N.M. LR-Civ. 56.1, hereby submit this reply brief in support of <u>Defendants Archuleta's and Rio Rancho Public Schools Board of Education's Motion for Summary Judgment on the Basis of Governmental Immunity</u>, filed on September 11, 2023. [Doc. 67] On that same date, Defendant Archuleta and Defendant Rio Rancho Public Schools filed <u>Defendants' Joint Statement of Undisputed Material Facts</u>. [Doc. 65] Plaintiffs filed their joint response to Defendants' Joint Statement of Undisputed Facts on January 26, 2024. [Doc. 76]

On April 5, 2024, Plaintiffs filed a pleading entitled "<u>Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on the Basis of Governmental Immunity</u>." ("<u>Plaintiffs' Opposition Brief</u>") [Doc. 81]. Although Plaintiffs' pleading purports to be in opposition to Defendants Archuleta's and Rio Rancho Public School's motion for summary judgment based on governmental immunity under the New Mexico Tort Claims Act, Plaintiffs state that the pleading "responds as follows to Defendant George Archuleta's Motion for Summary Judgment on the Basis of Qualified Immunity (Doc. No. 66, "Def. Mot." or "Motion")." <u>Plaintiffs' Opposition Brief</u>, p. 2.

Defendants reply to Plaintiffs' pleading filed on April 5, 2024, as follows:

I.    **REPLY TO PLAINTIFFS' STATEMENT OF FACTS**

Defendants Archuleta and Rio Rancho Public Schools object to the majority of Plaintiffs' responses to statements of fact for noncompliance with D.N.M. LR-Civ. 56.1(b).  *See* <u>Defendants' Joint Reply to Plaintiffs' Joint Statement of Undisputed Facts</u>, filed May 22, 2024 [Doc. 84].  Plaintiffs repeatedly fail to refer with particularity to those portions of the record upon which they rely, they refer to only their own lettered assertions of fact instead of to the record, and in many instances they respond to Defendants' Joint Undisputed Material Facts by intermixing and setting out multiple additional facts, without lettering each additional fact. D.N.M. LR-Civ. 56.1(b)("each additional fact must be lettered");  *Wells v. Hi Country Auto Group*, 2014 WL 12623030, *2 (D.N.M. Jan. 8, 2014)(Johnson, J.)("additional facts should have been put forth in a separate portion of Plaintiff's response instead of intermixed with Plaintiff's response to the [UMFs]").  Where a non-movant fails to properly address or support the opposing party's assertion of facts, the Court has a variety of options, including considering the fact undisputed.  Fed.R.Civ.P. 56(e); *Wells,* * 6 n. 7 (D.N.M. Jan. 8, 2014)(Johnson, J.)(Court has authority to deem facts undisputed for failure to follow the requirements of Fed. R. Civ. P. 56 and for violation of procedure set forth in N.M.M. LR-Civ. 56.1(b)); *Amparan v. Demir*, 234 F.Supp.3d 1110, 1114 (D.N.M 2017)(court would not consider Plaintiff's additional facts set out in response to Defendant's UMFs).

## II.    REPLY TO PLAINTIFFS' "OVERVIEW"[1]

D.M., L.M., and J.M.(J.S.)[2] allege that campus security aide George Archuleta was a "law enforcement officer" as that term is defined under the New Mexico Tort Claims Act ("NMTCA") and that he committed battery on Plaintiffs when he allegedly repeatedly molested and groped them during pat-down searches while they were students at V. Sue Cleveland High School.  *See* "Complaint" [Doc. 1] in *Mondragon* case, at ¶¶ 37, 38; "Complaint" [Doc. 1] in *Montoya* case, at ¶¶ 33, 34; and "Complaint" [Doc. 1] in *Salazar* case, at ¶¶ 42, 43.  Plaintiffs bring three identical claims under the NMTCA:  In Counts II and III of their respective Complaints, Plaintiffs assert claims pursuant to Section 41-4-12 and in Count IV of their respective Complaints, Plaintiffs assert claims pursuant to Section 41-4-6. (*See* Counts II, III, and IV of parallel Complaints).

In their response briefing, Plaintiffs are repeatedly described as "children" and claim that Mr. Archuleta improperly searched them by "fondling, grabbing and rubbing their genitals." Plaintiffs' Opposition Brief, p. 2.  But Plaintiffs' characterizations and assertions in their briefing are not supported by any facts in the record.  The record shows that at the time of the alleged pat-down searches, Plaintiffs were all male high school students in either their freshman or sophomore years.  And while Plaintiffs deny that that were ever "affiliated with any high school gangs or groups,"[3] the undisputed facts show otherwise: Plaintiffs were friends with each other and all three were in what J.M.(J.S.)

---

[1]   Plaintiffs purport to present what they call an "overview," by incorporating "by reference Section II of their Response in Opposition to Summary Judgment on the Basis of Qualified Immunity (Doc. 77) at pages 2-4." Plaintiffs' Opposition Brief, p. 2.

[2]   Plaintiffs confusingly refer to student J.M. as "J.S." numerous times, despite having filed suit on behalf of a Plaintiff specifically identified as "J.M."  In an effort to avoid further confusion, Defendants refer to this Plaintiff as "J.M.(J.S.)."

[3]   *See* Plaintiffs' Joint Statement of Undisputed Facts, [Doc. 76], pp. 7, 28.

agreed was a "group that [they] were affiliated with." Defendants' Ex. R, Dep. J.M.(J.S.), 66:4-21. Further, it is undisputed that all three students were well-known to Rio Rancho school administrators: J.M.(J.S.) was expelled from middle school as a 5"-8', 200-pound 7th or 8th grader, for striking a female school aide, and in the first few weeks of their freshman year, L.M. was caught and disciplined for smoking an e-cigarette on campus, and D.M. was known by school administrators to have been physically threatened by another student. Defendants' UMF 73; Plaintiffs' Exhibit B, Doc. 76-2, pp. 11-13; Defendants' Ex. R, J.M.(J.S.) Dep. 78:9-82:7; Defendants' Ex. A, Baca Dep. 56:16-57:22. It is also undisputed that in September of 2018, school administrators knew of an Instagram group chat involving D.M. where a handgun and the potential for physical violence were discussed, and administrators had been informed by a student in that chat that "a lot of boys were carrying guns at the time." Defendants' Ex. T, Baca Dep. 68:12-69:21. Regarding this group chat, D.M. stated that his "friend group didn't like this other friend group […] that was talking all kinds of crap to us like all the time." Defendants' Ex. S, D.M. Dep. 145:6-146:5. Finally, it is undisputed that during his freshman and sophomore years, J.M.(J.S.) was regularly threatened with physical violence by other students, who were considered by school administrators to be "a rival group of students," and J.M.(J.S.) was written up for disciplinary offenses more than 40 or 50 times during his sophomore year. Defendants' Ex. R, J.M.(J.S.) Dep. 13:10-14:15; Defendants' UMF 84, 85.

Plaintiffs were not "children" as characterized in their brief. While they may have been legal minors at the time, all three Plaintiffs were young men known by school officials to be "affiliated" with a "friend group" that discussed fighting, handguns, and

potential violence and all three were objectively reasonably suspected of engaging in serious, dangerous activity – potentially involving the possession of handguns – that threatened school safety at V. Sue Cleveland High School.

Mr. Archuleta denies that he ever groped, fondled, grabbed or rubbed D.M., L.M. or J.M.(J.S). But Mr. Archuleta's denial and Plaintiffs' assertion that "[t]his case is really Mr. Archuleta's word against the Plaintiffs' word," are not relevant to the disposition of Defendants' motion for summary judgment because the Court will only consider uncontested facts, viewing those facts in the light most favorable to Plaintiffs. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774-75 (2007)(*quoting U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1062)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Johnson v. Weld Cnty., Colo.*, 594 1202, 1210 (10th Cir. 2010).

Plaintiffs argue that Mr. Archuleta's "word is meaningless" and "should be disregarded" by the Court, claiming that "[p]recedent exists for disregarding a Party's statement of facts that are blatantly contradicted by the record to the point a reasonable jury could not believe the party." *See* Plaintiffs' Opposition Brief, (incorporated by reference) [Doc. 77] at p. 4 (*citing Scott*, 550 U.S. at 380, 127 S.Ct. 1769, 1776). But Plaintiffs' argument and the *Scott v. Harris* decision, a qualified immunity case, are not applicable here. Furthermore, Plaintiffs' challenge to Mr. Archuleta's credibility misses the mark with regard to the specifics concerning the searches in question and is not relevant to the issues presented by Defendants' motion for summary judgment on Counts II, III, and IV which relies only upon each Plaintiff's "version of events" regarding the details of the searches in question.

Plaintiffs' focus on Mr. Archuleta's credibility and their unsupported, conclusory, and self-serving assertions in their response brief do not create an issue of fact for trial and are not dispositive. *See Tran v. Sonic Indus. Serv., Inc.*, 490 Fed.Appx. 115, 118 (10th Cir. 2012)(unpublished)(to oppose summary judgment, plaintiffs "must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of material fact"). The undisputed facts in the record show that governmental immunity has not been waived under either Section 41-4-12 or 41-4-6 and Defendants are entitled to summary judgment on Counts II, III, and IV as a matter of law.

### III.    SUMMARY JUDGMENT STANDARD

To survive summary judgment on their claims in Counts II, III, and IV Plaintiffs must come forward with sufficient facts to show that a genuine issue of material fact exists and those facts "must be supported by evidence, such as depositions, documents, and affidavits." Plaintiffs' Opposition Brief, (Doc. 77), p. 4 (citing Fed.R.Civ.P. 56(c)(1)(A)). "On a motion for summary judgment, the issue is 'not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Turner v. City of Portales*, 1999 WL 35808310, *1 (D.N.M. November 18, 1999)(*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986)). "[A] jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Id*, (*quoting Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995)).

As is demonstrated below, Plaintiffs fail to put forth sufficient facts, that find support in the record, on essential elements of their tort claims such that a fair-minded

jury could return a verdict for the Plaintiffs.  Summary judgment should be granted in

favor of Defendants as a matter of law on Counts II, III, and IV.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986).

### IV.    REPLY TO PLAINTIFFS' "ARGUMENT ON COUNT II"

**A.  Mr. Archuleta is not a "Law Enforcement Officer" under the New Mexico Tort Claims Act and Plaintiffs cannot show waiver of Governmental Immunity under NMSA § 41-4-12.**

It is undisputed that all of the alleged searches of Plaintiffs occurred prior to

March 14, 2020, when Mr. Archuleta resigned from his position as a campus security

aide.  Defendants' UMF 7.  Summary judgment should be granted as a matter of law on

the tort claims in Count II because the undisputed facts and the law show that at the time

of the alleged searches, Mr. Archuleta was not a "law enforcement officer" under the

applicable version of Section 41-4-12 of the NMTCA.  Defendants' Motion, (Doc. 67),

pp. 6-11.  Plaintiffs contend that the 2020 amendments to Section 41-4-12, which took

effect after Mr. Archuleta's resignation, are applicable to the facts of this case because

they argue, "the version of the statute in effect at the time a complaint is filed rather than

when a tort occurs is the governing statute."  Plaintiffs' Opposition Brief, p. 3.  Plaintiffs'

understanding and the legal effect of the 2020 amendments to Section 41-4-12 is

incorrect.

### 2020 Amendments to Section 41-4-12 Do Not Apply to Plaintiffs' Tort Claims

Section 41-4-12 was amended twice in 2020, both taking effect after March of

2020.  Effective May 20, 2020, Section 41-4-12 was amended to include language

granting waiver of immunity for "failure to comply with duties established pursuant to

statute or law."  *See Garcia v. Martinez*, 2020 WL 2615533, *1 (D.N.M. May 22,

2020)(Parker, J.).    Then, on July 8, 2020, the legislature amended Section 41-4-12 effective September 20, 2020, adding language that provides: "law enforcement officer means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing, a crime, whether that duty extends to all crimes or is limited to specific crimes."  2020 New Mexico Laws 1ˢᵗ Sp. Sess. Ch. 7 (S.B. 8)(emphasis supplied); *Ortega v. Edgman*, 2022 WL 796374, *7  (D.N.M. March 16, 2022)(Brack, J.)(September 20, 2020, version of Section 41-4-12 contains "or convicted of committing a crime" language).

The general rule in New Mexico is that "statutes apply prospectively unless the Legislature manifests clear intent to the contrary."  *Garcia v. Martinez*, 2020 WL 2615533, *2 (*quoting Wood v. State of New Mexico Educ. Ret. Bd*., 2011-NMSC-012, ¶ 21, 149 N.M. 455, 250 P.3d 881); *Wilson v. N.M. Lumber & Timber Co*., 42 N.M. 438, 439, 81 P.2d 61, 62 (1938)("The general rule is that statutes, except those dealing with remedial procedure, are to be construed as prospective rather than retrospective unless there is a clear legislative intention to the contrary.").  "Where the language of a statute 'does not specifically evince a legislative intent that the act should be applied retrospectively,' the law must be applied prospectively."  *Garcia v. Martinez*, 2020 WL 2615533, *2 (*quoting City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque*, 1991-NMCA-015, ¶ 32, 111 N.M. 608, 808 P.2d 58).

"[T]he adoption of a statutory amendment 'is presumptive evidence of a legislative intention to change existing law.'" *Id*, (*quoting Wood*, 2011-NMCA-020, ¶ 21 (*quoting Rutherford v. Chaves County*, 2003-NMSC-010, ¶ 21, 133 N.M. 756, 69 P.3d 1199)).    The presumption that a statute is prospective is "premised upon policy

9

considerations that individuals, in planning and conducting their business, should be able to rely with reasonable certainty on existing laws." *Garcia*, (*quoting City of Albuquerque*, 1991-NMCA-015, ¶ 32). Finally, "[w]hen a statute contains language which is clear and unambiguous, [a court] must give effect to that language and refrain from any further statutory interpretation." *Id*, at \*4 (*quoting State v. Chavez*, 2019-NMCA-068, ¶ 10, 451 P.3d 115, *cert. denied* (Sept. 6, 2019)).

In multiple recent New Mexico and federal court decisions, the courts have applied the 2020 amendments to Section 41-4-12 prospectively. For example:

- In a Court of Appeals of New Mexico decision, the Court acknowledged that the New Mexico Legislature amended Section 41-4-12 in 2020, and stated, "[w]e apply the prior version of the statute that was in effect when the conduct underlying Plaintiff's claim occurred in 2012." *Sanders v. New Mexico Corrections Dept*., 2023-NMCA-030, n. 1, 528 P.3d 716 (N.M.C.A. November 28, 2022).

- Similarly, in *Enriquez v. New Mexico Department of Corrections*, 2022 WL 17413723, \*2 (N.M.C.A. December 5, 2022), the Court affirmed dismissal of the plaintiff's Section 41-4-12 claim "because at the time of the alleged incident, the Corrections Officers were not law enforcement officers […]." *Id*. The Court acknowledged that the legislature had amended Section 41-4-12 in 2020, expanding the definition of "law enforcement officer" to include "a public officer or employee vested by law with the power to […] detain persons suspected of or convicted of committing a crime." *Id*, n. 2 (emphasis in original). However,

because the incident at issue occurred prior to the 2020 amendments, the Court stated that "those amendments do not apply." *Id*, n. 1.

- In *Hernandez v. Fitzgerald*, 840 Fed.Appx. 333, n. 3 (10th Cir. 2020), the Tenth Circuit rejected the argument that the May 2020 amendments applied retroactively. The Court stated that the New Mexico Tort Claims Act "is a remedial act which applies only prospectively, in the absence of expressed legislative intent to make it retroactive." *Hernandez*, 840 Fed.Appx. 333, n. 3 (*quoting Methola v. Eddy Cnty.*, 95 N.M. 329, 622 P.2d 234, 237 (1980)). The Court specifically noted that the appellant failed "to point to any evidence showing that the legislature intended the amendment to be retroactive…" *Id.*

- In *Garcia v. Martinez*, where the May 20, 2020, amendments were specifically at issue in a motion to reconsider, the plaintiff argued that "the context of the 2020 Amendments evinces an intent to apply the new waiver of immunity to pending cases." *Garcia*, 2020 WL 2615533, *3. Judge Parker disagreed, stating that the Plaintiff's arguments "run counter to the presumption against retroactivity," and that Plaintiff had not shown that the amendments impair vested rights acquired under prior law or require new obligations, impose new duties, or affix new disabilities to past transactions. *Id*.

- In *Ortega v. Edgman*, 2022 WL 796374 (D.N.M. March 16, 2022)(Brack J.), the plaintiff brought suit under Section 41-4-12 for claims arising from events that occurred in 2018 and 2019, and argued that the September 2020 amendments applied retroactively. *Ortega*, at *1, 5-6. But Judge Brack agreed with the analysis and result in *Garcia v. Martinez*, concluding that the September 2020

amendments applied prospectively only and dismissed the claims brought under Section 41-4-12.

- In *Trujillo v. Central New Mexico Correctional Facility*, 2021 WL 3674782 (D.N.M. August 19, 2021)(Yarbrough, J.), the court dismissed tort claims against corrections department officers finding that, "at the time of the relevant events" in 2018, the defendants "were not law enforcement officers" under Section 41-4-12 and that the amendments should not be applied retroactively. *Trujillo,* at *1, 2 (nothing in the "amendments indicates the statute is meant to operate retroactively"). *Id*, at 10. In dismissing the tort claims, Judge Yarbrough noted that the conduct at issue had occurred in 2018, and that "[a]pplying amendments passed two years later would clearly be retroactive, *regardless of when Plaintiff filed this lawsuit* or when Defendants removed it to federal court." *Id* (emphasis supplied).

As noted above, the 2020 amendments to Section 41-4-12 did not become effective until *after* the conduct underlying Plaintiffs' tort claims, and there is nothing in the 2020 amendments to Section 41-4-12 to "specifically evince a legislative intent that the [amendments] should be applied retrospectively." *City of Albuquerque*, 1991-NMCA-015, ¶ 32. Further, Plaintiff fails to argue or point to any evidence showing that the legislature intended the amendments to be retroactive. Conversely, the legislative history of the 2020 amendments shows that language pertaining to "retroactive application" was originally included in early drafts, but was deleted. The history also shows that the legislature did not intend for the September 2020 amendments to apply to cases then pending or on appeal. Specifically, the following draft language in SB 8 was deleted:

"The provisions of this section apply to all cases pending or on appeal on or after May 20, 2020." *Id.* And the legislative history shows that the amendments were not to take effect immediately upon enactment. *Id.*

Plaintiffs rely upon a single federal court decision for the proposition that "the applicable statute is the version in effect" when they filed their lawsuit. Plaintiffs' Opposition Brief, (Doc. 81), p. 3 (*citing Bradshaw v. Mgmt. & Training Corp.,* 1:22-cv-00139-MIS-LF, 2023 WL 5934397, at \*13 (D.N.M. Sept. 12, 2023)). However, Plaintiffs' reliance upon the *Bradshaw* decision is misplaced and does not support their tort claims under Section 41-4-12.

Defendants respectfully point out that the *Bradshaw* decision incorrectly describes the legislative history of Section 41-4-12 and incorrectly applied *Methola v. Eddy Cnty.*, 1980-NMSC-145, ¶ 14, 95 N.M. 329, 622 P.2d 234, by merely equating the date of filing a lawsuit with the date when a "suit became pending." *Bradshaw*, 2023 WL 5934397, \*13. The 1980 *Methola* decision, and the cases upon which it relies, show that "[t]he filing of a complaint does not create a 'pending case'. It commences a civil action," *Rutherford v. Buhler*, 1976-NMCA-083, ¶ 20, 89 N.M. 594, 555 P.2d 715, and that the definition of "pending case" varies with the construction of each particular statute in question. *Stockard v. Hamilton*, 25 N.M. 240, 180 P. 294 (1919). "[I]f the substance of the previous statute is continued in the new one, it will be regarded as an extension of the old statute, and prior rights although not vested or pending in a case will not abate." *Rodgers v. City of Loving*, 1977-NMCA-132, ¶ 13, 91 N.M. 306, 573 P.2d 240. *Bradshaw* failed to conduct any assessment as to whether the "substance" of the pre-2020

13

version of Section 41-4-12 "is continued" in the amended provisions and was therefore wrongly decided.

Plaintiffs acknowledge that the 2020 amendments constitute "a significant change" to the definition of law enforcement officer "by adding the new definition." Plaintiffs' Opposition Brief, p. 4, 5.  Accordingly, such amendments will potentially impose new liability upon individuals that did not exist prior to 2020.  *Garcia v. Martinez*, at 3 (prospective application premised on "policy considerations that individuals, in planning and conducting their business, should be able to rely with reasonable certainty on existing laws").  Changing existing statutory law by abolishing governmental immunity for certain individuals is not a simple continuation of the "substance" of the pre-2020 version of Section 41-4-12.

The weight of decisional law and the legislative history of the 2020 amendments to Section 41-4-12 show that the amendments are to be applied prospectively.  Mr. Archuleta was not a law enforcement officer as that term is defined under the applicable pre-2020 version of Section 41-4-12 and Defendants are entitled to summary judgment on Plaintiffs' Count II.

**B. Mr. Archuleta is not a "Law Enforcement Officer" under the amended version of Section 41-4-12 because the undisputed material facts show that he was not "vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of committing a crime."**

Even if the 2020 amendments to Section 41-4-12 were to apply to this case, which is denied, Defendants are still entitled to summary judgment because the undisputed material facts show that Mr. Archuleta, as a campus security aide at V. Sue Cleveland High School, was not "vested by law with the power to maintain order, to make arrests

for crime or to detain persons suspected of committing a crime." See N.M.S.A. 1978, §
41-4-12.

"The NMTCA's definition of law enforcement officers is not an expansive one;"
"law enforcement officer" is a "public officer or employee vested by law with the power
to maintain order, to make arrests for crime or to detain persons suspected of or convicted
of committing a crime, whether that duty extends to all crimes or is limited to specific
crimes." *N.M. Horsemen's Assoc. v. Bregman*, 639 F.Supp.3d 1209, 1213 (D.N.M.
November 4, 2022)(*quoting* N.M.S.A. § 41-4-12). Without citation to any authority,
Plaintiffs argue that "[u]nder the new definition of NMSA 1978, § 41-4-12 what matters
is the ability of an individual to engage in the functions described rather than the
obligation to carry out the functions." Plaintiffs' Opposition Brief, p. 5. Plaintiffs are
wrong.

The clear and unambiguous language of the current version of Section 41-4-12
shows that a law enforcement officer includes only "a public officer or employee ***vested
by law with the power*** to maintain order, to make arrests for crime or to detain persons
suspected of or convicted of committing a crime [...]." Section 41-4-12 (emphasis
supplied). The undisputed material facts show that Mr. Archuleta, as a campus security
aide, was never *vested by law* with the power to maintain order or to detain individuals
suspected of committing crimes, as Plaintiffs argue.

The undisputed facts are that Mr. Archuleta had specific "job responsibilities" as
listed in his job description as a "campus security aide," but those responsibilities do not
include maintaining order. Defendants' UMF 7, 8. Plaintiffs state that Mr. Archuleta
performed "functions" including maintaining order, but Plaintiffs fail to put forth any

facts supported by the record. Plaintiffs' Opposition Brief, p. 6.[4]  There simply are no facts in the record to show that Mr. Archuleta was ever vested by law with the power to maintain order as those words are used in Section 41-4-12.  *See N.M. Horsemen's Assoc.*, 639 F.Supp.3d 1209, 1214 (maintaining order at racetracks, investigating racetrack compliance with law, and employing staff with basic law enforcement training is not sufficient to meet definition of law enforcement officer).

At pp. 6-7 of their response brief, Plaintiffs repeatedly purport to cite to the deposition testimony of school administrators Mr. Baca, Mr. Mangin, and Mr. Affentranger, but none of the statements made by Plaintiffs and attributed to these administrators are supported by the testimony in the record.[5]  For example, Plaintiffs state that "Principal Milan Baca stated in his deposition that security and student discipline go 'hand in hand,'" but the record does not support this statement.  Plaintiffs'

---

[4]  In support of this statement, Plaintiffs cite to their additional fact "KKKK."  Plaintiffs' Opposition Brief, p. 6.  Defendants objected to Plaintiffs' "KKKK" on the grounds that it is a violation of D.N.M. LR-Civ. 56.1(b) and that "none of the testimony relied-upon by Plaintiffs, as cited to the record, support the assertion that "One of the *primary purposes of security guards* working at V. Sue Cleveland Highschool was to maintain order and discipline in the school."  Doc. 76, p. 28 (emphasis supplied).  None of the individuals identified in PAF KKKK were ever questioned about, and never testified as to, the "primary purposes of security guards."  Defendants' Joint Reply to Plaintiffs' Joint Statement of Undisputed Facts, filed May 22, 2024 [Doc. 84].

[5]  Mr. Mangin testified as to the ways vaping is a security issue, then described a typical day at school for Mr. Mangin, and finally testified regarding whether security guards are trained "how to enter a bathroom and make sure it's safe." (Mangin Dep. 11:10-13:5; 16:7-23).  Mr. Baca was asked about "working with security" and "handling student discipline," and testified about "serious examples which would involve security," and about whether he directs searches of students for contraband.  (Baca Dep. 11:4-23; 12:22-13:8).  Mr. Affentranger testified generally about how he works with the security personnel at his school, and what his personal role is.  (Affentranger Dep. 16:10-17:22).

Opposition Brief, p. 6.  The record shows that after testifying regarding his specific job

duties as an assistant principal, Mr. Baca was then asked:

> Q.  Okay.  You mentioned working with security and also
> mentioned handling student discipline.  Are those two things,
> you know, that go hand-in-hand or are they kind of separate
> concepts.
>
> A.  They can go hand-in-hand depending on the severity of the
> infraction that a student is accused of committing.  Plaintiffs'
> Ex. C, (Doc. 76-3) Baca Dep. 11:4-10.

Mr. Baca's testimony may show that *his work* with campus security aides and *his work*

handling student discipline may go hand-in-hand, but it does not show that school

"security and student discipline go hand-in-hand" and certainly does not show that

campus security aides are "vested by law with the power to maintain order."

Additionally, there are no facts in the record to show that Mr. Mangin "testified

that the daily routine of [campus security aides] is *geared towards* enforcing order in the

school […]."  Plaintiffs' Opposition Brief, p. 6 (emphasis supplied); *see* Plaintiffs' Ex. A,

Mangin Dep. 11:10-13:5, 16:7-23.   Lastly, Principal Affentranger's testimony that "his

work in conjunction with [campus security aides] is 'to maintain order'" at school, does

not show that campus security aides are "vested by law with the power to maintain

order."  Repeated, unsupported assertions do not create an issue of fact for trial.  *Sonic*

*Indus. Serv., Inc.*, 490 Fed.Appx. 115, at 118 (plaintiffs "must do more than provide their

subjective interpretation of the evidence, they must marshal admissible evidence of

material fact").

Similarly, undisputed facts in the record show that Mr. Archuleta was not vested

by law with the power to detain individuals suspected of committing a crime.  Mr.

Mangin never testified that "the purpose of [campus security aides] at V. Sue Cleveland

is to detect if students are engaged in 'illegal activity,'" as asserted by Plaintiffs. Plaintiffs' Opposition Brief, p. 7; *see* Plaintiffs' Ex. A, Mangin Dep. 17:7-20. Further, there is nothing in the cited school policies to show that campus security aides were "vested by law with the power" to detain persons suspected of committing a crime under Section 41-4-12.

The undisputed facts in the record show that campus security aides are not "vested by law with the power to maintain order" or with the power to detain persons suspected of committing a crime as is required to show waiver of governmental immunity under Section 41-4-12. Mr. Archuleta is entitled to summary judgment on Count II because as a matter of law Plaintiffs' facts, supported by facts in the record, cannot show waiver of governmental immunity under the NMTCA.

### C. **Defendant Rio Rancho Public Schools is not a "Law Enforcement Officer" under any version of Section 41-4-12 and the undisputed material facts show that there is no waiver of governmental immunity under the NMTCA**

Defendant Rio Rancho Public Schools is not a law enforcement officer under the NMTCA because a school board cannot be a "full-time salaried public employee" or a "public officer or employee," as those terms are used in the statute. *See* Section 41-4-12; *Dunn v. McFeeley*, 127 N.M. 513, 984 P.2d 760, 766 (1999). Further, because the undisputed material facts show that Mr. Archuleta was not a law enforcement officer under any version of Section 41-4-12, as a matter of law Plaintiffs cannot show liability against Rio Rancho Public Schools under a theory of *respondeat superior*. *Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 477, 745 P.2d 380, 385 (plaintiff must show negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12 and an entity that has immediate supervisory responsibilities over the employee).

D. **Plaintiffs abandon any claims in Count II based upon Article 2 of the New Mexico Constitution.**

Plaintiffs concede that there is no specific waiver of governmental immunity under Section 41-4-12 for the violation of rights under Article 2 of the New Mexico Constitution. Plaintiffs' Opposition Brief, p. 8. Accordingly, any such claims as asserted in Plaintiffs' Count II should be dismissed with prejudice.

In light of all of the above, Defendants Archuleta and Rio Rancho Public Schools are entitled to summary judgment as a matter of law on Plaintiffs' Count II because the undisputed material facts and applicable law show there is no waiver of governmental immunity under any version of Section 41-4-12.

V.    **REPLY TO PLAINTIFFS' "ARGUMENT ON COUNT III"**

It is agreed that when negligence causes a tort enumerated in Section 41-4-12, governmental immunity is waived under the statute, but only where the enumerated tort is caused by a law enforcement officer. Plaintiffs' Opposition Brief, p. 9 (*citing Turner v. City of Portales*, 1999 WL 35808310, *2 (D.N.M. Nov. 18, 1999); *Lymon v. Aramark Corp.*, 728 F.Supp.2d 1222, 1271 (D.N.M. 2012)(employee must meet waiver exception). Accordingly, Defendant Rio Rancho Public Schools can only be held liable under Section 41-4-12 for negligent hiring, training, supervision or retention or for negligent supervision of Mr. Archuleta where the facts show that Mr. Archuleta himself meets the waiver exception in Section 41-4-12. *Abalos v. Bernalillo Cnty. Dist. Atty's Off.*, 1987-NMCA-026, ¶ 23, 105 N.M. 554, 559, 734 P.2d 794, 799.

As shown above, the undisputed facts in the record show that Defendant Archuleta was a not a law enforcement officer under any version of Section 41-4-12.

Defendant Rio Rancho Public Schools is entitled to summary judgment on Plaintiffs'
Count III.

**VI.    REPLY TO PLAINTIFFS' "ARGUMENT ON COUNT IV"**

**A. Defendant Archuleta is entitled to summary judgment on Plaintiffs'
Section 41-4-6 Claims in Count IV.**

Plaintiffs concede that Defendant Archuleta cannot be held personally liable
under Section 41-4-6 and state that "no argument will be offered […] that Section 41-4-6
is applicable to Defendant Archuleta." Plaintiffs Opposition Brief, pp. 13-14.  Mr.
Archuleta is entitled to summary judgment and dismissal of all claims brought directly
against him pursuant to Section 41-4-6. *Trujillo v. Salazar*, 2006 WL 1228827, *9
(D.N.M. 2006)(summary judgment granted on Section 41-4-6 claims brought directly
against employee alleged to have assaulted, battered, and harassed co-employee).

**B. Defendant Rio Rancho Public Schools is entitled to summary judgment
on all claims brought pursuant to Section 41-4-6 in Count IV because the
undisputed material facts show that Plaintiffs cannot show the existence
of an unsafe, dangerous, or defective condition on the premises of V. Sue
Cleveland High School.**

Plaintiffs contend that a dangerous condition existed at V. Sue Cleveland High
School because Mr. Archuleta had a "proclivity to grope students during searches" and
that Defendant either knew, or should have known, of Mr. Archuleta's purported
"proclivity." Plaintiffs' Opposition Brief, p. 10.  Plaintiffs also contend that a dangerous
condition existed because of deficiencies in, or noncompliance with, "safety policies
necessary to protect the people" who use the high school. Id.

On March 20, 2024, the New Mexico Court of Appeals reiterated the two factual
scenarios where the "operations" aspect of Section 41-4-6 applies:

> First, an operational failure to respond to or discover
> conditions which can pose a danger to a class of persons

> involved in or affected by an activity on the property.
> [And] second, a failure to create and/or to implement
> reasonably appropriate safety policies and operational
> procedures to make public properties safe for the public
> who use them. *Vanhorn v. Carlsbad Mun. Sch. Dist.*,
> 2024-NMCA-035, ¶ 14, 2024 WL 322044, *4 (*quoting
> Gebler v. Valencia Reg'l Emergency Commc'n Ctr.*, 2023-
> NMCA-70, ¶ 16, 535 P.3d 763)(internal citations omitted).

Plaintiffs have not and cannot show that Defendant Rio Rancho Public Schools failed to respond to or failed to discover conditions which posed a threat to students. *Id*. The undisputed material facts in the record show that Defendant never had knowledge of Mr. Archuleta's so-called proclivity to grope students and could not have reasonably known of such alleged conduct. Further, Plaintiffs have not and cannot show that Defendant failed to create, to implement, or to adhere to reasonably appropriate safety policies or procedures to make the high school safe for students. *Id*. And there are no facts in the record to show that there was or is a wide-spread or well-known threat of danger of sexual battery of students during pat-down searches in public schools.

Summary judgment should be granted on all claims brought under Section 41-4-6 because the undisputed material facts show that Plaintiffs cannot support the essential elements of their tort claims brought pursuant to Section 41-4-6.

**1. No Facts in the Record to Show Failure to Respond to or Discover Condition which Posed a Threat to Students.**

Defendant denies that Mr. Archuleta had a so-called "proclivity to grope students during searches" and Mr. Archuleta testified that he never "groped" D.M., L.M., or J.M.(J.S.). Defendants' Ex. F, Archuleta Dep. 72:1-6. Further, facts in the record show that Rio Rancho Public Schools never negligently failed to respond to, or discover, conditions that could pose a danger to students at V. Sue Cleveland High School.

Undisputed facts show that Defendant never had any knowledge or notice that Mr. Archuleta had ever improperly searched a student or was ever accused of improperly groping any student during a pat-down search. Facts in the record show that neither D.M. nor L.M. ever told any school administrator that Mr. Archuleta had searched them inappropriately or touched their genitals. Defendants UMF 27, 29, 32, 34.

In response to Defendants' motion for summary judgment, Plaintiffs rely entirely on the testimony of J.M.(J.S) in an attempt to show notice or knowledge that Mr. Archuleta posed a danger to students at the school. Plaintiffs' Opposition Brief, p. 10. However, other than one sentence stating that J.M.(J.S.) had informed Principal Affentranger and citing to Plaintiffs' additional fact "NNN," Plaintiffs identify no specific facts from the record and make no argument that Defendant Rio Rancho Public Schools had any knowledge or notice whatsoever that Mr. Archuleta posed a danger to anyone. Notably, Defendant's motion specifically pointed out that:

> There are no facts in the record to show that J.M. ever told anyone at Rio Rancho Public Schools that Mr. Archuleta had specifically touched J.M.'s left testicle or had grabbed J.M.'s crotch. When given multiple opportunities to describe "exactly" what he had specifically told Mr. Affentranger, J.M.'s sworn testimony is that he merely told the principal that "some really weird and off-putting things" had occurred, that something went on "outside the guidelines of how a security guard is supposed to perform a search," and that during the pat-down Mr. Archuleta "was getting really high on the thigh area." Defendants' Motion, (Doc. 67.), p. 18 (citing Defendants' UMF 97-99).

Defendants argue that these "vague descriptions of conduct are insufficient as a matter of law to show that Defendant Rio Rancho Public Schools ever had actual knowledge or notice whatsoever of improper sexual touching by Mr. Archuleta against any student"

and that "Plaintiffs cannot support an essential element of their claims under 41-4-6 […]. <u>Id</u>, pp. 18-19.  Plaintiffs did not respond to this argument.

Plaintiffs' failure to present any facts from the record or argument to show that Rio Rancho Public Schools knew or should have known of Mr. Archuleta's so-called "propensity" to improperly search students, or that Mr. Archuleta had ever engaged in any improper conduct of any kind, is fatal to their claim that Mr. Archuleta presented a dangerous condition on the high school premises. *See Smith v. New Mexico*, 2020 WL 6702018, *3 (D.N.M. Nov. 13, 2020)(Fouratt, M.J.)(no allegations that alleged assailant "had a known reputation for engaging in sexual misconduct" and no allegations he had "ever engaged in prior improper behavior of any kind").  Defendant is entitled to summary judgment on Plaintiffs' Section 41-4-6 claims in Count IV.

## 2. No Facts in the Record to Show Failure to Create and/or Implement Reasonably Appropriate Safety Policies or Procedures.

Plaintiffs argue that Rio Rancho Public Schools is liable under Section 41-4-6 contending that the dangerous condition on the premises arose from "deficiencies in safety policies" or "general noncompliance with the policies." <u>Plaintiffs' Opposition Brief</u>, pp. 10-13 (*citing Armijo v. Bd. of Cnty. Commissioners of the Cnty. of Socorro*, 2021 WL 1176317, *6 (D.N.M. 2021)).[6]  Summary judgment should be granted because there are no facts, that find support in the record, to show any deficiencies in Rio Rancho Public Schools' safety policies or facts to show noncompliance with safety policies or

---

[6]  In their brief at p. 10, Plaintiffs represent that the *Armijo* case "expands on when violation of safety procedures or policies can waive sovereign immunity for the operation of a building […]."  But the language cited by Plaintiffs is not any expansion of *Upton*, as represented.  The language cited is from *Upton* itself.  *See Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 13, 140 N.M. 205, 208, 141 P.3d 1259, 1262.

with any operational policies or procedures designed "to make public properties safe for the public who use them." *Vanhorn*, 2024-NMCA-035, ¶ 14, 2024 WL 322044, *4.

To support their claim, Plaintiffs exclusively rely upon Rio Rancho Public Schools' "Searches and Seizures" Policy 1009, which states: "The Board of Education, in recognition of the necessity of conducting searches and seizures from time to time in order to enforce school policies, adopts the following policy regarding searches and seizures." Defendants' Ex. G (Doc. 65-7), p. 1. Policy 1009 also specifically states that a school search is permissible when there is "reasonable suspicion that a crime or other breach of disciplinary rules is occurring or has occurred," or when there is "reasonable cause to believe that a search is necessary to help maintain school discipline." Id, p. 2.

Plaintiffs contend that "[t]he school recognizes that searches of students may cause harm to students if done in an inappropriate manner – which is exactly why they have enacted a search policy that discusses in Section C requirements that govern the conduct of permissible searches by only authorized persons." Plaintiffs' Opposition Brief, p. 11. Plaintiffs further contend the search and seizure policy was adopted precisely because Defendant is "aware of the inherent danger of allowing school officials and employees to have hands on contact with a student." Plaintiffs' Opposition Brief, p. 12. But Plaintiffs fail to cite to sufficient facts in the record to support these assertions.[7] There are no facts in the record to show that school administrators recognize that searches

---

[7] Other than citing to Policy 1009, none of Plaintiffs' factual assertions on page 11 of their response cites to any portion of the record. Plaintiffs' generalized conclusion on page 11 that Policy 1009 was enacted "for the benefit of the person being searched," is unsupported by facts in the record, is mere legal argument, and does not create an issue of fact. *Sonic Indus. Serv., Inc.*, 490 Fed.Appx. at 118 (to oppose summary judgment, plaintiffs "must do more than provide their subjective interpretation of the evidence, they must marshal *admissible evidence of material fact*").

may present a potential harm to students and there are no facts in the record to show that Policy 1009 was specifically enacted because school authorities recognized a potential harm from school searches "done in an inappropriate manner." Conversely, undisputed facts in the record demonstrate that Policy 1009 was adopted because of the necessity of conducting school searches to enforce school policies and to maintain school discipline. Defendants' Ex. G (Doc. 65-7), p. 1. Further, Policy 1009 regarding "pat-down" searches is not specifically limited to searches of students, but generally refers to "search of a person." Id, p.3.

Plaintiffs next assert that conditions in Policy 1009 regarding pat-down searches, that they be conducted in private, by a person of the same sex, and in the presence of a witness of the same sex, are "to prevent unwanted or inappropriate conduct during the search of students." However, again, other than relying upon the argument of counsel, Plaintiffs fail to cite to admissible evidence from the record to support their assertion. Just as likely, it can be argued that the conditions were adopted to accommodate the sensitivities of any individual, *student or adult*, who is subjected to a pat-down of their person. Plaintiffs have not come forward with sufficient facts from the record to show that Policy 1009 is a policy designed and enacted to protect students from illegal sexual battery by school personnel and Plaintiffs' argument and "subjective interpretation of the evidence" does not make it so. *Sonic Indus. Serv., Inc*., 490 Fed.Appx. at 118.

Plaintiffs also assert that steps were taken to protect students by training campus security aides in how to conduct pat-down searches by including numerous safety measures. Plaintiffs' Opposition Brief, p. 11, 12. Undisputed facts in the record show that with regard to student searches, there is a significant distinction between pat-down

searches for contraband like a vape pen and pat-down searches for weapons. Importantly, there are no facts to show that campus security aides "are never to put their hands in a student's pocket." Plaintiffs' Additional Fact F, (Doc. 76, p. 12). The facts do show that campus security aides are generally "trained to just pat the pockets," that they are not trained to pat the inner thigh, and that they should *not intentionally* "touch a student's genitals during a search." Plaintiffs' Exhibit A, Mangin Dep. 29:15-34:8. And where the searcher feels "something in the pocket" they are to ask "the student to hand that to them unless […] it's a weapon." Plaintiffs' Exhibit A, Mangin Dep. 13:6-16:6.

However, where it is believed or suspected that a student has a weapon, the undisputed facts in the record show that, campus security aides are "permitted to place their hands in the suspect's pocket and feel around for a weapon," and that "they might make incidental contact [with genitals] in an attempt to retrieve that weapon." Plaintiffs' Ex. A, Mangin Dep. 16:1-6; Plaintiffs' Ex. E, Affentranger Dep. 25:3-9, 27:17-29:3. Mr. Baca specifically testified that if a weapon is suspected, under that circumstance a searcher might permissibly come in contact with a student's genital area. Defendants' Ex. A, Baca Dep. 21:8-15. Further, the undisputed facts show that it is not a violation of school policy for any campus security aide to search a student without being directed by an administrator "where there are exigent circumstances where he would think that the student was in possession of a weapon." Id, 119:24-120:4. Mr. Archuleta understood his training as a campus security aide.

Finally, Plaintiffs assert that campus security aides are required to document each time they conduct a student search and that Mr. Archuleta did not write reports for each of his searches. Plaintiffs' Opposition Brief, p. 12. However, Plaintiffs' citation to the

record at their additional facts XXX and AAAA do not support their assertion that Mr. Archuleta did not write required reports.[8]  Further, Plaintiffs assert that searches were required by policy to be videotaped and that Mr. Archuleta "never followed the policy." Id.  But uncontroverted evidence in the record shows that specific policy requires only that, "*When possible*, record the search on video through either a lapel security camera." Defendants' Ex. D, Archuleta Dep. 85:3-23 (emphasis supplied).    And it is uncontroverted that Mr. Archuleta had been issued a lapel camera, that it was to be turned on whenever interacting with students, not just with searches, but that Mr. Archuleta's lapel camera stopped working and he was told that the school did not have any more.  Id, Archuleta Dep. 74:16-75:5.

None of Plaintiffs' factually-unsupported assertions or the argument of counsel show that Rio Rancho Public Schools ever failed to create, implement, or properly follow appropriate policies or operational procedures to make the school safe.  *Vanhorn v. Carlsbad Mun. Sch. Dist*., 2024-NMCA-035, ¶ 14, 2024 WL 322044, *4.  And none of Plaintiffs' assertions show that Mr. Archuleta's so-called "bad acts would have been discovered after the first time he groped a student."  Plaintiffs' Opposition Brief, p. 12. Notably, all three Plaintiffs testified about the occurrence of alleged improper searches by Mr. Archuleta, where the searches were conducted in the direct presence of and were witnessed by school administrators.  Defendants' UMF 79, L.M. Dep. 56:4-14; Plaintiffs' Ex. B, Doc. 76-2 pp. 4-7, Defendants' Ex. A, Baca Dep. 46:5-6, 52:1-6; Plaintiffs' Exhibit H, D.M. Dep. 81:22-25; Plaintiffs' Exhibit J, 157:18-24, 158:4-7.

---

[8]  Defendants objected to Plaintiffs' PAF XXX and AAAA, and to Plaintiffs' PAF TTT and WWW as violations of D.N.M. LR-Civ. 56.1(b).

Plaintiffs do not put forth sufficient facts to show that Defendant ever created a dangerous condition for individuals at V. Sue Cleveland High School by failing to adopt or properly follow any safety policies or operational procedures.  As the undisputed facts in the record show, school search policies and the training of campus security aides specifically addressed how searches were to be conducted.  And the undisputed facts show that it was a not a violation of school policy for a search to be conducted without a video recording, or to be conducted without a school administrator's directive where exigent circumstances exist.  And it is undisputed that it was not a violation of school policy for a pat-down search to potentially include pocket searches where a student is believed or suspected to be in possession of a weapon, even if the searcher might make incidental contact with a person's genitals in an attempt to retrieve a weapon.

Unlike the cases relied upon by Plaintiffs, there is no evidence in the record to show that school policies or procedures were not properly implemented or followed.  *See Vanhorn*, 2024-NMCA-035,  ¶¶  15, 16, 2024 WL 322044, *4 (evidence showed Defendants created dangerous condition for student with known physical restrictions by failing to implement and follow safety and operational procedures); *Upton*, 140 N.M. 205, 141 P.3d 1259 (school had knowledge of student's medical condition coupled with school's failure to follow proper emergency procedures); *Armijo,* 2021 WL 1176317, (Defendant had knowledge of inmate's potential for suicide, had policies to address the potential, but failed to follow policies).

There is no credible, admissible evidence in the record to show that Defendant had actual knowledge that Mr. Archuleta had ever engaged in any wrongdoing and no evidence to show that Defendants did not adopt or follow appropriate safety policies or

operational procedures.  Defendant Rio Rancho Public Schools is entitled to summary judgment on Plaintiffs' Section 41-4-6 claims in Count IV.

## CONCLUSION

For all of the foregoing reasons, Defendants Archuleta and Rio Rancho Public Schools are entitled to summary judgment on Counts II, III, and IV because the undisputed material facts show that there has been no waiver of governmental immunity under either Section 41-4-12 or Section 41-4-6.

Wherefore, Defendants respectfully request that Plaintiffs' Counts II, III and IV be dismissed with prejudice and for such further relief as allowed by law and the Court deems appropriate.

Respectfully Submitted,

WALZ AND ASSOCIATES, P.C.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.
Alisha L. Walz, Esq.
*Attorneys for RRPS Defendants*
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com

~and~

QUIÑONES LAW FIRM LLC

*/s/ Carlos M. Quiñones, Esq.*
CARLOS M. QUIÑONES, ESQ.
*Attorney for Defendant Archuleta*
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505
(505) 992-1515
quinoneslaw@cybermesa.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of May, 2024, I filed the foregoing electronically through the CM/ECF system which caused all parties of record to be served by electronic mail, as more fully reflected in the Notice of Electronic Filing.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.